**EXHIBIT 1**

**WINSTON & STRAWN LLP**
ROLF S. WOOLNER (CA SBN: 143127)
HANNAH L. BLUMENSTIEL (CA SBN: 214842)
JUSTIN A. RAWLINS (CA SBN: 209915)
101 California Street, Suite 3900
San Francisco, California  94111-5894
Telephone:      415-591-1000
Facsimile:       415-591-1400
Email:        rwoolner@winston.com
Email:        hblumenstiel@winston.com
Email:        jrawlins@winston.com

**MACCONAGHY & BARNIER, PLC**
JOHN H. MACCONAGHY (CA SBN: 83684)
645 First Street West, Suite D
Sonoma, California  95476
Telephone:      (707) 935-3205
Facsimile:       (707) 935-7051
Email:        macclaw@macbarlaw.com

Co-Counsel for Plaintiff,
The Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>THE LEGACY ESTATE GROUP, LLC, a California Limited Liability Company, formerly doing business as FREEMARK ABBEY WINERY, BYRON VINEYARD & WINERY, AND ARROWOOD VINEYARD & WINERY,<br><br>        Debtor. | Case No. 05-14659<br><br>Chapter 11 |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE LEGACY ESTATE GROUP, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>JOHN M. BRYAN, JOHN M. AND FLORENCE E. BRYAN TRUST, J.M. BRYAN FAMILY TRUST, KULWINDER SIDHU, DEVINDER SIDHU, PACIFIC PARAGON INVESTMENT FUND LTD., a British Columbia company, HARRY CHEW, and AIC CAPITAL PARTNERS, LLC, a California limited liability company,<br><br>        Defendants. | Adversary Proceeding No. 06-01173<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY AND EQUITABLE RELIEF, INCLUDING SUBORDINATION OF CERTAIN CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims

The Official Committee of Unsecured Creditors (the "Committee" or "Plaintiff") appointed in the Chapter 11 case of The Legacy Estate Group LLC ("Legacy") alleges the following claims for relief against the above-named Defendants and objects as follows to certain claims asserted against the Legacy estate.

## JURISDICTION

1.      The United States District Court for the Northern District of California has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and (e). The District Court has referred this adversary proceeding to the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division (the "Court"), under 28 U.S.C. § 157(a).

2.      The claims in this proceeding arise under the California Corporations Code, the California Civil Code, other state law, applicable non-bankruptcy law, and 11 U.S.C. §§ 510(c), 544, and 548. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2) with respect to the claims that request relief under Title 11 of the United States Code (the "Bankruptcy Code"). It is non-core with respect to the balance of the claims. Plaintiff consents to entry of final judgment by the Court on the non-core claims.

## GENERAL ALLEGATIONS

**A.      The Parties.**

3.      The Legacy Estate Group, LLC ("Legacy") is a California limited liability company that formerly did business as Freemark Abbey Winery, Byron Vineyard & Winery, and Arrowood Vineyard & Winery. Majority ownership of Legacy is currently held by Connaught Capital Partners, LLC, a California limited liability company ("Connaught"), which until recently owned 100% of the membership interests in Legacy. Legacy and Connaught each filed petitions for relief under the Bankruptcy Code on November 18, 2005 (the "Petition Date"). Legacy continues to manage its property as debtor in possession under 11 U.S.C. §§ 1107(a) and 1108.

4.      The Court appointed the Committee on December 5, 2005. Pursuant to an order dated November 17, 2006, the Court confirmed the Committee's standing to commence and prosecute this litigation.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1

**First Amended Complaint for Damages and Declaratory and Equitable Relief, Including Subordination of Certain Claims**

5.      Defendant AIC Capital Partners LLC ("AIC") is a California limited liability company. AIC purchased a 100% membership interest in Connaught on March 14, 2005 and currently owns a majority membership interest in Connaught. AIC's members include, among others, defendant Harry Chew, defendant Kulwinder Sidhu ("K. Sidhu"), defendant Devinder Sidhu ("D. Sidhu"), defendant Pacific Paragon Investment Fund Ltd. ("Pacific") and Advanced Flight Concepts, Inc. Harry Chew claims an exclusive right to manage AIC under its operating agreement.

6.      Connaught[1] is a holding company whose primary asset is its majority membership interest in Legacy. Until mid-March 2005, Connaught held approximately 13.2% of Legacy's membership units and Legacy's other outstanding membership units were held by two trusts, as described below. Pursuant to the Court's Order for the Appointment of Trustee dated October 3, 2006, the United States Trustee appointed Andrea Wirum to serve as chapter 11 trustee for Connaught.

7.      Prior to March 14, 2005, defendant the J.M. Bryan Family Trust (the "JMB Trust") held 4,377.78 membership units in Legacy, representing approximately 44.9% of Legacy's outstanding membership units. On information and belief, the trustee of the JMB Trust was and is defendant John M. Bryan.

8.      Prior to March 14, 2005, defendant the John M. and Florence E. Bryan Trust (the "J&FB Trust" and together with the JMB Trust, the "Bryan Trusts") held 4,080 membership units in Legacy, representing approximately 41.9% of Legacy's outstanding membership units. On information and belief, the trustees of the J&FB Trust were and are John M. Bryan and Alan R. Brudos.

9.      Pursuant to a Units Purchase Agreement dated March 14, 2005 between Connaught and the Bryan Trusts (the "UPA"), Connaught acquired the Bryan Trusts' membership interests in Legacy. Under the UPA, Connaught was to "deliver (or cause to be delivered)" the sum of

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

---

[1] Because Connaught is a debtor in its own chapter 11 case, Plaintiff seeks no monetary, declaratory, or other relief against Connaught at this time. But for the pendency of Connaught's chapter 11 case, however, such relief would have been sought in this Complaint. Plaintiff includes the allegations with respect to Connaught set forth herein solely to ensure that all necessary or indispensable parties are named. Plaintiff reserves all rights with respect to Connaught in the event that a claim against Connaught becomes assertable.

2

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   $8,677,610 to the Bryan Trusts in exchange for the Legacy units.  Connaught never paid any sum to

2   the Bryan Trusts for this purchase, but instead caused Legacy to pay $7,169,173.21 in cash,

3   representing the majority of the purchase price, to the Bryan Trusts on or after March 15, 2005.

4       10.     Connaught's members currently include K. Sidhu, D. Sidhu, and AIC.  Prior to March

5   14, 2005, K. Sidhu and D. Sidhu each owned 50% membership interests in Connaught.  On March

6   14, 2005, the Sidhus sold their membership interests to AIC in exchange for a $1,322,390

7   promissory note.  Later, each of the Sidhu brothers purchased a 20% membership interest in

8   Connaught effective as of March 14, 2005.  On information and belief, the Sidhus collectively

9   delivered a $1,322,390 promissory note, the same consideration paid by AIC for a 100%

10  membership interest in Connaught, to AIC in exchange for the aggregate 40% membership interest

11  in Connaught.

12      11.     Thus, as of the morning of March 15, 2005, K. Sidhu and D. Sidhu each held 20% of

13  the membership interests in Connaught and AIC held the remainder.  On information and belief, no

14  amounts have been paid with respect to either of the promissory notes identified in the preceding

15  paragraph.

16      12.     Defendant K. Sidhu is an individual and a resident of the State of California.  He has

17  been Legacy's Chief Executive Officer and President since at least March 15, 2005.  As described

18  above, on and prior to March 14, 2005, K. Sidhu owned 50% of the membership interests in

19  Connaught.  K. Sidhu is a member of Connaught and AIC.  The Committee is informed and believes

20  that, as of the date of this first amended complaint, he owns 19.375% of the membership interests in

21  Connaught.  K. Sidhu was an officer of Connaught and served as Connaught's Responsible Person

22  prior to appointment of the Connaught chapter 11 trustee in its bankruptcy case.

23      13.     Defendant D. Sidhu is an individual, a resident of the State of California, and the

24  brother of K. Sidhu.  He has been Legacy's Chief Operations Officer and/or its Vice President of

25  Operations since March 15, 2005.  On and prior to March 14, 2005, D. Sidhu owned 50% of the

26  membership interests in Connaught.  D. Sidhu is a member of AIC and one of Connaught's two

27

28

3

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

1    directors.  The Committee is informed and believes that, as of the date of this first amended

2    complaint, D. Sidhu owns 19.375% of the membership interests in Connaught.

3         14.    Defendant John M. Bryan ("Bryan") is an individual and a resident of the State of

4    California.  At all times relevant to this first amended complaint, Bryan was the trustee of the JMB

5    Trust and a co-trustee of the J&FB Trust, thereby controlling the Bryan Trusts and having the ability,

6    through them, to control Legacy prior to the sale of the Bryan Trusts' membership interests in

7    Legacy described below.  After the sale of the Bryan Trusts' membership interests, Bryan retained

8    the ability to control Legacy pursuant (among other things) to a pledge of Connaught membership

9    interests, granted to the JMB Trust by Connaught under the $1.5 Million Note (defined below) as

10   security for payment; Connaught failed to pay that promissory note on its maturity.

11        15.    Defendant Pacific Paragon Investment Fund Ltd. ("Pacific") is, on information and

12   belief, a company created under the laws of British Columbia, Canada, with its principal place of

13   business in Vancouver, British Columbia.  Pacific is a member of defendant AIC.

14        16.    Defendant Harry Chew is Pacific's President and Chief Executive Officer and is also

15   an officer of defendant AIC.  On information and belief, Harry Chew controls Pacific and AIC and,

16   through them, purported to control Connaught and Legacy.

17   **B.    Pacific's Claims Against Legacy.**

18        17.    Connaught, but not Legacy, identified a debt to Pacific in its bankruptcy schedules,

19   and Pacific filed proofs of claim in Connaught's bankruptcy case related to such debt.  Pacific,

20   however, has recently filed late claims in the Legacy case substantially identical to the asserted

21   Connaught obligations.  All of these proofs of claim were executed by Harry Chew as President of

22   Pacific.  Thus, although it held no interest in Legacy, Pacific now claims to have made several

23   payments to third parties on Legacy's behalf, as summarized below:

| | | | |
|---|---|---|---|
| (1) | January 13, 2005 | $75,000 | On account of an "Expense Deposit" |
| (2) | January 18, 2005 | $215,000 | On account of a "Commitment Fee" |
| (3) | February 14, 2005 | $75,000 | On account of an "Appraisal Fee" |
| (4) | March 4, 2005 | $20,000 | On account of a "Finder's Fee" |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

4

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1        (5)    April 5, 2005    $160,000    On account of a "Finder's Fee"

2        (6)    August 5, 2005    $40,000    On account of a "Finder's Fee"

On information and belief, these payments were not documented as and did not constitute loans to or for the benefit of Legacy.  Rather, these payments are nothing more than equity contributions to AIC, of which Pacific is a member.

18.    Pacific also claims Legacy owes an additional $265,000 on account of a "Finder's Fee."  In support of a proof of claim Pacific filed against the Connaught estate (Claims Register No. 10), however, Pacific submitted a promissory note dated April 25, 2005 in the amount of $265,000 under which Connaught -- not Legacy -- was the promisor.  Connaught's records characterize this amount as an "equity advance."  Harry Chew executed Pacific's proof of claim as Pacific's President.

## C.    The Bryan Guaranties and Advances.

19.    On or about August 31, 2001, Bryan and the Bryan Trusts guaranteed Legacy's performance under an Agreement for the Purchase and Sale of Grapes with Red Barn Ranch, LLC ("Red Barn"), pursuant to which Legacy agreed to purchase all grapes grown by Red Barn on certain vineyards for a period of twenty years (the "Grape Purchase Agreement").

20.    Between late 2003 and early 2005, the JMB Trust advanced approximately $3,633,000 to Legacy.  On information and belief, although the advances were booked on Legacy's records as working capital advances or notes, no underlying notes exist.  According to Legacy's records, advances were made by the JMB Trust as follows:

        (1)    $507,000 on November 13, 2003;

        (2)    $127,000 on November 20, 2003;

        (3)    $236,000 on November 26, 2003;

        (4)    $207,000 on December 4, 2003;

        (5)    $228,000 on December 18, 2003;

        (6)    $474,000 on January 8, 2004;

        (7)    $425,000 on January 15, 2004;

        (8)    $127,000 on March 11, 2004;

**First Amended Complaint for Damages and Declaratory and Equitable Relief, Including Subordination of Certain Claims**

1        (9)    $100,000 on March 25, 2004;

2        (10)   $341,000 on April 1, 2004;

3        (11)   $111,000 on April 15, 2004; and

4        (12)   $750,000 on January 14, 2005.

5  All of the advances were booked as accruing interest at the prime rate and all had a maturity date of

6  May 1, 2004, except for the January 14, 2005 advance, which was due on demand.

7      21.    The Committee is informed and believes that the JMB Trust never demanded or

8  received any repayment on any of these advances, and that Legacy never established a reserve or

9  sinking fund and never made other preparations with respect to repayment of the advances prior to

10  May 1, 2004. The Committee is also informed and believes that even after the May 1, 2004 maturity

11  date came and went without payment by Legacy, the JMB Trust did not declare any event of default

12  or take any other action with respect to these advances.

13      22.    On March 14, 2005, in connection with execution of the UPA, the JMB Trust agreed

14  to accept a promissory note from Connaught based upon Connaught's representations that it was

15  "unable to fund [Legacy] sufficiently at the time of Closing for [Connaught] to pay off the J.M.

16  Bryan Family Trust's outstanding loans to the Company in the approximate amount of $3,795,000 as

17  at the date hereof" (UPA § 1.4).

18  **D.    The AIC and Connaught Guaranties.**

19      23.    On March 14, 2005, AIC and Connaught separately executed virtually identical

20  Guaranty Agreements with Bryan and his wife, Florence E. Bryan. Each of these Guaranty

21  Agreements provides that AIC and Connaught guarantee Legacy's performance under the Red Barn

22  Grape Purchase Agreement (the "AIC Guaranty" and the "Connaught Guaranty," respectively).

23      24.    The UPA also references the AIC and Connaught Guaranties at Section 1.3.2, stating:

24          [Connaught] was unable to obtain the release of the guaranty by John
25          M. and Florence E. Bryan of [Legacy's] obligations under the [Grape
             Purchase Agreement]. At the Closing of [the UPA], [Connaught] shall
26          deliver to [the Bryan Trusts] its Guaranty Agreement ... and a
             comparable Guaranty Agreement ... from [AIC] to assure [Legacy's]
27          performance under the Grape Purchase Agreement so that the
             Guarantors under the Bryan Guaranty will never have to perform
28          hereunder.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

6

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

25.    Bryan paid a total of $1,345,444.89 in connection with the 2005 Red Barn grape harvest on account of his guaranty of Legacy's performance under the Grape Purchase Agreement. However, Legacy has repaid this amount to Bryan in full from proceeds of debtor in possession financing obtained during this bankruptcy case. Bryan has filed claims against the Legacy estate demanding payment of any and all funds (up to $20,181,673.85) he has or will pay to Red Barn pursuant to the Bryan Guaranty. The Committee has seen no evidence that suggests Bryan has sought to enforce the AIC or Connaught Guarantees or that either AIC or Connaught has tendered payment of any funds to Bryan pursuant to the AIC or Connaught Guaranties.

E.    **Connaught's Purchase of the Bryan Trusts' Legacy Interests.**

26.    On information and belief, at the time the UPA was executed, Connaught had no assets other than its minority membership interest in Legacy, and no income. Under the UPA, Connaught agreed to purchase the Bryan Trusts' interests in Legacy for $8,677,610; of this amount, $4,186,050 was to be paid to the J&FB Trust and $4,491,560 to the JMB Trust. The UPA also provided for the Bryan Trusts to receive additional value in the form of annual deliveries of cases of certain Legacy wines at no cost to the Bryan Trusts and the right to purchase additional cases of all Legacy wines at 50% of the normal retail price. K. Sidhu executed the UPA as Connaught's Manager.

27.    On or shortly after March 15, 2005, Legacy, not Connaught, paid $7,169,173.21 of the purchase price, in cash, to the Bryan Trusts (the "Legacy Transfer"), through borrowings under a credit facility provided to Legacy by Laminar Direct Capital, L.P. ("Laminar"). At the time of the Legacy Transfer, K. Sidhu signed an "Officer's Certificate (Closing)" dated March 15, 2005 certifying, among other things, that he was the duly appointed, qualified, and acting Chief Executive Officer of Legacy.

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

28.    The remainder of the purchase price under the UPA was to be paid according to the terms of a secured promissory note, payable by Connaught to the Bryan Trusts (the "$1.5 Million Note"). On information and belief, no payments have been made on this note.[2]

29.    Legacy did not disclose the Legacy Transfer, the $1.5 Million Note, or the $3.7 Million Note (described below) in its bankruptcy case until August 30, 2006, when it amended its Statement of Financial Affairs and Schedules. In its Amended Statement of Financial Affairs, Legacy characterizes the Legacy Transfer, the $1.5 Million Note and the $3.7 Million Note as distributions on account of partnership interests. K. Sidhu executed the amendments on Legacy's behalf. On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts repay the Legacy Transfer and surrender the $1.5 Million Note. Neither Bryan nor the Bryan Trusts have complied with this demand.

**F.    The Laminar Credit Facility and Legacy's Payment to the Bryan Trusts.**

30.    Pursuant to a Credit Agreement dated March 15, 2005, Laminar lent $53,000,000 to Legacy (the "Laminar Credit Facility") on a secured basis. Laminar took a security interest in substantially all of Legacy's assets in connection with the Laminar Credit Facility.

31.    A condition precedent to closing of the Laminar Credit Facility was that Legacy should have received a cash equity contribution of not less than $8,000,000 from its members. The Committee is informed and believes that, at the closing, Legacy represented to Laminar that it had $6,000,000 in "cash equity contribution," and that the remaining $2,000,000 would be paid in shortly. Of that $6,000,000, however, $5,000,000 was received not from Legacy's members, but from Wilson Daniels Ltd. -- Legacy's marketing and distribution agent -- in the form of a signing advance. The Sidhus also represented that the remaining equity was coming from India but was delayed by currency conversion. These representations proved to be false. No such cash had been or would be paid in to Legacy.

---

[2] The Bryan Trusts do not appear to contend that the $1.5 Million Note is an obligation of Legacy. Neither Bryan nor the Bryan Trusts filed a proof of claim in the Legacy bankruptcy case based upon the $1.5 Million Note prior to the March 16, 2006 claims bar date.

8

**First Amended Complaint for Damages and Declaratory and Equitable Relief, Including Subordination of Certain Claims**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

32.     The closing of the Laminar Credit Facility and other transactions in mid-March 2005 included at least the following steps:  On or about March 15, 2005, Laminar wired $53 million to First American Title Company of Napa ("First American"), which served as escrow agent.  Legacy also deposited $5,999,988 with First American on or about the same date.  Upon the closing of the Laminar Credit Facility, First American wired funds to multiple accounts, including $7,177,610 to the "Niven & Smith Trust Account."  (The Niven & Smith law firm had previously acted as counsel for Legacy, Connaught, and/or the Sidhus.)  These transfers are documented in the final closing statement provided by First American, dated March 24, 2005, and in the accounting records of Legacy, which describe the $7,177,610 payment as "funding via Escrow."  The Niven & Smith Trust Account then paid the Bryan Family Trusts $7,169,173.21 on or about March 16, 2005.

33.     The cash consideration for Connaught's purchase of the Bryan Trusts' interest in Legacy came from Legacy itself, out of funds Legacy borrowed from Laminar, secured by substantially all of Legacy's assets, and at Legacy's instructions.  This was consistent with the parties' planning prior to the closing; a Flow of Funds Memorandum dated March 9, 2005 with respect to the Laminar Credit Agreement contemplated that Laminar would "pay to the [Bryan Trusts, as Selling Members of Legacy] $10,000,000 on behalf of [Legacy] to redeem their equity interests in [Legacy] as provided in [Legacy's] instructions."

G.     **The $3.7 Million Note.**

34.     At the same time Connaught acquired the Bryan Trusts' membership interests in Legacy, it issued a promissory note to the Bryan Trusts in the principal amount of $3,796,491.24 (the "$3.7 Million Note") and bearing interest at a rate of 9%.  The note was issued for Connaught's and Bryan's benefit because Connaught was "unable to fund [Legacy] sufficiently at the time of Closing to pay off the J.M. Bryan Family Trust's outstanding loans to [Legacy] . . ." (UPA § 1.4).  This note enabled Connaught to purchase the Bryan Trusts' membership interests and provided Connaught with time to raise additional capital since it was clear that Legacy's operations and debt service requirements would not be adequately funded after the closing of the Laminar Credit

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

9

1   Facility.  Under a Pledge Agreement dated March 14, 2005, AIC pledged all of its newly acquired

2   interest in Connaught to the Bryan Trusts to secure the $3.7 Million Note.

3       35.     No payments have been made on the $3.7 Million Note, which Bryan now asserts is

4   an obligation of Legacy.  Legacy, however, was not a party to the note.

5       36.     The JMB Trust's proof of claim based on the $3.7 Million Note states that the

6   claimant was asked to accept the $3.7 Million Note from Connaught and agree to forgive Legacy's

7   obligation to repay advances in the same amount.  Neither Bryan nor the JMB Trust has cited to or

8   described any documentation in support of the assertion that these operating advances constituted

9   debt rather than capital contributions.

10      37.     As previously stated, Legacy did not disclose the $3.7 Million Note until it filed

11  Amended Schedules and an Amended Statement of Financial Affairs on August 30, 2006 -- well

12  after the expiration of the Claims Bar Date on March 16, 2006.  In its Amended Statement of

13  Financial Affairs, Legacy characterized the $3.7 Million Note, as well as the Legacy Transfer and

14  the $1.5 Million Note, as distributions on account of a partnership interest.  On August 31, 2006,

15  Legacy demanded that Bryan and/or the Bryan Trusts surrender the $3.7 Million Note.  Neither

16  Bryan nor the Bryan Trusts have complied with this demand.

17  **H.    Legacy's Slide into Bankruptcy.**

18      38.     Legacy lost $11 million in 2005 alone.  Promptly after the closing of the Laminar

19  Credit Facility and the other transactions described above, Legacy went into default under the

20  Laminar Credit Facility, where it remained until the Petition Date, barely eight months after the

21  closing.  Indeed, Legacy never made a single payment of principal on the Laminar Credit Facility

22  prior to the Petition Date.

23      39.     From and after the closing of the Laminar Credit Facility and the making of the

24  Legacy Transfer, Legacy also lacked the ability to pay for the grapes under its grape contracts for the

25  2005 harvest.

26      40.     Meanwhile, notwithstanding Legacy's precarious financial condition, K. Sidhu and

27  D. Sidhu, as Legacy's officers and managers, increased their personal annual salaries from an

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

10

**First Amended Complaint for Damages and Declaratory and**
**Equitable Relief, Including Subordination of Certain Claims**

1    aggregate of $200,000 to an aggregate of more than $600,000. Plaintiff is informed and believes

2    Legacy also leased a luxury automobile for K. Sidhu.

3    **I.**    **Bryan and the Bryan Trusts' Claims Against the Legacy Estate.**

4        41.    Bryan and the Bryan Trusts purport to hold many millions of dollars in claims against

5    the Legacy estate. These include:

6        (1)    Claims Register No. 146: The JMB Trust has asserted an unsecured,

7    liquidated, non-contingent claim in the amount of $4,033,873. This claim arises from the $3.7

8    Million Note, under which Connaught -- not Legacy -- is the promisor. The JMB Trust asserts that

9    this Note is an obligation of Legacy. This claim amends Claims Register No. 123.

10        (2)    Claims Register No. 122: Bryan has asserted an unsecured, unliquidated,

11    contingent claim in the amount of $20,181,673.85. This claim arises from Bryan's guarantee of

12    Legacy's performance of its grape purchase agreement with Red Barn and Legacy's obligation to

13    indemnify Bryan for any amounts that he pays to Red Barn pursuant to his guarantee.

14        (3)    Claims Register No. 126: Bryan has asserted a secured, nonpriority,

15    liquidated, and non-contingent claim in the amount of $1,345,444.89. This claim arises from

16    Bryan's payment of a like amount to Red Barn, pursuant to his guarantee of Legacy's performance

17    under its Grape Purchase Agreement with Red Barn in connection with the 2005 harvest. This claim

18    amends Claims Register No. 124. Through the claim, Bryan asserts a security interest in "grape

19    juice," presumably that of the grapes purchased by Legacy from Red Barn after the 2005 harvest.

20    As such, this claim appears to duplicate a portion of Claims Register No. 122, which is described

21    above. This claim has been satisfied in full.

22        (4)    Claims Register Nos. 125 and 139: Bryan, on behalf of Sycamore Vineyards

23    (which the Committee is informed and believes is owned by Bryan and his wife), has asserted a

24    secured, nonpriority, liquidated and non-contingent claim in the amount of $497,115.08, allegedly

25    secured by a security interest in "grape juice." Claims Register Nos. 125 and 139 are duplicates.

26    The claim is based upon Sycamore Vineyards' 2005 grape harvest.

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

11

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

1

**FIRST CLAIM FOR RELIEF**
**(Avoidance of Constructive Fraudulent Transfer -- 11 U.S.C. § 548(a)(1)(B))**
2
**(against the Bryan Trusts)**

3      42.    Plaintiff realleges paragraphs 1 through 41 of this First Amended Complaint.

4      43.    On March 14, 2005, approximately eight months prior to the Petition Date,

5   Connaught purported to purchase the Bryan Trusts' interests in Legacy for $8,677,610.  Legacy,

6   however, funded $7,169,173.21 of the purchase price out of funds Legacy borrowed from Laminar,

7   secured by Legacy's assets.

8      44.    The funds borrowed by Legacy from Laminar or contributed by Legacy and paid to

9   the Bryan Trusts out of the escrow constituted Legacy's property at the time Legacy transferred such

10   funds to the Bryan Trusts through First American, the escrow agent.

11     45.    Legacy did not receive reasonably equivalent value in exchange for the transfer of

12   these funds to the Bryan Trusts.

13     46.    Legacy was insolvent on the date that such transfer was made or was rendered

14   insolvent thereby.

15     47.    At the time such transfer was made, Legacy was engaged in business or a transaction,

16   or was about to engage in business or a transaction, for which its remaining property was an

17   unreasonably small capital.

18     48.    At the time such transfer was made, Legacy intended to incur, or believed that it

19   would incur, debts that would be beyond Legacy's ability to pay as such debts matured.  This is

20   detailed in the UPA, which was signed by the trustees of the Bryan Trusts.  Under the UPA, the

21   parties acknowledged that Connaught was "unable to fund [Legacy] sufficiently at the time of

22   Closing for [Legacy] to pay off the J.M. Bryan Trust's outstanding loans to the Company" (UPA

23   § 1.4).

24     49.    On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts repay the

25   Legacy Transfer.  Neither Bryan nor the Bryan Trusts have complied with this demand.

26     50.    The Legacy Transfer should be avoided as a constructively fraudulent transfer, in

27   accordance with 11 U.S.C. § 548(a)(1)(B).

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## SECOND CLAIM FOR RELIEF
### (Avoidance of Intentional Fraudulent Transfer -- 11 U.S.C. § 548(a)(1)(A))
### (Against the Bryan Trusts)

51.    Plaintiff realleges paragraphs 1 through 50 of this First Amended Complaint.

52.    At the time of the Legacy Transfer, Legacy possessed actual intent to hinder, delay or defraud its creditors through that transfer.  Such intent is shown by:

(a)    The Bryan Trusts were Legacy insiders with the ability to exert substantial, if not total, control over Legacy's actions;

(b)    Legacy was insolvent at the time of the transfer or became insolvent as a result of the transfer;

(c)    Legacy was engaged, or was about to engage, in transactions for which its remaining assets were unreasonably small;

(d)    The Legacy Transfer occurred at the same time Legacy incurred substantial debt to Laminar; and

(e)    The Legacy Transfer was not disclosed as a matter of record in the bankruptcy case by Legacy until August 2006 -- nine months after the Petition Date.

53.    On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts repay the Legacy Transfer.  Neither Bryan nor the Bryan Trusts have complied with this demand.

54.    The Legacy Transfer should be avoided as an intentionally fraudulent transfer, pursuant to 11 U.S.C. § 548(a)(1)(A).

## THIRD CLAIM FOR RELIEF
### (Avoidance of Fraudulent Transfer -- Cal. Civ. Code § 3439.04 and 11 U.S.C. § 544(b))
### (Against the Bryan Trusts)

55.    Plaintiff realleges paragraphs 1 through 54 of this First Amended Complaint.

56.    Among the rights and powers of Plaintiff in bringing this action are all of the rights and powers of actual creditors who held allowable unsecured claims against Legacy as of the filing of the petition for relief, as set forth in 11 U.S.C. § 544(b).

57.    The Legacy Transfer was made with actual intent to hinder, delay, or defraud any creditor of the debtor.

13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    58.    The Legacy Transfer was also made to insiders, not disclosed publicly by the Debtor,

2    and made shortly after a substantial debt (i.e., the debt to Laminar) was incurred.

3    59.    There exist actual creditors who, as of the filing of the petition for relief, had the right

4    to bring an action to set these transfers aside pursuant to the provisions of California Civil Code

5    §§ 3439 *et seq.*  Plaintiff is entitled to assert these remedies pursuant to 11 U.S.C. § 544(b).

6    60.    On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts repay the

7    Legacy Transfer.  Neither Bryan nor the Bryan Trusts have complied with this demand.

8    61.    The Legacy Transfer should be avoided as an intentionally fraudulent transfer, in

9    accordance with 11 U.S.C. § 544(b) and California Civil Code § 3439.04.

10    **FOURTH CLAIM FOR RELIEF**
**(Avoidance of Fraudulent Transfer -- Cal. Civ. Code § 3439.04 and 11 U.S.C. § 544(b))**
11    **(Against the Bryan Trusts)**

12    62.    Plaintiff realleges paragraphs 1 through 61 of this First Amended Complaint.

13    63.    Legacy did not receive reasonably equivalent value, or any value, in exchange for the

14    Legacy Transfer, and Legacy was either (a) engaged or was about to engage in a business or a

15    transaction for which its remaining assets were unreasonably small in relation to the business or

16    transaction or (b) intended to incur, or believed or reasonably should have believed that it would

17    incur, debts beyond its ability to pay as they became due.

18    64.    On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts repay the

19    Legacy Transfer.  Neither Bryan nor the Bryan Trusts have complied with this demand.

20    65.    The Legacy Transfer should be avoided as a constructively fraudulent transfer, in

21    accordance with 11 U.S.C. § 544(b) and Cal Civ. Code § 3439.04.

22    **FIFTH CLAIM FOR RELIEF**
**(Claim to Recover Property Pursuant to 11 U.S.C. § 550)**
23    **(Against the Bryan Trusts)**

24    66.    Plaintiff realleges paragraphs 1 through 65 of this First Amended Complaint.

25    67.    Pursuant to 11 U.S.C. § 550, to the extent that the Legacy Transfer is avoided under

26    11 U.S.C. §§ 544 or 548 pursuant to the first, second, third, or fourth claims for relief, Plaintiff may

27    recover, for the benefit of the estate, the Legacy Transfer, or if the Court so orders, the value of such

28

14

1    property, from (1) the initial transferee of the Legacy Transfer or the entity for whose benefit such

2    transfer was made or (2) any immediate or mediate transferee of such initial transferee.

3        68.    On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts repay the

4    Legacy Transfer.  Neither Bryan nor the Bryan Trusts have complied with this demand.

5        69.    Plaintiff is entitled to avoid the Legacy Transfer under 11 U.S.C. §§ 544 and 548 and

6    the Bryan Trusts are the initial, immediate or mediate transferees with respect to the Legacy Transfer

7    within the meaning of 11 U.S.C. § 550.

8        70.    By reason of the foregoing, Plaintiff is entitled to recover the Legacy Transfer, or the

9    value of the Legacy Transfer, if the Court so orders, pursuant to 11 U.S.C. § 550.

10    

**SIXTH CLAIM FOR RELIEF**
**(Improper Distribution – California Corporations Code §§ 17254 and 17255)**
**(Against Bryan, K. Sidhu, and D. Sidhu)**

12        71.    Plaintiff realleges paragraphs 1 through 70 of this First Amended Complaint.

13        72.    On or about and prior to March 14, 2005, Connaught and the Bryan Trusts held 100%

14    of the outstanding membership interests in Legacy.

15        73.    Thereafter, Connaught was the manager and sole member of Legacy.  However,

16    under Section 7.1 of the Second Operating Agreement of Legacy, dated March 15, 2005, K. Sidhu

17    and D. Sidhu, as officers of Legacy, each had full control of Legacy's business and each was

18    authorized to act as Legacy's manager.

19        74.    On information and belief, on or prior to March 16, 2005, Connaught; Bryan, as

20    trustee of the Bryan Trusts; K. Sidhu; and D. Sidhu caused and/or authorized the Legacy Transfer to

21    fund Connaught's purchase of the Bryan Trusts' interest in Legacy.

22        75.    The Legacy Transfer constituted an improper distribution under California

23    Corporations Code section 17254.  After giving effect to this distribution:

24        (a)    Legacy became unable to pay its debts as they became due in the ordinary

25    course of business.  Indeed, Legacy did not make a single payment of principal on account of the

26    Laminar Credit Facility; and

27

28

15

**First Amended Complaint for Damages and Declaratory and**
**Equitable Relief, Including Subordination of Certain Claims**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

(b)    On information and belief, Legacy's total assets were less than the sum of its total liabilities.

76.    On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts repay the Legacy Transfer.  Neither Bryan nor the Bryan Trusts have complied with this demand.

77.    Connaught; Bryan, as trustee of the Bryan Trusts; K. Sidhu; and D. Sidhu, as members, managers, or de facto managers of Legacy voted for a distribution in violation of Section 17254 of the California Corporations Code, and are liable to Legacy for the amount of the distribution to the Bryan Trusts – the entirety of which exceeded what could have been distributed in compliance with Section 17254 of the California Corporations Code.  Accordingly, Bryan, as trustee of the Bryan trusts, K. Sidhu, and D. Sidhu should be ordered to repay to Legacy no less than $7,169,173.21.

### SEVENTH CLAIM FOR RELIEF
**(Return of Improper Distribution – California Corporations Code §§ 17254 and 17255)**
**(Against the Bryan Trusts, K. Sidhu, and D. Sidhu)**

78.    Plaintiff realleges paragraphs 1 through 77 of this First Amended Complaint.

79.    The Bryan Trusts, K. Sidhu, and D. Sidhu are obligated to return the Legacy Transfer (i.e., the improper dividend) to Legacy because:

(a)    The Bryan Trusts (through Bryan as trustee or co-trustee), K. Sidhu, and D. Sidhu had actual knowledge of facts indicating the impropriety of the distribution; and

(b)    Immediately after giving effect to the distribution, all of Legacy's liabilities, other than liabilities to members or assignees on account of their interest in Legacy and liabilities as to which recourse of creditors is limited to specified property, exceeded the fair market value of Legacy's assets.

80.    On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts repay the Legacy Transfer.  Neither Bryan nor the Bryan Trusts have complied with this demand.

81.    Accordingly, the Bryan Trusts, K. Sidhu, and D. Sidhu are liable to Legacy in the amount of $7,169,173.21, pursuant to California Corporations Code section 17254(e).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

16

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

### EIGHTH CLAIM FOR RELIEF
#### (Subordination of Claim – 11 U.S.C. § 510(c))
#### (Against the Bryan Trusts)

82.     Plaintiff realleges paragraphs 1 through 81 of this First Amended Complaint.

83.     Throughout the 2003-05 period during which one or both of the Bryan Trusts advanced money to Legacy as alleged above, Legacy was undercapitalized and subject to the control of the Bryan Trusts, which owned approximately 86.8% of Legacy's outstanding membership interest. Connaught owned the remaining 13.2% interest in Legacy.

84.     On March 14, 2005, Connaught acquired the Bryan Trusts' interest in Legacy, thereby becoming Legacy's 100% owner. At the same time, Connaught issued the $3.7 Million Note to the Bryan Trusts. Connaught, not Legacy, issued the $3.7 Million Note in exchange for the Bryan Trusts' agreement to forgive the $3,795,000 "advanced" over the preceding years.

85.     At the time Connaught issued the $3.7 Million Note, it had no significant assets other than its interest in Legacy and no income. Connaught made no payments on the $3.7 Million Note.

86.     The Bryan Trusts now claim that the $3.7 Million Note is an obligation of Legacy. On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts surrender the $3.7 Million Note. Neither Bryan nor the Bryan Trusts have complied with this demand.

87.     The "advances" made by one or both of the Bryan Trusts to Legacy were equity contributions, rather than loans, for at least the following reasons:

(a)     The Bryan Trusts did not make the "advances" pursuant to any loan agreement or other documentation;

(b)     The Bryan Trusts and Connaught knew that Legacy was unable to repay such advances as they became due; and

(c)     The Bryan Trusts continued to extend such "advances" notwithstanding their knowledge that Legacy was unable to repay them.

88.     By forcing Connaught to issue the $3.7 Million Note, and now demanding that Legacy repay it, the Bryan Trusts seek to place their interests ahead of those of legitimate unsecured creditors of Legacy.

17

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

89.    In light of the Bryan Trusts' attempt to place their interests ahead of those of legitimate unsecured creditors, the lack of contemporaneous documentation of the advances as loans, and the Bryan Trusts' knowledge that Connaught did not possess the ability to repay the $3.7 Million Note, equity compels subordination of the $3.7 Million Note to the claims of unsecured creditors of the Legacy estate, pursuant to 11 U.S.C. section 510(c).

**NINTH CLAIM FOR RELIEF**
**(Subordination of Claim – 11 U.S.C. § 510(b))**
**(Against the Bryan Trusts)**

90.    Plaintiff realleges paragraphs 1 through 89 of this First Amended Complaint.

91.    In Claims Register No. 123 and Claims Register No. 146, the Bryan Trusts assert that as a result of fraud and misrepresentation, they were induced to exchange indebtedness of Legacy for the $3.7 Million Note issued by Connaught on March 14, 2005.

92.    These claims constitute claims arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, or for damages arising from the purchase or sale of such a security.

93.    The Bankruptcy Code mandates subordination of these claims to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim shall have the same priority as common stock, pursuant to 11 U.S.C. §§ 101(49)(A) and 510(b).

**TENTH CLAIM FOR RELIEF**
**(Declaratory Relief re Obligation to Pay Note)**
**(Against Bryan and Bryan Trusts)**

94.    Plaintiff realleges paragraphs 1 through 93 of this First Amended Complaint.

95.    Connaught, not Legacy, issued the $3.7 Million Note. On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts surrender the $3.7 Million Note. Neither Bryan nor the Bryan Trusts complied with this demand.

96.    An actual controversy has arisen and now exists between the Committee, Bryan, and the Bryan Trusts concerning their respective rights and duties in light of the $3.7 Million Note: Bryan contends that Legacy is obligated to pay the $3.7 Million Note. The Committee denies this.

18

**First Amended Complaint for Damages and Declaratory and**
**Equitable Relief, Including Subordination of Certain Claims**

97.    The Committee desires a judicial determination pursuant to 11 U.S.C. § 105(a) of the respective rights and duties of the Legacy estate and Bryan and a declaration confirming that the obligation created by the $3.7 Million Note is not an obligation of Legacy. Such a declaration is necessary and appropriate at this time in order that the Committee and the Legacy estate may ascertain their rights and duties with respect to the $3.7 Million Note and any proof of claim based thereon filed by Bryan or the Bryan Trusts.

## ELEVENTH CLAIM FOR RELIEF
### (Avoidance of Note as Constructively Fraudulent Transfer)
### (Against the Bryan Trusts)

98.    Plaintiff realleges paragraphs 1 through 97 of this First Amended Complaint.

99.    To the extent that the $3.7 Million Note is an obligation of Legacy, the obligation created by that note should be avoided as a constructively fraudulent transfer.

100.    Legacy did not receive reasonably equivalent value in exchange for Connaught's issuance of the $3.7 Million Note.

101.    Legacy was insolvent on the date that the $3.7 Million Note was issued or was rendered insolvent thereby.

102.    At the time the $3.7 Million Note was issued, Legacy was engaged in business or a transaction, or was about to engage in business or a transaction, for which its remaining property was an unreasonably small capital.

103.    At the time the note was issued, Legacy intended to incur, or believed that it would incur, debts that would be beyond Legacy's ability to pay as such debts matured.

104.    On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts surrender the $3.7 Million Note. Neither Bryan nor the Bryan Trusts have complied with this demand.

105.    The $3.7 Million Note, to the extent it is an obligation of Legacy, should be avoided as a constructively fraudulent transfer, in accordance with 11 U.S.C. § 548(a)(1)(B).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

19

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

## TWELFTH CLAIM FOR RELIEF
### (Subordination of Unsecured Claims – 11 U.S.C. § 510(c))
### (Against Bryan and Bryan Trusts)

106.    Plaintiff realleges paragraphs 1 through 105 of this First Amended Complaint.

107.    Until March 15, 2005, Legacy was subject to Bryan's control through his control of the Bryan Trusts.  Through the exercise of his control over Legacy, Bryan:

    (a)    Caused Legacy to pay no less than $7,169,173.21 to the Bryan Trusts at a time when Bryan and the Bryan Trusts knew Legacy was insolvent or that this payment would cause Legacy to become insolvent; and

    (b)    Now claims that Legacy must repay at least the $3.7 Million Note, even though that note was issued by Connaught;

108.    On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts repay the Legacy Transfer and surrender the $3.7 Million Note.  Neither Bryan nor the Bryan Trusts have complied with this demand.

109.    Bryan and/or the Bryan Trusts assert no less than $24 million in claims against the Legacy estate ("Bryan's Claims");

110.    Given Bryan's efforts to place his interests, as well as those of the Bryan Trusts, ahead of those of other legitimate creditors, equity compels the subordination of Bryan's Claims to those of legitimate unsecured creditors, pursuant to 11 U.S.C. § 510(c).

## THIRTEENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty – California Corporations Code § 17153)
### (Against the Bryan Trusts, Harry Chew, AIC, K. Sidhu and D. Sidhu)

111.    Plaintiff realleges paragraphs 1 through 110 of this First Amended Complaint.

112.    On March 14, 2005, Connaught owned approximately 13.2% of Legacy's outstanding membership interests.  The Bryan Trusts owned the remaining 86.8% of Legacy's membership interests.

113.    On March 14, 2005, AIC purchased a 100% interest in Connaught, 40% of which was simultaneously or shortly thereafter purchased by K. Sidhu and D. Sidhu.  AIC remains a majority owner of Connaught.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

20

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

114. On March 15, 2005, Connaught was manager and sole member of Legacy. K. Sidhu and D. Sidhu, as officers, had the authority and right to act on behalf of Legacy as if they were manager.

115. Harry Chew is an officer of defendant AIC. On information and belief, Harry Chew controls AIC and, through it, purported to control Connaught and Legacy.

116. As Legacy's controlling shareholders, officers, managers and/or de facto managers, AIC; Harry Chew; the Bryan Trusts, through Bryan; K. Sidhu; and D. Sidhu owed duties of care and loyalty to Legacy.

117. Notwithstanding their fiduciary duties to Legacy, AIC; Harry Chew; the Bryan Trusts, through Bryan; K. Sidhu; and D. Sidhu caused Legacy to:

(a) Engage in transactions at a time when Legacy was insolvent and lacked sufficient resources to carry out such transactions, or which would render Legacy insolvent and without sufficient assets to continue to conduct business;

(b) Make false representations to Laminar, Bryan, or both; and/or

(c) Engage in actual and/or constructive fraudulent transfers of Legacy's property.

118. As a result of the breaches of the fiduciary duties owed by AIC, Harry Chew, the Bryan Trusts, K. Sidhu and D. Sidhu, Legacy suffered financial damages for which they are liable.

### FOURTEENTH CLAIM FOR RELIEF
#### (Declaratory Relief Characterizing the $3.7 Million Note)
#### (Against the Bryan Trusts)

119. Plaintiff realleges paragraphs 1 through 118 of this First Amended Complaint.

120. An actual controversy has arisen and now exists between Bryan and the Committee as to the true nature of the obligations purportedly represented by the $3.7 Million Note. The Committee contends that the "advances" upon which the $3.7 Million Note are based represent equity investments in Legacy by the Bryan Trusts, for at least the following reasons:

(a) When the Bryan Trusts made the "advances" underlying the $3.7 Million Note, these advances were not documented as loans;

21

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

(b)    No third party would have lent money to Legacy in such amounts and on such terms, on an unsecured basis, at the times the "advances" were made, given Legacy's financial condition;

(c)    It was not until shortly before the Petition Date that Bryan, acting on behalf of the Bryan Trusts as trustee, caused Connaught to prepare and issue the $3.7 Million Note;

(d)    Bryan, acting on behalf of the Bryan Trusts as trustee, now claims Legacy is obligated to repay the $3.7 Million Note; and

(e)    On information and belief, during the period it made these advances to Legacy, Bryan, acting on behalf of the Bryan Trusts as trustee, knew that Legacy would be unable to repay such advances as they matured.

121.    The Committee is informed and believes that the Bryan Trusts deny the foregoing and contend the $3.7 Million Note constitutes an obligation of Legacy.

122.    On August 31, 2006, Legacy demanded that Bryan and/or the Bryan Trusts surrender the $3.7 Million Note. Neither Bryan nor the Bryan Trusts have complied with this demand.

123.    A transaction should be characterized according to its true nature rather than the name given the transaction by the parties. The Committee desires a judicial determination pursuant to 11 U.S.C. § 105(a) confirming that the funds advanced by the Bryan Trusts constitute and should be characterized as equity investments by the Bryan Trusts, rather than as debt for the reasons described above. Such a determination is necessary and appropriate at this time in order that the Committee may ascertain the rights and duties of the Legacy estate on account of the $3.7 Million Note.

### FIFTEENTH CLAIM FOR RELIEF
**(Declaratory Relief for Equitable Indemnification)**
**(Against AIC)**

124.    Plaintiff realleges paragraphs 1 through 123 of this First Amended Complaint.

125.    An actual controversy has arisen and now exists between AIC and the Committee concerning their respective rights and duties in light of the AIC Guaranty. The Committee contends that AIC must indemnify the Legacy estate for claims raised against it by Bryan and/or the Bryan Trusts on account of funds they have paid or will pay to Red Barn under the Grape Purchase

22

1   Agreement.  The Committee further contends that the Legacy estate has suffered damage to the

2   extent Bryan and/or the Bryan Trusts demand payment from Legacy rather than AIC of funds Bryan

3   and/or the Bryan Trusts have paid or will pay to Red Barn under the Grape Purchase Agreement.

4   The Committee is informed and believes that neither Bryan nor the Bryan Trusts have sought

5   payment from AIC and further, that AIC has not tendered payment to Bryan or the Bryan Trusts

6   pursuant to the AIC Guaranty.

7          126.    The Committee is informed and believes that AIC denies any equitable indemnity

8   obligation to Legacy on account of the AIC Guaranty.

9          127.    The Committee desires a judicial determination pursuant to 11 U.S.C. § 105(a)

10  confirming that AIC must indemnify Legacy to the extent Bryan and/or the Bryan Trusts demand

11  payment from Legacy with respect to the Red Barn Grape Purchase Agreement.  Such a

12  determination is necessary and appropriate at this time in order that the Committee may ascertain the

13  rights and duties of the Legacy estate in light of the AIC Guaranty.

14                          **SIXTEENTH CLAIM FOR RELIEF**
                **(Avoidance of Constructive Fraudulent Transfer -- 11 U.S.C. § 548(a)(1)(B))**
15                                  **(against Pacific)**

16         128.    Plaintiff realleges paragraphs 1 through 127 of this First Amended Complaint.

17         129.    Between January 13 - August 5, 2005, Pacific claims that Legacy became indebted to

18  Pacific in an amount no less than $811,692.22 (the "Pacific Debts").

19         130.    At the time Legacy allegedly incurred Pacific Debts, Pacific held no membership

20  interest in Legacy.

21         131.    Legacy did not receive reasonably equivalent value in exchange for incurring the

22  Pacific Debts.

23         132.    Legacy was insolvent on the dates it incurred the Pacific Debts or was rendered

24  insolvent thereby.

25         133.    At the time it incurred the Pacific Debts, Legacy was engaged in business or a

26  transaction, or was about to engage in business or a transaction, for which its remaining property was

27  an unreasonably small capital.

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

23

**First Amended Complaint for Damages and Declaratory and**
**Equitable Relief, Including Subordination of Certain Claims**

134.    At the time such transfers were made, Legacy intended to incur, or believed that it would incur, debts that would be beyond Legacy's ability to pay as such debts matured.  This is supported by, among other things, the UPA, in which Legacy acknowledged it was unable to pay a significant portion of its debts.  (UPA § 1.4).

135.    The Pacific Debts should be avoided as constructively fraudulent transfers, pursuant to 11 U.S.C. § 548(a)(1)(B).

**SEVENTEENTH CLAIM FOR RELIEF**
**(Avoidance of Intentional Fraudulent Transfer -- 11 U.S.C. § 548(a)(1)(A))**
**(Against Pacific)**

136.    Plaintiff realleges paragraphs 1 through 135 of this First Amended Complaint.

137.    At the time it incurred the Pacific Debts, Legacy possessed actual intent to hinder, delay or defraud its creditors through such transfers.  Such intent is shown by:

(a)    Pacific is controlled by Harry Chew, who controls AIC, the majority owner of Connaught, which at the time of certain transfers reflected in the Pacific Debts controlled Legacy;

(b)    Legacy was insolvent at the time of the transfers or became insolvent as a result of the transfers;

(c)    Legacy was engaged, or was about to engage, in transactions for which its remaining assets were unreasonably small.

138.    The Pacific Debts should be avoided as intentionally fraudulent transfers, pursuant to 11 U.S.C. § 548(a)(1)(A).

**EIGHTEENTH CLAIM FOR RELIEF**
**(Avoidance of Fraudulent Transfer -- Cal. Civ. Code § 3439.04 and 11 U.S.C. § 544(b))**
**(Against Pacific)**

139.    Plaintiff realleges paragraphs 1 through 138 of this First Amended Complaint.

140.    Among the rights and powers of Plaintiff in bringing this action are all of the rights and powers of actual creditors who held allowable unsecured claims against Legacy as of the filing of the petition for relief, as set forth in 11 U.S.C. § 544(b).

141.    The Pacific Debts were incurred with actual intent to hinder, delay, or defraud any creditor of the debtor.

24

**First Amended Complaint for Damages and Declaratory and**
**Equitable Relief, Including Subordination of Certain Claims**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

142.    The Pacific Debts were incurred in favor of companies controlled by Harry Chew who, through AIC and Connaught, exerted significant control over Legacy. Further, the Pacific Debts were incurred shortly before and after Legacy incurred substantial additional debt (i.e., the debt to Laminar).

143.    There exist actual creditors who, as of the filing of the petition for relief, had the right to bring an action to set these transfers aside pursuant to the provisions of California Civil Code §§ 3439 *et seq.* Plaintiff is entitled to assert these remedies pursuant to 11 U.S.C. § 544(b).

144.    The Pacific Debts should be avoided as intentionally fraudulent transfers, in accordance with 11 U.S.C. § 544(b) and California Civil Code § 3439.04.

## NINETEENTH CLAIM FOR RELIEF
**(Avoidance of Fraudulent Transfer -- Cal. Civ. Code § 3439.04 and 11 U.S.C. § 544(b))**
**(Against Pacific)**

145.    Plaintiff realleges paragraphs 1 through 144 of this First Amended Complaint.

146.    Legacy did not receive reasonably equivalent value, or any value, in exchange for the Pacific Debts, and Legacy was either (a) engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

147.    The Pacific Debts should be avoided as constructively fraudulent transfers, in accordance with 11 U.S.C. § 544(b) and Cal Civ. Code § 3439.04.

## TWENTIETH CLAIM FOR RELIEF
**(Declaratory Relief for Characterization of the Pacific Debts)**
**(Against Pacific)**

148.    Plaintiff realleges paragraphs 1 through 147 of this First Amended Complaint.

149.    An actual controversy has arisen and now exists between Pacific and the Committee concerning the true nature of the Pacific Debts. The Committee contends that the Pacific Debts are not owed by Legacy. The Committee further contends that the Legacy estate has suffered damage to the extent Pacific demands payment from Legacy on account of the Pacific Debts. The Committee is informed and believes that Pacific has not sought payment from other sources for most of the

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

25

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

1  Pacific Debts and has sought payment from both Connaught <u>and</u> Legacy for the remainder.  The

2  Committee is informed and believes that no other person or entity tendered payment to Pacific on

3  account of any of the Pacific Debts.

4        150.    The Committee is informed and believes that Pacific denies the Committee's

5  contention that the Pacific Debts are not owed by Legacy.

6        151.    The Committee desires a judicial determination pursuant to 11 U.S.C. § 105(a)

7  confirming that the Pacific Debts are not owed by Legacy.  Such a determination is necessary and

8  appropriate at this time in order that the Committee may ascertain the rights and duties of the Legacy

9  estate in light of the Pacific Debts.

10                          **PRAYER FOR RELIEF**

11        WHEREFORE, the Committee respectfully requests relief against the Defendants, as

12  follows:

13        1.      On the First Claim for Relief, judgment avoiding the Legacy Transfer under 11

14  U.S.C. § 548(a)(1)(B);

15        2.      On the Second Claim for Relief, judgment avoiding the Legacy Transfer under 11

16  U.S.C. § 548(a)(1)(A);

17        3.      On the Third and Fourth Claims for Relief, judgment avoiding the Legacy Transfer

18  under California Civil Code § 3439.04 and 11 U.S.C. § 544(b);

19        4.      On the Fifth Claim for Relief, judgment permitting recovery of the Legacy Transfer

20  under 11 U.S.C. § 550;

21        5.      On the Sixth and Seventh Claims for Relief, judgment awarding damages in an

22  amount according to proof, but not less than $7,169,173.21;

23        6.      On the Eighth Claim for Relief, judgment equitably subordinating the $3.7 Million

24  Note to the claims of all non-insider unsecured nonpriority creditors under 11 U.S.C. § 510(c);

25        7.      On the Ninth Claim for Relief, judgment subordinating the $3.7 Million Note to all

26  claims or interests senior to or equal the claim of the subject security under 11 U.S.C. § 510(b);

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

1    8.    On the Tenth Claim for Relief, judgment declaring that, pursuant to 11

2 U.S.C.§ 105(a), the $3.7 Million Note is not an obligation of Legacy;

3    9.    On the Eleventh Claim for Relief, avoidance of the obligation created by the $3.7

4 Million Note as a fraudulent transfer under 11 U.S.C. § 548;

5    10.    On the Twelfth Claim for Relief, judgment equitably subordinating Bryan's Claims

6 under 11 U.S.C. § 510(c).

7    11.    On the Thirteenth Claim for Relief, judgment awarding damages in an amount

8 according to proof;

9    12.    On the Fourteenth Claim for Relief, judgment declaring that, pursuant to 11 U.S.C.

10 § 105(a), the $3.7 Million Note and its underlying advances constitute equity contributions made to

11 Legacy by one or both of the Bryan Trusts;

12    13.    On the Fifteenth Claim for Relief, judgment declaring that, pursuant to 11 U.S.C.

13 § 105(a), AIC must indemnify Legacy to the extent Bryan and/or the Bryan Trusts demand payment

14 from Legacy with respect to the Red Barn Grape Purchase Agreement;

15    14.    On the Sixteenth Claim for Relief, judgment avoiding the Pacific Debts under 11

16 U.S.C. § 548(a)(1)(B);

17    15.    On the Seventeenth Claim for Relief, judgment avoiding the Pacific Debts under 11

18 U.S.C. § 548(a)(1)(A);

19    16.    On the Eighteenth and Nineteenth Claims for Relief, judgment avoiding the Pacific

20 Debts under California Civil Code § 3439.04 and 11 U.S.C. § 544(b);

21    17.    On the Twentieth Claim for Relief, judgment declaring that, pursuant to 11 U.S.C.

22 § 105(a), the Pacific Debts are not owed by Legacy; and

23 ///

24 ///

25 ///

26 ///

27 ///

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

27

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

18.     On all claims for relief, for such other relief as the Court deems appropriate under the circumstances.

DATED: November 22, 2006

Respectfully submitted,

**WINSTON & STRAWN LLP**

and

**MACCONAGHY & BARNIER, PLC**

By

Hannah L. Blumenstiel
Co-counsel for Plaintiff, The Official
Committee of Unsecured Creditors of The
Legacy Estate Group, LLC

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

## DEMAND FOR JURY TRIAL

The Committee hereby demands a jury trial on all issues so triable.

DATED: November 22, 2006                    Respectfully submitted,

**WINSTON & STRAWN LLP**

and

**MACCONAGHY & BARNIER, PLC**

By

_____
Hannah L. Blumenstiel
Co-counsel for Plaintiff, The Official
Committee of Unsecured Creditors of The
Legacy Estate Group, LLC

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

**First Amended Complaint for Damages and Declaratory and
Equitable Relief, Including Subordination of Certain Claims**

SF:143411.15B