**EXHIBIT 6**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ALAN JAROSLOVSKY, JUDGE

| | |
|---|---|
| In Re:<br><br>THE LEGACY ESTATE GROUP, LLC., a California limited liability company, doing business as Freemark Abbey Winery, Byron Vineyard & Winery, and Arrowood Vineyards & Winery,<br><br>             Debtor.<br>_____ | ) Case No. 05-14659<br>) Chapter 11<br>)<br>) <u>MOTION for ORDER AUTHORIZING</u><br>) <u>SETTLEMENT of CLAIM NO. 122</u><br>) <u>of JOHN M. BRYAN and RED</u><br>) <u>BARN RANCH LLC</u><br>)<br>)<br>)<br>)<br>)<br>) |
| In Re:<br><br>CONNAUGHT CAPITAL PARTNERS, LLC,<br><br>             Debtor.<br>_____ | ) Case No. 05-14660<br>)<br>) <u>MOTION for ORDER AUTHORIZING</u><br>) <u>SETTLEMENT with the LEGACY</u><br>) <u>ESTATE GROUP LLC and ITS</u><br>) <u>CREDITOR'S COMMITTEE</u><br>) |
| OFFICIAL COMMITTEE of UNSECURED CREDITORS of LEGACY,<br><br>             Plaintiff,<br><br>       v.<br><br>JOHN M. BRYAN,<br><br>            Defendant.<br>_____ | ) Adv. 06-1173<br>)<br>) <u>MOTION to CERTIFY PROCEEDING</u><br>) <u>to DISTRICT COURT for TRIAL</u><br>) <u>by JURY</u><br>)<br>)<br>)<br>)<br>)<br>) Friday, February 23, 2007<br>) Santa Rosa, California |

<u>Appearances</u>:

| | |
|---|---|
| For Debtor The<br>Legacy Estate Group: | Murray & Murray, P.C.<br>By:  John Walshe Murray, Esq., and<br>Doris A. Kaelin, Esq.<br>19400 Stevens Creek Boulevard<br>Suite 200<br>Cupertino, California  95014 |
| Special Counsel for<br>the Debtor: | Law Offices of William C. Lewis<br>By:  William C. Lewis, Esq.<br>510 Waverley Street<br>Palo Alto, California  94301-1720 |

Appearances continued on next page.

2

Appearances continued:

For the Creditor's          MacConaghy & Barnier, PLC
Committee:                   By:  John H. MacConaghy, Esq.
                            645 First Street West, No. D
                            Sonoma, California  95476

                            Winston & Strawn LLP
                            By:  David Honig, Esq.
                            101 California Street, Suite 3900
                            San Francisco, California  94111

For the Connaught           McNutt & Litteneker, LLP
Trustee Andrea A. Wirum:    By:  Rebecca U. Litteneker, Esq.
                            188 Embarcadero, Suite 800
                            San Francisco, California  94105-1231

Connaught Trustee:          Andrea A. Wirum
                            P. O. Box 1108
                            Lafayette, California  94549

For Laminar Direct          Klee, Tuchin, Bogdanoff & Stern
Capital, L.P.:              By:  Thomas Patterson, Esq.
                            Courtney E. Pozmantier, Esq.
                            1999 Avenue of the Stars, 39th Floor
                            Los Angeles, California  90067

For Red Barn Ranch, LLC     Kirkpatrick & Lockhart Preston Gates
(via telephone):               Ellis, LLP
                            By:  David H. Wiseblood, Esq.
                            55 Second Street, Suite 1700
                            San Francisco, California  94105-3493

Digital Court               United States Bankruptcy Court
Recorder:                   Clerk of the Court
                            Dan Sondheim
                            99 South E Street
                            Santa Rosa, California  95404
                            (707) 525-8539

Certified Electronic        Palmer Reporting Services
Transcriber:                P. O. Box 30727
                            Stockton, California  95213-0727

           Proceedings recorded by digital recording;
     transcript produced by federally-approved transcription service.

| Motion to Approve Settlement of Claim 122 | 3 |
|---|---|

1  Friday, February 23, 2007                    9:08 o'clock a.m.

2                    P R O C E E D I N G S

3        THE CLERK:  This Court is in now in session, the

4  Honorable Alan Jaroslovsky presiding.

5        THE COURT:  Be seated, please.

6        THE CLERK:  Number 1, The Legacy Estate Group.

7        We have a telephonic appearance.

8        MR. MURRAY:  Good morning, Your Honor.  John Murray

9  with Murray and Murray for The Legacy Estate Group.

10       MS. LITTENEKER:  Good morning, Your Honor.  Rebecca

11  Litteneker representing Andrea Wirum, Trustee for Connaught

12  Capital Partners.

13       MR. HONIG:  Good morning, Your Honor.  David Honig,

14  Winston and Strawn, for the Creditor's Committee.

15       MR. ST. JAMES:  Good morning, Your Honor.  Michael St.

16  James appearing on behalf of John Bryan.

17       MR. PATTERSON:  Good morning, Your Honor.  Tom

18  Patterson from Klee, Tuchin, Bogdanoff and Stern for Laminar

19  Direct Capital.

20       MR. LEWIS:  Good morning, Your Honor.  William C.

21  Lewis, special counsel to Legacy Estate Group.

22       MR. MACCONAGHY:  Good morning, Your Honor.  John

23  MacConaghy for — co-counsel for the Committee.

24    (The Clerk calls counsel appearing via telephone.)

25       THE COURT:  Well, let's see.  The first matter I have

Motion to Approve Settlement of Claim 122                                          4

1   on my calendar is the motion for — I'm sorry.  I forgot.

2          THE CLERK:  Would you please state your appearance?

3          MR. WISEBLOOD:  Good morning, Your Honor.  David

4   Wiseblood appearing on behalf of Red Barn Ranch, LLC.

5          THE COURT:  All right.  Now the first matter I have on

6   my calendar is motion to approve the settlement of Claim Number

7   122 of Mr. Bryan and Red Barn.  Is that right?

8          MR. HONIG:  I believe so, Your Honor.  David Honig for

9   the Creditor's Committee.  We're the co-proponent of the

10  settlement.  As the Court is aware, Mr. Bryan and Red Barn

11  collectively asserted claims at various times, as much as $20

12  million and more recently in the range of $3 million, in

13  connection with rejection of the Red Barn Grape Contract and Mr.

14  Bryan's guaranty of that contract.

15         The parties, which included Red Barn, Mr. Bryan, the

16  Legacy estate, and the Committee, attended a mediation on

17  January 10th and concluded with a resolution of those claims in

18  exchange for a single payment of $750,000 from the Legacy estate

19  to Red Barn.  The claims that are all stated in Claim Number 122

20  will all be extinguished.

21         THE COURT:  All right.  Is there anyone objecting to

22  the motion?

23         MR. HONIG:  No objection has been filed, Your Honor.

24  We're aware of no objection.

25         THE COURT:  All right.  The motion is granted.

1          MR. HONIG:  Thank you, Your Honor.

2          MR. WISEBLOOD:  Thank you, Your Honor.

3          And thank you, Mr. Honig, and everyone involved for

4     your efforts.

5          MR. ST. JAMES:  Thank you, Your Honor.

6          THE COURT:  All right.  Now the next thing on my

7     calendar is in the Connaught case, the motion for the order

8     authorizing a settlement with Legacy.

9          MR. LEWIS:  Your Honor, if I may speak to that.  It's

10    also the mirror motion in the Legacy case because it's the

11    settlement with the two estates.

12          THE COURT:  Okay.

13          MR. LEWIS:  And it's been noticed in both — in both

14    cases.  As the Court may recall, I was appointed as special

15    counsel for Legacy because of disputes between the Connaught and

16    the Legacy estates.  From the time of my appointment, when I was

17    appointed there was extensive discovery that had been commenced.

18    There were issues as to — there were substantial issues as

19    between the estates as to what claims each estate may have had

20    against each other, if any, and as to rights each of the estate

21    might have had against third parties.

22          Over the last three months significant resources have

23    been expended by both estates.  One in figuring out what their

24    respective rights are.  The trustee in the Connaught estate was

25    fairly late in the case and had filed claims right before the

1    first confirmation hearing in the Legacy case and objected to

2    the confirmation of the Legacy plan.

3              The -- what has been crafted here after extensive work

4    on both sides, after very heated and well-thought-out and

5    substantially-worked-out negotiations between the estates is

6    what I believe and we believe to be an elegant and simple

7    settlement that will stop the bleeding between the estates,

8    minimize the ongoing costs of both estates, and create an

9    environment in which the estates can pursue resources for the

10   benefit of creditors.

11             Simply stated, what the settlement does is have the

12   estates become joint plaintiffs on claims against the insiders

13   with the estates to share the net proceeds of that litigation

14   50-50, with Legacy to have allowed an unsecured claim against

15   Connaught for eight and a half million dollars, but with a cap

16   on distributions to Legacy out of the Connaught estate such that

17   Legacy --

18             THE COURT:  I'm sorry.  Did you say Legacy has a claim

19   against Connaught estate?

20             MR. LEWIS:  That is correct.  Legacy has an eight and

21   a half million dollar claim against the Connaught estate, which

22   has a cap on distributions out of the Connaught estate not to

23   exceed 50 percent of moneys distributable to all classes of

24   creditors and interests.

25             And there -- what led to this claim, there are a

*Connaught: Motion for Settlement with Legacy*                    7

1 | variety of theories.  And ultimately what we've worked out is an
2 | economic solution, Your Honor, that has a sharing of the
3 | litigation proceeds and then a return of some of those
4 | potentially to the Legacy estate.  And one could articulate a
5 | whole variety of theories that led to that, but ultimately it's
6 | really a negotiated settlement as to the economics.

7 |          THE COURT:  What was the nature of Legacy's claim
8 | against Connaught?

9 |          MR. LEWIS:  There are two kinds of claims, and not
10 | necessarily limited to those, Your Honor, because the discovery
11 | was ongoing.  But the two significant categories of claims would
12 | include mismanagement claims by Connaught, which as have been
13 | indicated in the motion could have been $30 million or more, and
14 | also a fraudulent-conveyance theory.  The distribution to the
15 | Bryan in the Bryan litigation may have been for the benefit of
16 | Connaught.

17 |          So among all of those things there were very
18 | substantial claims against Connaught by the Legacy estate.
19 | Connaught asserted its own theories of claims, but as the
20 | discovery went on, it's believed that by sharing the litigation
21 | proceeds, which is really where the resources are for both
22 | estates, both estates end up with a net benefit.

23 |          If we continue the litigation between the estates,
24 | there's been a significant bleed in both estates by virtue of
25 | the legal cost of pursuing these claims.  They're very

1    complicated.  If litigated, we would spend tremendous amounts of

2    moneys as between the estates.  And nobody's sure where we would

3    come out.  So this is designed to stop that bleed and to

4    maximize the return to creditors in both estates, which we

5    believe it will establish.

6            Among the things that the settlement contemplates is

7    joint counsel for the two estates.  The Winston Strawn firm has

8    already been pursuing some of this litigation, may pursue it

9    all.  The responsible person under the Legacy plan will be a

10   joint plaintiff under that plan, as the Court may recall.

11           The other thing that this settlement will accomplish,

12   Your Honor, is that it is the last linchpin to confirmation of

13   the Legacy plan.  This would resolve and result in a withdrawal

14   of the Connaught trustee's objections to confirmation and their

15   claims in the Legacy estate.  So it not only works out an

16   economic win for both estates in terms of going forward, but it

17   also brings finality and closure to the Legacy estate.

18           THE COURT:  Okay.

19           MS. LITTENEKER:  Your Honor, Rebecca Litteneker.  From

20   the Connaught trustee's standpoint, this is also a very good

21   settlement.  The Connaught trustee is very pleased with this

22   settlement.

23           As Mr. St. James pointed out at the last hearing, the

24   Connaught trustee is a very practical person and views this as a

25   very practical solution.  In her view, the focus at this point

1   should be to try to grow the pie for creditors rather than to

2   spend a lot of money fighting with the Legacy estate over how to

3   split the pie between the two estates.  And that's exactly what

4   this settlement does.

5           In this settlement both estates will jointly prosecute

6   litigation and split the cost of that.  Winston and Strawn may

7   be the firm that prosecutes litigation.  It may not be.  But

8   instead of both estates prosecuting litigation and then fighting

9   between them over which estate actually owns different causes of

10  action in dealing with the complexity of trying to split causes

11  of action that involve the same parties and some of the same

12  issues, we'll be prosecuting it together splitting the cost.

13  The trustee will share in control of the litigation, and one of

14  our concerns has been cost consciousness going forward and

15  making sure things proceed in an efficient manner.

16          THE COURT:  Have the identities of the defendants in

17  this litigation been identified?  Do we know who they are?

18          MS. LITTENEKER:  The trustee has been conducting very

19  — very intensive discovery through the month — largely through

20  the month of January in preparation for — not only for a hearing

21  on — an evidentiary hearing on the trustee's claim, but also

22  with an eye toward other potential causes of action.  And the

23  trustee has ideas about who potential defendants would be.

24          We expect to get more information about other

25  potential defendants, but we do have some ideas about who — who

1   the trustee might sue in the Connaught estate and what those

2   causes of action might be.  So we are putting together that

3   information.  We have some ideas now.  We expect to have

4   additional ideas.  That information came together once we did

5   the discovery with — that was authorized pursuant to the

6   stipulations that we entered into to get documents from other

7   parties in December and January.

8           So this settlement is probably far — is definitely far

9   more about splitting causes of action and moving together in the

10  future than it is about settling the claim that the trustee

11  filed in the Legacy case already.  So it's much more about

12  moving forward —

13          THE COURT:  Well, Mr. Lewis says that the Legacy has

14  claims against Connaught and Connaught has claims against Legacy

15  also.

16          MS. LITTENEKER:  Yes, this is true.  We have claims

17  against — we do have claims against Legacy and Legacy has claims

18  against Connaught.  And this — the beauty of this settlement is

19  we're resolving all those things and we're agreeing on a joint

20  prosecution of causes of action that we would otherwise have to

21  spend a lot of money fighting over the splitting of in the

22  future.

23          So this resolves past issues, this resolves future

24  issues.  It resolves the issues that we brought forward in the

25  claim that we filed as well as additional things that we found

1    in the due diligence — in the discovery process.  And we think

2    that this is a very clean, very practical, a very economic

3    method of going forward.  And it was heavily, heavily negotiated

4    on both sides, by the Connaught trustee as well as by the Legacy

5    — the Legacy parties and the Creditor's Committee.

6            We feel that it's — it is a very good thing for the

7    Connaught creditors and we think that — that it's in their best

8    interests.

9            MR. LEWIS:  If I could try to answer one question that

10   the Court just directed about who are the defendants.  The

11   settlement indicates that the joint defendants really are the

12   insiders and affiliates of insiders.  They are separate claims

13   that are preserved by the estates against noninsiders.  So

14   Connaught will have the right to continue to pursue its

15   individual claims there.  But the settlement, generally the

16   contemplation of the joint claims is with respect to Bryan and

17   the insiders.

18           MS. LITTENEKER:  I'd like the point out for the record

19   as well that the trustee is in the courtroom as well.  I know

20   the Court can see that, but for the record I'd like to point

21   that out.  Thank you.

22           THE COURT:  Yes.  I did see her.

23           MR. LEWIS:  And so the Court is aware also, the

24   trustee has individually been actively involved, vigorously

25   involved in working with counsel on both sides extensively.  She

1   could so indicate to the Court, but has been a very active

2   participant in these discussions.

3       THE COURT: Well, I mean the reason I asked the

4   question is that the only objection I saw was from Mr. Bryan.

5   And obviously I want to hear from Mr. St. James, but I'm

6   interested in whether Bryan has objected because the settlement

7   is not good for him as a creditor or it's not good for him

8   because there's a big bullseye on his back.

9       (Laughter.)

10       MR. LEWIS: Well, he — he will answer that undoubtedly

11   in one way. We believe that the other is a significant issue.

12       MR. PATTERSON: Yeah. Certainly the main action that

13   is — that is preserved by this settlement as to the joint

14   prosecution is the action against the Bryan entities.

15       Good morning, Your Honor. Tom Patterson for Laminar.

16   The settlement also deals with a sort of stray issue that has

17   been lingering out in the cases, and that is a stipulation that

18   Laminar and the two debtors entered into at or around the time

19   of the closing to facilitate the closing. It was referred to at

20   that time as a Stipulation re Closing. I think we wrote it in

21   about an hour and a half when we were told that the closing was

22   imminent and various arrangements had to be made.

23       That stipulation was presented in both the Connaught

24   and the Legacy cases. Your Honor entered an order in the Legacy

25   case. And between the time of its submission and consideration,

1  the Connaught trustee was appointed and indicated that she

2  needed some time to assess whether this was in the Connaught

3  estate's interests.

4        We've had a lot of discussion with the estates with

5  respect to the matters set forth in the Stipulation re Closing.

6  And in connection with this settlement and as noticed in the

7  motion, the Connaught trustee is now prepared to assent to the

8  entry of an order approving the Stipulation re Closing in the

9  Legacy and Connaught cases.  And we have submitted a stipulation

10  in both cases providing for that consent.

11        The stipulation also cleans up a few stray matters

12  that existed in the cases because of the speed with which we did

13  things at the time of closing.  And one, for example, is the

14  fact that in the Stipulation re Closing we misstated the amount

15  of the carveout for which Laminar is still contingently liable,

16  and we understated it.  And we had always agreed and said that

17  when — you know, when we tie things up that of course we'll

18  agree to modify that number to the proper-calculated number.  So

19  this stipulation does that as well as a few other sort of minor

20  clean-up items.

21        I don't think there are any matters with respect to

22  our stipulations that are controversial.  They just sort of

23  represent clear up of things that happened some time ago.

24        THE COURT:  Now did I sign an order in the Legacy case

25  or —

*Connaught: Motion for Settlement with Legacy*                              14

1        MR. LEWIS:  Yes.

2        MR. PATTERSON:  Yeah.

3        MR. LEWIS:  You signed the order in Legacy, but not in

4   — not the mirror order in Connaught.  This has the Connaught

5   trustee consenting to that.

6        THE COURT:  All right.  I — I'm a little uncomfortable

7   signing orders where I don't see where they comfortably fit into

8   the Bankruptcy Code.  I am assuming, since I signed one order,

9   that I — my concern, my usual concerns were satisfied at that

10  time, so I'm assuming that when I look at this there won't be

11  any lingering concerns.  It's nothing that has to be noticed?

12       MR. PATTERSON:  Well, Your Honor, this — this

13  arrangement was noticed through the motion that was filed,

14  paragraph 12 of the motion, in both the Connaught and the Legacy

15  cases, advised creditors and parties-in-interest that this would

16  be considered.  And earlier this week, when we finally got all

17  the signatures and so forth, we lodged the two stipulations, one

18  in the Connaught case and one in the Legacy case.

19       So what would be presented for Your Honor would first

20  be an order approving the Stipulation re Closing in the

21  Connaught case.  That's the sort of clean-up manner, in that

22  respect.  And then approving the stipulation that we lodged in

23  both cases in each of the Connaught and Legacy case, and that

24  has the effect of approving the various clean-up items, for

25  example, the restatement of the carveout amount in both cases.

1    MR. LEWIS:  So the Court is clear, the Stipulation re

2  Closing for which an order was entered in the Legacy case was

3  also noticed in the Connaught case, and there were no

4  objections.  The trustee simply didn't have time to examine it,

5  et cetera, and at this point is prepared to consent to the entry

6  of that order.  So there are no objections and it has been

7  noticed.

8    THE COURT:  Okay.  That's fine.  Now why do I need to

9  do another order in the Legacy case?

10    MR. PATTERSON:  Well, the — because the stipulations

11  that we have done also restate the carve amount — the carveout

12  amount to the correct amount, for example.  And the order that

13  the Court has entered in the Legacy order — in the Legacy case,

14  which we presented, approves the misstated carveout amount, for

15  example.

16    THE COURT:  So you want an amended order in the Legacy

17  case?

18    MR. PATTERSON:  Well, it's not so much an amended

19  order, because the — there are a few other things that are —

20  that are just being tidied up.  And so it's actually an order

21  approving the stipulation that we submitted this week.  But the

22  main effect of it is — is to restate the carveout amount.

23    I don't think there's any need to amend the prior

24  approval.  The Court can just approve the stipulation and that

25  will have that effect.

1    THE COURT:  And there's no conflict between the two

2 orders?

3    MR. PATTERSON:  No, Your Honor.  I mean the — well, in

4 a sense, but the parties are certainly clear that the later in

5 time will —

6    THE COURT:  Well, shouldn't the second order refer in

7 some way to the first?

8    MR. LEWIS:  It does — well, I'm sorry.  The

9 stipulation does.  I don't know if the order does —

10    MR. PATTERSON:  The stipulation does.  When we submit

11 a form of order, Your Honor, we're happy to say that the — that

12 this supersedes the prior order, so it's clear.

13    MR. LEWIS:  To the extent different.

14    THE COURT:  Okay.

15    MR. PATTERSON:  Correct.

16    MR. LEWIS:  Yes.

17    MR. PATTERSON:  Thank you, Your Honor.  I apologize

18 for this procedural morass.  We're just trying to get it tidied

19 up.

20    THE COURT:  All right.  Well, if I — if I signed the

21 order the first time that meant that I've already thought about

22 it, so I don't see any problem basically doing the same thing in

23 the other case in the absence of any opposition.

24    Well, that just leaves us with determining whether or

25 not I ought to approve the compromise between the two estates.

*Connaught: Motion for Settlement with Legacy*                                    17

1    Bryan — or, I'm sorry.  Mr. St. James.

2              MR. ST. JAMES:  Thank you, Your Honor.  Your Honor,

3    let me just say, perhaps echoing the Court's misgivings, I have

4    not had a chance in the couple days that it's been around or the

5    day that it's been around to look at the Laminar stipulations.

6    If they are in fact nonsubstantive tidying up, that's great.

7    But I'd just point out that to the extent that there is anything

8    substantive about them, there has not been anything

9    approximating due process or notice.  And that's — that's —

10             THE COURT:  Counsel just told me it was noticed and

11   there were no objections.

12             MR. ST. JAMES:  What they say happened was several

13   months ago it was noticed and the Connaught trustee on behalf of

14   Connaught was unwilling to sign it.  And now as part of this

15   overall deal, the Connaught trustee is not only willing to sign

16   that stipulation, but everybody over there is willing to change

17   the stipulation and they'd like the Judge to sign off on both

18   things.

19             And all I'm suggesting is that the new stipulation has

20   been out for a day or two.  I have not had a chance to study it.

21   If it is in fact just tidying up, then it's just tidying up.  To

22   the extent that it's substantive, I'm just pointing out that

23   there hasn't been anything approximating due notice.

24             And that is really my concern about the overall

25   settlement.  Maybe it's a good idea, maybe it's a bad idea.  But

*Connaught: Motion for Settlement with Legacy*                    18

1   the one thing that's clear is that there hasn't been anything

2   approximating due process.

3           If you look at the way things stood last Friday, the

4   Connaught trustee had asserted for what seemed to be fairly good

5   reasons, a $4 million claim against the Legacy estate.  And the

6   Legacy estate, guided by both a debtor-in-possession and a

7   committee, had elected not to assert any claims against

8   Connaught.  That's the way things were last Friday:  $4 million

9   going only one way.

10          Today it's eight and a half million dollars going the

11  other way.  And there is a claim of Legacy in the Connaught

12  estate for eight and a half million dollars, the claim of

13  Connaught through the Legacy estate is waived, and there's no

14  real explanation except that these parties have decided that

15  that's a good economic outcome.

16          My client holds $5.7 million of contract claims in the

17  Connaught estate, promissory note claims in the Connaught

18  estate; and before this settlement was by far the largest

19  creditor in the Connaught estate; and could have assumed that if

20  anybody had come in today to file a claim against the Connaught

21  estate, the fact that the claim would be time barred would be a

22  meaningful defense.

23          Now the assertions for bases for why there would be a

24  claim of Legacy against Connaught are all things that the

25  committee knew or should have known and the debtor knew or

*Connaught: Motion for Settlement with Legacy* 19

1  should have known long before the Connaught claims bar date.

2  And so in the ordinary context, if the Legacy estate had filed a

3  proof of claim in Connaught today, the Connaught trustee could

4  have objected or we could have objected and pointed out that

5  it's at least time barred and at least is junior to our claim.

6      There's no explanation of any of this stuff. There's

7  no explanation as to the merits of why Legacy should have a

8  claim against the Connaught estate. The first time anybody

9  heard anything about the merits was when Mr. Lewis explained it

10  to the Court. The Court didn't know, I didn't know, nobody knew

11  except whoever asserted it around that table. And that's not

12  the way a compromise is supposed to work. 9019 does not

13  contemplate that the parties can figure it out themselves and

14  the Court and the creditors rubber stamp it.

15      9019 contemplates that people will explain what's up

16  and why they're doing it so that the Court and the creditors can

17  have some sort of meaningful involvement. And that hasn't been

18  done here. And then it's been compounded by the fact that after

19  the Court said seven days' notice was sufficient, the parties

20  decided that two days' notice would be better. And so the

21  notice that went out seven days ago said: Well, here are some

22  ideas, but basically it's all overruled by the terms of the

23  settlement agreement.

24      And when people said: Well, can I see the settlement

25  agreement, the answer was: No, not yet. Maybe later.

1    And so on Tuesday at noon, you know two business days

2  ago, we got the terms of the settlement agreement.  And there

3  are things in the settlement agreement that are very different,

4  that are not at least discussed in the notice at all.

5    And, Your Honor, if in fact there was going to be a

6  foreclosure tomorrow, if in fact there was going to be some

7  horrible, dire emergency that made it important to rush to

8  justice, then maybe it'd be understandable.  But there isn't

9  anything that's happening out there except a desire to get this

10 thing done as quickly as possible with as little notice as

11 possible to move onto whatever else people want to do.

12    THE COURT:  I think it's with as little as expense as

13 possible.

14    MR. ST. JAMES:  Your Honor, there is no difference in

15 expense between meeting here today and meeting here in two

16 weeks.  There is no difference in expense.  The same bodies are

17 going to drive up here if the hearing's today or if the

18 hearing's in two weeks.

19    I admit that there is a difference in whether they

20 explain what the deal is and why, but I don't think that saving

21 money by not explaining what's up is a legitimate concern, not

22 in a case like that.

23    So, Your Honor, I'd submit, first and foremost, that

24 there ought to be due process about something as big as this.

25 And there ought to be a real explanation of what's up.  If the

1    Connaught trustee has decided that her $3 million claim against

2    Legacy was bogus, she should say that.  She should explain why

3    she's realized that it was a mistake.  If everybody's decided

4    that really Legacy has an $8 million claim against Connaught and

5    — and it's a good solid claim, they should explain some time

6    prior to oral argument at the hearing why they think there could

7    be such a claim.  I think they should explain why they think

8    that it's not late and time barred.

9            I think they should just explain this stuff and we

10   should have something that approximates due process.

11           Thank you, Your Honor.

12           THE COURT:  Well, before you respond, this is just

13   general comments at this side of the room.  You as a group have

14   some calls to make.  You would think that they would be my

15   calls, but they're not really.  Mr. St. James on behalf of Mr.

16   Bryan has been the lone fly in the ointment for a few hearings

17   now.  And I don't know nor do I care whether he's motivated by

18   the fact that he's worried about maximizing the Bryan claim or

19   he's worried about being the object of the litigation attentions

20   of the — of the two estates.

21           I do note that there is a trustee in the Connaught

22   case because of Mr. Bryan's motion.  So it's — it's worthy of

23   comment that the trustee, an independent trustee was appointed

24   at his request, and the independent trustee is now taking a

25   divergent view as to what's best for that estate.

1      The reason 1 say you've got calls is because Mr. Bryan

2  is raising procedural hurdles.  He's saying that there hasn't

3  been due process.  I'm skeptical about that.  I'll listen to

4  your arguments if you want to go forward, but the fact of the

5  matter is those arguments go away if we set an evidentiary

6  hearing, come back in a couple weeks, I take testimony, and then

7  we're only talking about the actual legal issues.  And there's

8  no question of being unfair to anybody.

9      So I think we should take a recess and you make the

10  call.  I suspect if you all insist on going forward today, that

11  I may give different — deference to your wishes.  But you could

12  end up in front of some appellate court somewhere instead of

13  arguing the merits of your settlement, you could be arguing

14  whether you ran roughshod over Mr. St. James and his client.

15      So why don't we take a five-minute recess, confer

16  among yourselves, and see how you want to proceed.

17      MR. LEWIS:  Thank you, Your Honor.

18      MR. ST. JAMES:  Thank you, Your Honor.

19   (Hearing recessed from 9:39 a.m. to 10:15 a.m.)

20      THE CLERK:  Number 2 on the nine o'clock calendar:

21  Connaught Capital Partners.

22      MR. LEWIS:  Your Honor, do you want appearances again?

23      THE COURT:  No.  I remember who you are, Mr. Lewis.

24      MR. LEWIS:  Okay.  Your Honor, I think we've worked

25  out an agreement subject to the Court's availability to continue

*Connaught: Motion for Settlement with Legacy*                                    23

1   the hearing.  And the dates that work for the parties, if it

2   works for the Court, are the afternoon of the 13th from two

3   o'clock on or any time on the 14th.

4           THE COURT:  Well, let's take a look.

5           MR. LEWIS:  I saw a nod on the 14th.

6           THE COURT:  Yeah, I've got a one-day trial on the

7   13th, but the 14th is entirely open.  Shall we set that aside

8   for you?

9           MR. LEWIS:  Yes.  Ten o'clock.  Is that agreeable to

10  the Court?

11          THE COURT:  That will be fine.

12          MR. HONIG:  What time?

13          MR. LEWIS:  Ten o'clock?

14          I see no objection to ten o'clock.

15          MR. ST. JAMES:  Thank you, Your Honor.

16          THE COURT:  All right.  I will hold an evidentiary

17  hearing then on March 14th at ten o'clock on the advisability.

18  Now I believe I have —

19          MR. ST. JAMES:  Your Honor?  That's not I think what I

20  at least contemplated.  We had a discussion in the halls, and

21  I'm not representing that there's any agreement about it.  But

22  what I said was, "I think that you all should put together a

23  motion that explains why this is a good deal under 9019 and then

24  we can have a hearing on whether this is a good deal under

25  9019."

1    And what I said in the halls was, "I don't think that

2 it makes any sense to schedule an evidentiary hearing because if

3 we were doing a serious evidentiary hearing, then I would want

4 to take discovery before the evidentiary hearing so I knew what

5 was happening.  And we certainly couldn't do that very quickly

6 and that seems like a lot of expense and it doesn't make a lot

7 of sense to me when what I'm really just asking for is a good

8 explanation of the basis for the motion."

9    So I wanted to say that because I do not contemplate

10 an evidentiary hearing on that day.

11    THE COURT:  Unless you're waiving your right to an

12 evidentiary hearing, I am going to give you fair notice that I

13 may consider testimony at that time and I anticipate giving an

14 up or down to the compromise at that time.

15    MR. ST. JAMES:  In that case, Your Honor, I would

16 suggest that that date is not convenient because what I need to

17 do, if we're really going to have an evidentiary hearing on this

18 compromise, is —

19    THE COURT:  We're really going to have a final

20 decision on this compromise.

21    MR. ST. JAMES:  Then what I assume I need to do is

22 start taking depositions.  It would be helpful, obviously, if

23 people would give me an explanation of why we're doing this

24 compromise beforehand, so I'd know whether it's necessary or

25 not.  But if this is going down that path, then I need to have

1  the hearing continued until much later in the month.

2          I've told them that I will be out the week preceding

3  the 14th.  I don't think that I can start taking depositions

4  this week.  And while I think it's an unreasonably expensive way

5  of finding out way this motion is here, if that's what we have

6  to do, then I have to start scheduling depositions in the week

7  of the 14th and asking for a hearing at the end of March.

8          I'd prefer if they would simply prepare a 9019 motion

9  that explained why this deal makes sense, and that might resolve

10 everything.  But I have to accommodate the Court's preference.

11 And if the Court prefers that we simply go to a sudden-death

12 evidentiary hearing, then I need to proceed with discovery

13 first.

14         THE COURT:  Well, look, this case started out with a

15 lot of divergent interests, many divergent interests.  We had

16 two debtors with separate interests.  We had eq- — one of the

17 debtor was an equity owner.  We had the unsecured creditors.  We

18 had the evil hedge fund.  A lot of different players.  It's come

19 down now to everybody's on one table and you're sitting at the

20 other one.  And I'm not sure whether you're sitting there

21 because you're really concerned about the Connaught estate or

22 you're concerned because your client is the object of

23 anticipated litigation.

24         You've made an argument that I'm being unfair by

25 rushing things.  As I pointed out to all the others, it's really

1    their choice. And I guess it's still their choice, but at a

2    certain point I'm not going to let you drag the proceedings on

3    as the lone voice in the wilderness, especially when I'm

4    concerned about your client's motivations, in the first place.

5    So there is a definite limit to how much mileage you get out of

6    this due process argument.

7         The national rules require 20 days' notice. You will

8    have had far more than that if I put it over to the 14th. And I

9    really don't think you're entitled to anything more than that.

10        Here again it's not really my call. It's the parties

11   involved. Do you want me to set it for an evidentiary hearing

12   at that time or do you want a preliminary hearing?

13        MR. LEWIS: Yeah. Your Honor, what — what we advised,

14   and I will answer your question, but what we advised Mr. St.

15   James is that we are going to provide supplemental information

16   to him. But if he's not — you know, we think we've satisfied

17   the requirements of 9019 in the motion that's been filed and the

18   presentation that's been made today. We think the Court could

19   rule on that. If the Court wants evidence on that, we're

20   prepared to put it on.

21        We will provide Mr. St. James additional information.

22   Whether or not it will satisfy him, we have just no way of

23   knowing. We intend to do that probably by next Tuesday. That's

24   why we picked the date we did. And then we'll communicate with

25   him in good faith, trying to answer any questions he has, but we

*Connaught: Motion for Settlement with Legacy*                                27

1  don't want further delay.  We don't want further expense.  It's

2  built into why are we settling this.  It's not because of him,

3  but just because of those issues.

4        We're trying to get the Legacy plan confirmed.  We're

5  trying to stop the bleed of legal fees, which are sincerely

6  bleeding the estate.  And we're trying to stop that and get

7  positive, not negative.

8        So we think the date of the 14th is fine.  We don't

9  want to extend it any further, because the more time we take the

10 more it's going to cost to get there.

11        MR. ST. JAMES:  Your Honor, I have no problem with

12 that.  When I left the conversation, what I thought I heard Mr.

13 Lewis say is, "We are not going to commit to providing any

14 additional information."  And that's what led to my comments.

15 Now that I understand that there is a commitment to provide

16 additional information, to provide it by a date early next week,

17 I have no problem with going forward on the 14th.

18        THE COURT:  All right.  So I want you to have fair

19 notice that I may consider testimony at that time if necessary.

20 I was saying I believe I have the trustee's declaration in the

21 file.

22        MR. LEWIS:  You also have a declaration by the

23 responsible — excuse me — by a member of the Creditor's

24 Committee.

25        THE COURT:  All right.  Well, I will consider those

1   declarations and any other declarations which may be filed

2   between now and then so long as the declarants are available in

3   court at that time to be cross-examined.  And if I consider

4   those declarations, you will have a right to cross-examine them.

5   If you wish to bring any witnesses of your own, I will be happy

6   to listen to them.  But what I anticipate is you getting the

7   further information that you need, which I believe counsel was

8   representing you're going to have by next Tuesday, and then the

9   choice will be yours as to how you proceed.  But I do want to

10  give you an up or down on the compromise one way or another and

11  I want to do that at the continued hearing.

12          MR. LEWIS:  Thank you, Your Honor.

13          MR. ST. JAMES:  Thank you, Your Honor.

14          MS. LITTENEKER:  Thank you, Your Honor.

15          MR. PATTERSON:  Your Honor, I take it the Laminar

16  stipulations will also be as part of this motion heard the same

17  day; just to be clear?

18          THE COURT:  That works for me if it works for you.

19          MR. PATTERSON:  It's certainly fine with me.  I wasn't

20  sure whether Mr. St. James wanted to move them as well or

21  whether he had — still had issues with those.

22          MR. ST. JAMES:  I would appreciate that, just because

23  I haven't had the chance to study them.

24          MR. PATTERSON:  That's fine with us.

25          THE COURT:  Okay.  We'll consider those at the same

*Adversary 06-1173, Motion re Jury Trial*                                    29

1    time.

2            MR. LEWIS:  Thank you very much, Your Honor.  We

3    appreciate the Court's time.

4            THE COURT:  Okay.

5            MR. ST. JAMES:  Thank you.

6            THE COURT:  All right. thank you.

7            MR. ST. JAMES:  Your Honor?

8            THE COURT:  Yes.

9            MR. ST. JAMES:  There is one last matter that was set

10   for hearing today.

11           THE COURT:  Oh, oh, oh.  Is that — yeah, I was

12   scratching my head over that one.

13           THE CLERK:  This is number 6.

14           THE COURT:  You wanted a jury trial?

15           MR. ST. JAMES:  Your Honor, up until a day ago

16   everybody wanted a jury trial.

17           THE COURT:  You — the reason I was scratching my head

18   is that you had filed several claims — on behalf of your client

19   had filed several claims in the case.  And then when I looked at

20   the complaint it was the plaintiffs that wanted the jury, so I

21   wasn't sure what's going on.

22           MR. ST. JAMES:  Well, Your Honor, on your first issue,

23   last night I received a declaration that suggested that by

24   filing a claim for Sycamore Vineyard, we had actually filed a

25   claim for a trust, which is a defendant that I thought had never

1   filed a claim.  And I had not been able to hunt that to ground

2   in the, I guess, almost no business hours between receiving it

3   yesterday and this morning's hearing.

4           The suggestion was that the matter be continued so

5   that people could figure that out, and I have no objection to

6   that.  So we could also push this over to the same hearing date.

7   That would be fine.

8           I would point out that there seems to be a great deal

9   of manipulation going on here.  The plaintiffs represented by

10  very capable counsel filed a jury demand with their complaint.

11  Rule 9015 says that when you file a jury demand you cannot

12  withdraw it without the consent of all the parties.  So it was a

13  serious decision seriously made, and then last night I got a

14  unilateral withdrawal of the plaintiff's jury demand.

15          I don't understand what is going on there, but I'm

16  happy to have the matter continued over to this next hearing.

17  And that will give us a chance to respond to the allegations in

18  last night's declaration.

19          THE COURT:  Oh, okay.  Are you saying they can't —

20  they can't withdraw the jury demand?

21          MR. ST. JAMES:  Yeah.  Rule 9015 incorporates Federal

22  Rule 38(d), which says, "A demand for trial by jury, made as

23  herein provided, may not be withdrawn without the consent of the

24  parties."  And under Ninth Circuit law, there is a case that

25  says, "Any attempt to withdraw the demand without the

*Adversary 06-1173, Motion re Jury Trial*                                    31

1    respondent's consent could not succeed."  That's fairly well

2    established law throughout the country and it's obviously

3    codified in Federal Rule 38(d).

4         So, you know, this is a case in which I think

5    everybody who has filed either a complaint or an answer to date

6    has requested a jury.  And now that the natural consequence of

7    requesting a jury, which is that we go to the district court has

8    become clear, everybody is now scurrying to get around it.

9         And I don't think that that's the way the game's

10   supposed to be played, but I'm happy to have it put over until

11   our continued hearing, if you'd like.

12        THE COURT:  Well, that's interesting.  Is it — does

13   the rule — I've never come across this before.  Does the rule

14   say that you can't do without consent or order of the court, or

15   it just says you can't do it without consent, period?

16        MR. ST. JAMES:  It says you can't do it without

17   consent, period.  I'm not saying that the rule prevents the

18   Court from making an order.  All I'm saying is that what the

19   rule says is that once you make a jury demand you cannot

20   withdraw it without the consent of all the parties.  And that

21   rule is part of the federal rules.  It's part of Bankruptcy Rule

22   9015, and it's adopted in this district by Bankruptcy Local Rule

23   9015-1(a), I think.

24        THE COURT:  Well, frankly if that's the case it's okay

25   with me.  It's just one less case on my docket, but it's an

1  unusual situation where the — usually the estate representatives

2  don't want a jury trial because of the time and expense involved

3  as opposed to having it heard here.

4        But is everyone amenable to hearing the matter on

5  March 14th?

6        Okay.

7        MR. ST. JAMES:  Thank you, Your Honor.

8        MR. MACCONAGHY:  Your Honor, one thing, because there

9  is this factual issue of whether Sycamore Vineyards is a

10  fictitious dba of the John and Florence Bryan Trust, the

11  Committee may want to do discovery on this issue, and taking —

12  including taking the depositions of Mr. Bryan and perhaps an

13  individual named Alan Brudos (phonetic).  In the past —

14        THE COURT:  Well, if Ms. Bryan — if Mr. St. James is

15  correct, and that the jury demand can't be withdrawn without his

16  consent, then does it really matter whether or not Sycamore has

17  filed a proof of claim?

18        MR. MACCONAGHY:  I don't think it does, but we want to

19  be able to address all factual and legal issues by the 14th.

20  And as to that issue, Your Honor, I think that the — there's a

21  real question as to whether the estate representative, i.e., the

22  Committee, was entitled to a demand in the first place or

23  entitled to a jury in the first place.

24        The complaint was drafted by litigators who, you know,

25  have — one of the things pounded into the heads of litigators is

*Adversary 06-1173, Motion re Jury Trial*                                           33

1   you always make a demand for jury because you can waive it later

2   on.  And that's why this was done.  And I think the reason for

3   Rule 38(d) is the context that usually if one party demands a

4   jury, the other party or other parties are entitled to rely on

5   that jury demand.  And so requiring the consent for withdrawal

6   is a way of giving somebody else a chance to make a subsequent

7   jury demand.  It's an issue that we want to brief, and if we

8   conclude based on our legal research that either they don't have

9   an absolute right to block it or — or we never had a right in

10  the first place, we want to be able to do discovery on the

11  factual question of whether the Sycamore Vineyards is really the

12  John and Bryan Trust.

13        And in the past when we've tried to depose Mr. Bryan,

14  we had gotten a vigorous motion for a protective order from Mr.

15  St. James.  And I want the ability to do factual discovery on

16  this issue of whether they're the same entity.

17        THE COURT:  Well, why don't we deal with the threshold

18  legal issue first.  And if there's a factual issue left over,

19  we'll put that over and give you time to do some discovery.

20        MR. MACCONAGHY:  Okay.

21        MR. ST. JAMES:  Thank you, Your Honor.

22        THE COURT:  Okay.

23        MR. PATTERSON:  Your Honor, one final calendaring

24  matter.  We have on calendar a motion to dismiss in the

25  adversary proceeding that is currently set for next Friday,

1  March 2nd, at 9:00 a.m.  For the convenience of the parties, the

2  motion to dismiss was brought by Laminar against the crossclaim

3  asserted by the Bryan entities.  We would like to have that

4  moved to the 14th as well so that all these matters can be heard

5  on the same day.  We don't have out make separate trips.  I've

6  asked Mr. St. James whether that would be convenient for him.

7  He has checked with the litigator who is handling that hearing.

8  And I believe Mr. St. James has said that date is agreeable to

9  their side.  And so with consent, could that be moved to the

10  14th as well?

11          THE COURT:  Okay.

12          MR. PATTERSON:  Thank you very much.

13          MR. ST. JAMES:  Thank you, Your Honor.

14          MR. PATTERSON:  Should we file anything with the Court

15  to change the calendar?

16          THE COURT:  No.  As long as all the parties know about

17  it, we'll change our calendar.

18          MR. PATTERSON:  Thank you very much.

19          [COUNSEL]:  Thank you, Your Honor.

20          THE COURT:  Thank you.

21      (The matter was concluded at 10:33 o'clock a.m.)

22                          —oOo—

23

24

25

State of California            )
                               )       SS.
County of San Joaquin          )


      I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

      I further certify that I am not a party to nor in any way interested in the outcome of this matter.

      I am a Certified Electronic Reporter and Transcriber by the Americar Association of Electronic Reporters and Transcribers, Certificate No. 00124.  Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.


                                Susan Palmer
                                Palmer Reporting Services

                                Dated March 5, 2007