Glenn E. Westreich (State Bar No.100457)
gwestreich@nixonpeabody.com
Beth L. Mitchell (State Bar No. 187460)
bmitchell@nixonpeabody.com
Rosalyn P. Mitchell (State Bar No. 173829)
rmitchell@nixonpeabody.com
NIXON PEABODY LLP
Two Embarcadero Center, Suite 2700
San Francisco, CA 94111
Telephone: (415) 984-8200
Facsimile: (415) 984-8300

Michael St. James (State Bar No. 95653)
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, CA 94104
michael@stjames-law.com
Telephone: (415) 391-7566
Facsimile: (415) 391-7568

Attorneys for Defendants/Cross-Claimants
JOHN M. AND FLORENCE E. BRYAN
TRUST

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re     Case No. 05-14659 | Case No.  C 07-2943 PJH |
| THE LEGACY ESTATE GROUP, LLC, formerly doing business as FREEMARK ABBEY WINERY, BYRON VINEYARD & WINERY, and ARROWOOD VINEYARD & WINERY | **TRANSCRIPT OF EVIDENTIARY HEARING** |
| Debtor | |
| Adv. No.  06-01173 | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE LEGACY ESTATE GROUP, LLC, | |
| Plaintiff, | |
| v. | |

1  JOHN M. BRYAN, JOHN M. AND
   FLORENCE E. BRYAN TRUST, J.M. BRYAN
2  FAMILY TRUST, KULWINDER SIDHU,
   DEVINDER SIDHU, PACIFIC PARAGON
3  INVESTMENT FUND LTD, a British Columbia
   company, HARRY CHEW, and AIC CAPITAL
4  PARTNERS, LLC, a California limited liability
   company
5                            Defendants.

6

7  JOHN M. BRYAN, JOHN M. AND
   FLORENCE E. BRYAN TRUST, J.M. BRYAN
8  FAMILY TRUST,
                 Defendants/Cross-Claimants,
9

10             v.

11 KULWINDER SIDHU, DEVINDER SIDHU,
   PACIFIC PARAGON INVESTMENT FUND
12 LTD, a British Columbia company, HARRY
   CHEW, AIC CAPITAL PARTNERS, LLC, a
13 California limited liability company, and
   LAMINAR DIRECT CAPITAL, L.P., a Texas
14 limited partnership
                 Defendants/Cross-Defendants.
15

16

17     Attached hereto is a true and correct copy of the transcript of the Evidentiary Hearing

18 conducted by the Bankruptcy Court on September 27, 2007 with respect to the JFB Trust's jury

19 demand.

20

21                              Respectfully submitted,

22
   DATED:  October 19, 2007          NIXON PEABODY, LLP
23                                   ST. JAMES LAW, P.C.

24

25                              By:  /s/  Michael St. James   .
                                     Michael St. James
26                                   Counsel for the JFB Trust

27

28

1

1    UNITED STATES BANKRUPTCY COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    (SANTA ROSA DIVISION)

4

5    In re:

6    THE LEGACY ESTATE GROUP, LLC,          Case No. 05-14659

7                                           Chapter 11

8                                           Santa Rosa ,California
                                            September 27, 2007
9                                           10:06 a.m.
            Debtor.
10    _____/

11    OFFICIAL COMMITTEE OF UNSECURED
      CREDITORS OF THE LEGACY ESTATE
12    GROUP, LLC,

13            Plaintiff,

14        v.                                A.P. No. 06-1173

15    JOHN M. BRYAN, JOHN M. AND
      FLORENCE E. BRYAN TRUST,
16    J.M. BRYAN FAMILY TRUST,
      KULWINDER SIDHU, DEVINDER
17    SIDHU, PACIFIC PARAGON
      INVESTMENT FUND, LTD., a British
18    Columbia company, HARRY CHEW,
      and AIC CAPITAL PARTNERS, LLC,
19    a California limited liability
      company,
20
            Defendants.
21    _____/

22
                TRANSCRIPT OF PROCEEDINGS
23    MOTION TO CERTIFY CASE TO DISTRICT COURT
                    FOR JURY TRIAL
24
      BEFORE THE HONORABLE ALAN JAROSLOVSKY
25        UNITED STATES BANKRUPTCY JUDGE

2

1  APPEARANCES:

2

3  For the Unsecured            MacCONAGHY and BARNIER
   Creditors' Committee:        BY: JOHN H. MacCONAGHY, ESQ.
4                                        -and-
                                    JEAN BARNIER, ESQ.
5                               645 First Street West #D
                                Sonoma, California 95476
6

7
   For John Bryan:             NIXON PEABODY, LLP
8                              BY: GLENN E. WESTREICH, ESQ.
                               One Embarcadero Center, 18th Floor
9                              San Francisco, California 94111

10

11  Court Recorder:            KATIE ANDERSEN
                               UNITED STATES BANKRUPTCY COURT
12                             99 South "E" Street
                               Santa Rosa, California 95404
13

14
    Transcription Service:     Jo McCall
15                             Electronic Court
                               Recording/Transcribing
16                             2868 E. Clifton Court
                               Gilbert, Arizona 85297
17                             Telephone: (480)361-3790

18

19

20

21

22

23

24

25

1                   P R O C E E D I N G S

2    October 1, 2007                          10:06 a.m.

3                        ---oOo---

4              THE CLERK: The court is now in session, The

5    Honorable Alan Jaroslovsky presiding.

6              THE COURT: Be seated, please.

7              THE CLERK: No. 2 on the 10:00 o'clock calendar,

8    The Official Committee of Unsecured Creditors versus Bryan.

9              MR. MacCONAGHY: Good morning, Your Honor, John

10   MacConaghy and Jean Barnier for the plaintiff, The Official

11   Unsecured Creditors' Committee of the estate of The Legacy

12   Estate Group, LLC.

13             MR. WESTREICH: Good morning, Your Honor, Glenn

14   Westreich, Nixon Peabody, for John Bryan and the Bryan

15   Trusts.

16             THE COURT: Well, as I understand it, there's

17   evidence that this trust is revocable?

18             MR. MacCONAGHY: That is correct, Your Honor, and

19   we're prepared to proceed accordingly.

20             MR. WESTREICH: Your Honor, we'll stipulate to --

21             THE CLERK: Counsel, you need to use one of the

22   microphones.

23             MR. WESTREICH: Your Honor, we will stipulate that

24   the John and Florence Bryan Trust, the trust at issue, is a

25   revocable trust.

4

1          THE COURT: So is there any reason why I should
2    not deny the request for a jury?
3          MR. WESTREICH: Yes, Your Honor.  As we pointed
4    out in the brief that we filed this week, a revocable trust
5    is recognized in the State of California as a separate and
6    distinct legal entity.  All parties are entitled under the
7    Seventh Amendment of the United States Constitution to a
8    right to a jury.
9          The Probate Code specifically provides that there
10   is no merger between the trust and settlor or trustee, so
11   there's no question that it's a separate entity.  It
12   provides different rights and obligations and has its own
13   set of rights and duties.  And just as in this case, the
14   trust was named by the plaintiff as a defendant, a separate
15   defendant, because all of the transactions in issue with
16   respect with the trust were entered into by the trust
17   itself, and as in this case, in fact, a number of causes of
18   action are stated solely against the trust --
19         THE COURT: Well, let me put it to you this way.
20   If I wanted to avoid litigation in bankruptcy, what would
21   keep me from creating a revocable trust just before
22   bankruptcy or maybe even just before the hearing in front
23   of the Bankruptcy Court?
24         MR. WESTREICH: Well, in this particular case, I
25   think that question doesn't really apply.  This trust has

1  existed since --

2        THE COURT: So you're saying that anyone who's

3  clever can avoid having a bankruptcy issue litigated in the

4  Bankruptcy Court just by creating a revocable trust.

5        MR. WESTREICH: Well, I don't see how that would

6  avoid it, because if the trust is a party to transactions,

7  then the trust is going to -- and if the trust submits a

8  claim, the trust is going to be subject to Bankruptcy Court

9  jurisdiction just like if an individual is a party to a

10  transaction and submits a claim.  You have two different

11  entities here.  It's no different than forming a

12  partnership or a corporation.

13        THE COURT: Well --

14        MR. WESTREICH: But there's absolutely no evidence

15  here that this trust was formed to avoid Bankruptcy Court

16  jurisdiction.

17        THE COURT: But the point is, if you're right,

18  anybody could avoid --

19        MR. WESTREICH: I'm not sure why that would be

20  true.  The trust, like any other entity, can submit a claim

21  in Bankruptcy Court.  Had the trust here submitted a claim

22  in this court, we wouldn't be arguing about whether it was

23  subject to your jurisdiction.

24        THE COURT: Well, but there are three claims here,

25  right?  And two of them have been filed.

1          MR. WESTREICH: True.

2          THE COURT: And including one by Mr. Bryan.

3          MR. WESTREICH: Correct.

4          THE COURT: And so this is the third one, so --

5          MR. WESTREICH: And it's separate and distinct

6   from the other claims.

7          THE COURT: Yeah, I know, but you're -- look, I

8   have to restrain myself.  I understand Mr. St. James has

9   been the attorney who's been doing this all along, but to

10  me, this is just a big game that's being played, and I'm

11  getting tired of playing it.  I think your client is just

12  trying to make this as expensive as possible for this

13  matter to be litigated.  I think that your client is using

14  both proceedings in this court and the District Court to do

15  it.  And this looks to me just like another game your

16  client is playing.

17         MR. WESTREICH: Well, Your Honor, I can assure you

18  that there's no gamesmanship involved.  What's involved is

19  a party that has not submitted to the jurisdiction of this

20  court, enforcing the right that the United States

21  Constitution provides to it.

22         THE COURT: All right.  Well, is there any reason

23  why I shouldn't take the matter under submission and decide

24  the legal issue?

25         MR. WESTREICH: I don't -- I actually agree that

1  it's purely a legal issue. I don't think the alter ego
2  theory that's been advanced by the plaintiff has any
3  bearing on a party's constitution rights, and there's
4  absolutely no law that says that there's any relationship.
5          THE COURT: Well, maybe I'm going to make some.
6          MR. WESTREICH: Well, I would just ask Your Honor
7  to carefully review the authorities. This is a
8  constitutional issue, and I think before anyone is deprived
9  of constitutional rights, there ought to be clear law and
10  there's simply no law that provides for this.
11          THE COURT: I'll do my best to make some clear
12  law.
13          MR. WESTREICH: All right. Well, thank you, Your
14  Honor.
15          MR. MacCONAGHY: Your Honor, with illusions to
16  constitutional issues, I'm hearing illusions to further
17  appeals.
18          THE COURT: Well, appeal is the proper way to get
19  this resolved. What's improper is to try to -- is to try
20  to use the tail to wag the dog and get the rest of these
21  matters away from me when this is clearly a dispute between
22  a bankruptcy estate and creditors who filed claims, and
23  it's supposed to be adjudicated here for reasons of economy
24  and for reasons of waiver of the right to a jury. So
25  Bankruptcy Courts have been hearing matters like this for a

1  hundred years, and the conduct of the claimants in this
2  case, to my mind, is very close to reprehensible.

3       MR. MacCONAGHY: My point, Your Honor, is that if
4  there is going to be further litigation in a higher court
5  about this, we would like to make a complete factual record
6  because there's a very definite factual dispute here.
7  Counsel says that the John and Florence Bryan Trust is a
8  revocable trust and thus a distinct legal entity and thus
9  has never filed a Proof of Claim in this case, and we take
10 great issue with that statement.

11      We are prepared -- and I an make an offer of
12 proof to -- and we would like to call Mr. Bryan as an
13 adverse witness to demonstrate that in fact John Bryan, to
14 be precise, and his wife Florence own absolutely nothing.
15 Mr. Bryan has testified in deposition that every single
16 asset he owns is in fact an asset of the John and Florence
17 Bryan Trust, the claimant at issue by this motion, with the
18 exception of things that he owns in the John M. Bryan
19 Family Trust.  So we would be able to present a record
20 today, Your Honor, that the claims are actually receivables
21 owned by the John and Florence Bryan Trust, not Mr. Bryan,
22 that the underlying economic interests that are being
23 protected by these claims are not the interests of, quote,
24 "John Bryan" per se but actually the John and Florence
25 Bryan Revocable Trust, to be precise, exactly the same as

1    when Your Honor heard a status conference on Monday in the
2    case of <u>Locke versus Ingram Entertainment</u>.  You weren't
3    adjudicating a claim for Mr. Locke even though the action
4    was properly so captioned.  You were adjudicating a claim
5    for an estate, and these claims, I think we can demonstrate
6    as a factual matter, were in fact filed by Mr. Bryan in his
7    representative capacity as trustee for the John and
8    Florence Bryan Revocable Trust.  So we're prepared to
9    present that factual record.

10           THE COURT: All right.  So you're saying the facts
11   are even stronger.  I have serious doubts about whether or
12   not a revocable trust is not bound by the Proof of Claim
13   filed by the person with the power to revoke the trust,
14   period.  But you're saying there's additional facts, and
15   I'll be happy to hear them if there's not a stipulation.

16           MR. WESTREICH: Well, Your Honor, everything that
17   counsel is referring to is in the record already.  It was
18   all submitted in connection with Mr. Bryan's deposition,
19   and I think there's no reason to call him onto the stand to
20   put on duplicative testimony.  He admitted as much in his
21   ex parte motion that all the facts that he's relying on are
22   already in the deposition.

23           THE COURT: Well, Mr. MacConaghy has just made an
24   offer of proof.  Do you accept it or not?

25           MR. WESTREICH: I accept the fact that -- I don't

1   accept his characterization of the fact that -- or the

2   claim, that in making personal claims, that is, John Bryan

3   making a claim against the bankruptcy, he was acting on

4   behalf of the trust, but the facts which are the only

5   things that Mr. Bryan can attest to are already -- the

6   facts that he has substantially all of his assets in the

7   trust or in the Family Trust are something that we would

8   stipulate to and that Mr. Bryan already testified to and

9   that are already before this Court in the record.

10          THE COURT: Well, Mr. MacConaghy, I'm not sure if

11  that meets your offer of proof or not.  Are you satisfied

12  with that or do you want a further admission or do you want

13  to call a witness?  I mean factually the only thing you

14  added to it that I could hear was that all of the assets

15  are in the trust.  That is an additional factor.  Are there

16  additional factors that you feel are important and then

17  have they or have they not been admitted to?

18          MR. MacCONAGHY: You know, Your Honor, I think

19  they have admitted as a general matter, and I am -- I don't

20  need to call Mr. Bryan as a witness as a consequence, but I

21  would like to focus on some things for argument purpose,

22  just again, to get it on the record.  And specifically, I

23  would like to get on the record the exact deposition

24  testimony in question, and I have placed in front of Your

25  Honor and counsel two black binders, one that has the

1   deposition of Mr. Bryan and the second is a, quote,

2   "Exhibit Book." The Exhibit Book has eight tabs. Seven of

3   those tabs are actually pleadings in the cases, the Proofs

4   of Claim and the claims docket sheet. And the eighth tab

5   is the John and Florence Bryan Trust Agreement that I would

6   like to move into evidence.

7           As far as the deposition testimony in question,

8   the specific testimony that we are relying on, the most

9   important testimony is at page 30 and 31, and there's just

10  a few lines I would like to get into the record. Starting

11  at page 8, my colleague said:

12          "Question: Let's now turn to the John and

13          Florence Bryan Trust.

14          "Answer: That's a present interest trust."

15  And then there's a brief colloquy:

16          "Question: When you say it's a present interest

17          trust, what do you mean by that, Mr. Bryan?

18          "Answer: It's a trust established by Flo and

19          myself which essentially owns all of our assets."

20  Then on page 31, line 11:

21          "Question: What assets are in that trust?

22          "Answer: Most of our personal holdings, our

23          stocks, our real estate.

24          "Question: Are there any personal holdings of

25          yours and your wife that are not in the John and

1       Florence Bryan Trust?

2          "Answer: Not that I'm aware.

3          "Question: So basically everything that you and

4          your wife own is property of the John and

5          Florence Bryan Trust?

6          "Answer: Correct."

7   Now, if you look at the trust agreement, Your Honor, on

8   page 1, it identifies Mr. Bryan as the -- Mr. and Mrs.

9   Bryan as the settlors. He's the trustee. There's a co-

10  trustee who is an accountant under his employ,

11  approximately half time. The trust agreement on Article II

12  says that they can revoke it, amend it, withdraw property

13  at any time. And in Article III it says that while they're

14  alive, they get all the income and they can consume any

15  portion of the principal they deem fit.

16      Mr. Bryan testified that -- and that this was

17  essentially a substitute for a Will, that's perfectly

18  legitimate in that regard, and we don't dispute that. It's

19  an estate planning device commonly used by millions of

20  people.

21      Turning to the Proof of Claim that he filed in

22  this case, or one of the Proofs of Claim, which is Exhibit

23  5 in the book, it's a 1.5 million dollar claim -- excuse me

24  1.3 million dollar claim filed by John M. Bryan and it's

25  essentially a subrogation claim. The attachment to the

1   claim says, quote:

2                "John M. Bryan honored the Bryan guaranty by

3                paying Red Barn Ranch 1.3 million dollars."

4            Well, if we combine that with the prior

5   testimony, John M. Bryan really didn't pay the 1.3 million

6   dollars because John M. Bryan has no money.  The money was

7   really paid by the John M. Bryan Trust.  That was part of

8   their liquid assets.  That was the economic interest that

9   was being protected by that payment, and the claim in turn

10  was being filed on behalf of the real party in interest who

11  made the payment, if we're going to call them separate

12  legal entities as opposed to just an estate planning

13  device.

14           I don't want to belabor this too much, Your

15  Honor, but the same analysis can be used for the 20 million

16  dollar claim filed in the Legacy case which is Claim 3 and

17  there's another claim -- excuse me, I think I said Claim 3;

18  it's Exhibit 3 -- I believe it's Claim 122.  And then

19  there's also this claim for Sycamore Vineyards, which is a

20  longstanding partnership of John and Florence Bryan, which

21  in turn owns I think the growing vines, not the underlying

22  dirt.  It's a vineyard company.  But it's a partnership,

23  and who owns that partnership?  That partnership is

24  owned -- that's one of the assets owned by the John and

25  Florence Bryan Trust.  That too is a claim by that entity

14

1   in this case.

2          These claims -- you know, a claim is an asset;

3   is's an account receivable, and it's one of the assets

4   owned by the John and Florence Bryan Trust.  I want to just

5   wrap this up with a little argument.  You know, I've

6   recently had the misfortune to have a couple of matters in

7   State Court, and everybody works very hard there but it

8   takes about three years to get a dispute from filing to

9   jury trial in State Court, and a minimum jury trial is

10  three days, on the simplest account receivable claim.

11          If this Court had to have a jury trial for

12  everything it does, there would not be a bankruptcy that

13  took less than 20 years to resolve.  And I think both sides

14  agree on the basic premise, which is that if one comes into

15  this court and files a Proof of Claim, he's asked this

16  Court to use its summary equitable powers to award him

17  money from the bankruptcy estate without the long delays

18  and expense of a jury trial.

19          The unbroken line of Supreme Court constitutional

20  authority says that this comes at a cost.  If in turn, the

21  estate wants money from that person, that claimant has no

22  right to back out and say, no, no, I really want a jury

23  trial with all of its attendant delays and expense.  The

24  claimant has consented to the summary equitable

25  jurisdiction of the court, the same equitable jurisdiction

1  that he sought to take advantage of.

2        I think we've demonstrated that the John and

3  Florence Bryan Trust is actually the claimant in this case

4  as represented by Claims 122, I think it's 145, and 126.

5  They're set forth in the exhibit book.  This is the place

6  to try this case.  It should be done by the Court, not a

7  jury.

8        THE COURT: I'm assuming that you're asking me to

9  admit 1 through 8 and the deposition transcript as part of

10 the record in this matter?

11       MR. MacCONAGHY: I suppose so, Your Honor.  I

12 don't believe that I need to admit Proofs of Claim because

13 they're already in the Court's record, but sure.

14       MR. WESTREICH: Your Honor, we have no objection.

15 I think that Proofs of Claim are already subject to

16 judicial notice and the deposition transcripts that Mr.

17 MacConaghy is relying on having already been submitted.

18       THE COURT: All right.  Well, we've still got the

19 trust document, and that's No. 8, right?

20       MR. MacCONAGHY: Yeah.

21       MR. WESTREICH: And that's already in evidence,

22 Your Honor, as an exhibit in connection with the

23 plaintiff's briefs that were filed last week.

24       THE COURT: Okay.  Well, unless you have anything

25 you want to add to that, I'll take the matter under

1  submission.

2            MR. WESTREICH: Your Honor, just very briefly.

3  All the points that Mr. MacConaghy just made are

4  interesting, but none are relevant.  The only relevant

5  issue is, is a separate and distinct entity under

6  California law entitled as a party to enforce its

7  constitutional jury trial rights, and there's no law that

8  says --

9            THE COURT: No, the issue is, does the waiver of

10  the jury trial right by the person with the power to revoke

11  the trust also waive the jury trial right for the trust?

12            MR. WESTREICH: There is no evidence, nor has any

13  been offered that Mr. Bryan in his capacity as trustee or

14  otherwise acting on behalf of this trust --

15            THE COURT: I didn't say that.

16            MR. WESTREICH:  -- waive the jury trial right.

17  If he --

18            THE COURT: The issue is, since he has a right to

19  revoke the trust, is his waiver also effective as to the

20  trust.

21            MR. WESTREICH: I don't think that there's any

22  evidence that -- well, there's certainly no legal authority

23  in support of the notion that the mere right to revoke a

24  trust thereby makes the acts of the settlor or trustee in

25  his individual capacity also the acts of the trust, just as

1  the mere right --

2         THE COURT: Aren't they treated as alter egos

3  under California law?

4         MR. WESTREICH: Well, as we pointed out, alter ego

5  is a theory that provides a remedy to avoid injustice, and

6  as Justice Mosk (Phonetic) pointed out in the Messler

7  (Phonetic) case, even where the alter ego theory is

8  applied, it's only applied for specific purposes as for

9  example, where an entity is used for a fraudulent purpose,

10 the alter ego doctrine will be applied to avoid the fraud.

11 There's no evidence here and I think counsel will stipulate

12 that this trust was set up for purely legitimate reasons,

13 and it was set up many, many years ago.

14         There's no evidence to support the notion that

15 there was any intention to avoid Bankruptcy Court

16 jurisdiction.  So we're back to square one.  A corporation

17 with a sole shareholder likewise can be dissolved, just

18 like a trust could be revoked, at the election of the

19 shareholder.  But that does not mean the corporation has no

20 legal rights.

21         It's precisely the same situation here.  And in

22 the absence of any authority that provides that the mere

23 right to revoke somehow turns this into a quasi entity or

24 an entity that's entitled to less than the full panoply of

25 constitutional rights, I think the only correct conclusion

1  is that this trust, as a separate and distinct entity has

2  rights and can enforce them.

3          MR. MacCONAGHY: Submitted.

4          THE COURT: All right.

5          MR. WESTREICH: Thank you, Your Honor.

6          THE COURT:  The parties can expect a written

7  decision within ten days.

8          MR. MacCONAGHY: Thank you.

9          MR. WESTREICH: Thank you very much.

10      (Whereupon, the proceedings are concluded at 10:31

11  a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

19

CERTIFICATE OF TRANSCRIBER


     I certify that the foregoing is a correct transcript from the digital sound recording of the proceedings in the above-entitled matter.


DATED:  October 17, 2007      /s/ Jo McCall