"EXHIBIT B" TO THE DECLARATION OF KIMBERLY S. MORRIS IN SUPPORT OF PLAINTIFF'S BRIEF IN SUPPORT OF A COURT DETERMINATION THAT THE JOHN M. AND FLORENCE E. BRYAN TRUST HAS WAIVED ITS RIGHT TO A JURY TRIAL

```
 1              UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF CALIFORNIA
 2                   SANTA ROSA DIVISION
 3   In re:
     THE LEGACY ESTATE GROUP, LLC,
 4   a California Limited Liability
     Company, formerly doing
 5   business as FREEMARK ABBEY
     WINERY, et al.,
 6
                Debtor.
 7   _____

     OFFICIAL COMMITTEE OF UNSECURED
 8   CREDITORS OF THE LEGACY ESTATE
     GROUP, LLC,
 9
                Plaintiff,
10
        vs.                          Case No. 05-14659
11
     JOHN M. BRYAN, JOHN M. AND FLORENCE
12   E. BRYAN TRUST, J.M. BRYAN FAMILY
     TRUST, KULWINDER SIDHU, et al.,
13
                Defendants.
14   _____
     JOHN M. BRYAN, JOHN M. AND FLORENCE
15   E. BRYAN TRUST, J.M. BRYAN FAMILY
     TRUST,
16
        Defendants and Cross-Claimants.
17   _____
18           DEPOSITION OF JOHN M. BRYAN
19              San Francisco, California
20              Friday, September 14, 2007
21   Reported by:
     DARCY J. BROKAW
22   CSR No. 12584
23   JOB No. 71470
24
25
```

1

1  think.  I'm not sure about my wife.  But anyway, all
2  my children or descendants.
3          MR. WOOLNER:  Glenn, I don't think we've
4  ever been given a copy of the trust instrument for
5  the Family Trust.  We'll talk later about that.
6          MR. WESTREICH:  Okay.
7  BY MR. WOOLNER:
8      Q    Let's turn now to the John and Florence
9  Trust.
10     A    That's a present interest trust.
11     Q    You're referring now to the John and
12 Florence Trust?
13     A    Right.
14         MR. WESTREICH:  Let him ask the questions
15 and then give him answers.
16 BY MR. WOOLNER:
17     Q    When you say it's a present interest
18 trust, what do you mean by that, Mr. Bryan?
19     A    It's a trust established by Flo and
20 myself, which essentially owns all of our assets.
21     Q    When you refer to "Flo," you're referring
22 to your wife Florence?
23     A    Yes.  Not water flow.
24     Q    And you indicated in your last answer that
25 the John and Florence Trust owns all of your assets;

```
 1   is that --
 2           MR. WESTREICH:  Objection,
 3   mischaracterizes his testimony.
 4           THE WITNESS:  Pardon?
 5           MR. WESTREICH:  I said objection, that
 6   mischaracterizes your testimony.
 7   BY MR. WOOLNER:
 8       Q   You can answer.
 9       A   Well, it represents the trust's -- the
10   assets that are in that trust, yes.
11       Q   What assets are in that trust?
12       A   Most of our personal holdings, our stocks,
13   our real estate.
14       Q   Are there any personal holdings of yours
15   and your wife that are not in the John and Florence
16   Trust?
17       A   Not that I'm aware.
18       Q   So basically everything that you and your
19   wife own is property of the John and Florence Trust?
20       A   Correct.
21       Q   What I'd like to do is show you some
22   documents that have been produced to us, Mr. Bryan,
23   and ask you questions about them.
24           MR. WOOLNER:  Glenn, I'd like to mark
25   these collectively as Exhibit 64, but there are four
```

```
 1   BY MR. WOOLNER:
 2       Q    Mr. Bryan, do the documents that we have
 3   marked collectively as Exhibit 64 reflect the
 4   instrument representing or governing the John and
 5   Florence Trust?
 6       A    I haven't read it.
 7       Q    Take a look at it and satisfy yourself as
 8   to --
 9       A    I mean, I haven't looked at it for
10   decades, so...
11       Q    Let me suggest to you that these documents
12   were executed in or about 2004.
13       A    They were?
14       Q    If you look at the back of each document,
15   I think you'll see -- you'll see --
16       A    They might have been updated.
17       Q    Let me try it a different way.
18            MR. WESTREICH:  Just let him ask questions
19   and answer them.
20            I thought the question was, do these four
21   documents comprise the trust instruments for the
22   John and Florence Bryan Trust?
23   BY MR. WOOLNER:
24       Q    Right.  Mr. Westreich has accurately
25   paraphrased what I was asking.
```

1  slow things down, but let me hold off on doing that.
2  If these are the documents that we've produced, then
3  I can stipulate that these are, as far as I can
4  tell, the documents, but I don't know what else may
5  be out there.
6         MR. WOOLNER:  You can do that over lunch,
7  because I don't want to waste time.  But we're going
8  to get this established one way or the other.
9         MR. WESTREICH:  Sure.
10 BY MR. WOOLNER:
11    Q    Why was the John and Florence Trust
12 established, Mr.~Bryan?
13    A    To simplify an estate settlement, I think,
14 more than anything.
15    Q    Is it fair to say that this is a trust
16 established in lieu of a will --
17    A    Yes.
18    Q    -- to dispose of the estate of you and
19 your wife?
20    A    I'd say so.
21    Q    And you and your wife were the settlors of
22 the John and Florence Trust?
23    A    Correct.
24    Q    We've already established that you and
25 Mr. Brudos are the two cotrustees.

```
 1   interested in his -- you know, his opinion on
 2   something.
 3       Q   Look at the first sentence in the section
 4   labeled G on Page 11380, please, and just read it to
 5   yourself.
 6       A   Okay.
 7       Q   Does that accurately reflect the
 8   understanding that you had about your power to
 9   manage trust property?
10       A   I really haven't given it any thought.
11   It's just never been an issue.
12       Q   Have you ever read through the documents
13   we've marked as Exhibit 64?
14           MR. WESTREICH:  All four?
15           MR. WOOLNER:  Well, 64 is collective.
16           MR. WESTREICH:  I understand.  So he's
17   asking, have you read through all four of these
18   documents, 64A, B, C and D?
19           THE WITNESS:  I'm not sure.
20   BY MR. WOOLNER:
21       Q   I'm assuming that lawyers prepared these
22   for you and gave them to you to sign.
23       A   Correct.
24       Q   Okay.  So do you actually recall reading
25   through the whole thing ever?
```

1     A     No.

2     Q     So to get an understanding of the trust

3  provisions, our best -- the best thing for us to do

4  is actually to read the trust; is that a fair

5  statement?

6     A     I guess that's true.  And I don't know why

7  it was changed, I mean, you know, redone.  I just

8  don't know.  I don't recall or remember why.  There

9  must have been some reason, but --

10          MR. WESTREICH:  Okay.  There's no question

11  pending.

12  BY MR. WOOLNER:

13     Q     So far as you know, has Alan Brudos,

14  acting as a cotrustee of the John and Florence

15  Trust, ever made a decision with respect to trust

16  property without consulting you?

17     A     He wouldn't.

18     Q     So far as you know, he has not?

19     A     Correct.

20     Q     The property that went into the trust, I

21  think you indicated earlier, included things like

22  stocks and real estate.  Did I get that right?

23     A     Correct.

24     Q     With respect to the real estate, does that

25  include residences?

43

1    BY MR. WOOLNER:

2        Q    You used the homes the same way?

3        A    I think so.

4        Q    Stocks went into the trust on a particular
5    date or particular dates, right?
6             Did you do anything different with the
7    stocks after the trust was created, as compared to
8    before the trust was created?

9        A    Well, I might have sold them later.  But
10   putting it in the trust, I don't think had any
11   particular impact on our decision.

12       Q    Put another way, putting it into the trust
13   didn't change the way you dealt with the property in
14   the trust?

15       A    Correct.

16       Q    Who pays trust administration expenses?

17       A    I suppose the trust does.

18       Q    Do you know?

19       A    I really don't know how -- I don't know.
20   I can't answer that.

21       Q    But to the extent that somebody pays it,
22   they're being paid by assets of you and your wife;
23   is that a fair statement?

24            MR. WESTREICH:  Objection, calls for a
25   legal conclusion.

```
1        A    Yes.
2        Q    Do you recognize that as his signature?
3        A    Yes.
4        Q    Did you consult with Mr. Brudos at all
5   about the proposed purchase price?
6        A    I doubt it.
7        Q    Did you consult with Mr. Brudos at all
8   about the proposed sale of the Bryan interests to
9   Connaught?
10       A    I'm sure we discussed it.
11       Q    Is this document, Exhibit 9, the document
12  under which Connaught acquired from your trusts, the
13  John and Florence Trust and the Bryan Family Trust,
14  your membership interest in Legacy?
15       A    Pardon?
16       Q    Is this document, Exhibit 9, the document
17  under which Connaught Capital Partners acquired the
18  two trusts' interests in Legacy?
19       A    It looks like it.
20       Q    And the purchase price for the interests
21  that your trust held was just under $8.7 million?
22            I'm looking at Section 1.2.
23       A    Yeah.  I don't know where it says 8.457.
24  That isn't quite right, is it?
25       Q    No.  Those are the number of units,
```

149

```
1     Mr. Bryan.  I'm looking at Section 1.2, lower down
2     on the first page.
3          A    Uh-huh.  Yeah.  Okay.
4          Q    Do you see the price shown there?
5          A    Yes.
6          Q    What is that price?
7          A    Pardon?
8          Q    What is that price?
9          A    Well, it says here what it is.
10         Q    I'm just trying to get it for the record.
11         A    Oh.  It's $8,677,610.00.
12         Q    Did you approve entry by the two trusts
13    into this contract?
14         A    Yes.
15         Q    Now, the agreement contemplates in
16    Section 1.3.1 on that first page that, "The purchase
17    price shall be paid by wire transfer or bank cashier
18    checks at the closing."
19              Do you see that?
20         A    Yes.
21         Q    In fact, the full purchase price was not
22    paid by wire transfer at the closing, was it?
23         A    No.
24         Q    A portion of that purchase price was paid
25    in the form of a note; is that correct?
```

150

         I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

         That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

         Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [X] was [ ] was not requested.

         I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

         IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: SEP 1 8 2007

*[signature]*
DARCY J. BROKAW
CSR No. 12584