# (Exhibit 13)
# EXHIBIT 8

# JOHN M. AND FLORENCE E. BRYAN TRUST

(AN AMENDED AND RESTATED TRUST INSTRUMENT)

## ARTICLE ONE: Introduction

### A.    Date and Parties

1.    This trust instrument is signed as of the date set forth on page 15-6 by John M. Bryan (John) and by Florence E. Bryan (Florence), the Settlors, and John M. Bryan and Alan R. Brudos, the original trustees.

2.    While both Settlors are living, the name of the trust governed by this instrument is the "John M. and Florence E. Bryan Trust." After the death of the first Settlor to die, the John M. and Florence E. Bryan Trust divides into subtrusts, and trustees may choose other names for the subtrusts.

3.    This is an amended and restated trust instrument setting forth the terms of the "John M. and Florence E. Bryan Trust," created by a trust instrument dated August 19, 1991, and amended on August 19, 1991, September 20, 1996, and March 30, 2004. Pursuant to the authority conferred by Article TWO, Section A ("While Both Settlors Are Living; Rights Reserved by Settlors Acting Together") of the trust instrument dated August 19, 1991, this amended and restated trust instrument supersedes all previous instruments and continues the trust created on August 19, 1991.

### B.    Settlors' Family. 
Settlors are husband and wife. They have four adult children living on the date of this instrument whose names are: Kathryn Bryan Hampton, Suzanne E. Bryan, Amanda A. Bryan, and Anne de Lencos Bryan. Settlors have no other children living or deceased.

### C.    Trust Property. 
The property subject to this instrument includes but is not limited to all of the property now held by the trustees of the John M. and Florence E. Bryan Trust. By

64 A

BR0011350

signing this instrument, Settlors transfer and convey to trustees all of their property (including property described on the attached Exhibit A) not already held by trustees. During the joint lives of Settlors, all community property that becomes part of the trust estate and the proceeds thereof shall retain their character as community property, subject to administration pursuant to this instrument. Except for interests in segregated separate property, the beneficial interests of Settlors under this trust shall be their community property. Trustees shall segregate Settlors' community property and each Settlor's separate property and shall maintain appropriate books or records to avoid commingling that property. If any property is withdrawn from the operation of this instrument, by revocation or otherwise, the property shall retain its community or separate character, as the case may be. "Segregated separate property" includes any property identified as a Settlor's separate property on Exhibit A (or elsewhere in this instrument), or on a Holding Agreement, a Marital Property Agreement, a Separate Property Agreement, or a Community Property Agreement signed by Settlors.

   D.    **Additions to the Trust.** Any property acceptable to trustees may be added to this trust at any time. Additional property upon its receipt and acceptance by trustees shall become a part of the trust estate.

   E.    **Execution of Additional Documents by Settlors.** On trustees' request, Settlors will sign and deliver to trustees any additional documents trustees deem necessary or convenient to vest the title or record ownership of the trust property in trustees or to evidence trustees' title to or record ownership of the trust property, but the execution of this trust instrument is intended to vest title in trustees.

   F.    **No Contract To Create Trust.** Settlors have made no agreement controlling the disposition of the trust property other than this trust agreement.

*      *      *      *      *

BR0011351

ARTICLE TWO: **Rights Reserved by Settlors**

A.    **While Both Settlors Are Living; Rights Reserved by Settlors Acting Together.**
Until the death of the first of them to die, Settlors reserve the rights enumerated in this Section A,
except when one of them is incapacitated. From time to time, without the consent of any person
and without notice to any person other than trustees, by a writing or writings executed in the manner
provided in Section E ("Required Procedure"), to be effective when delivered to trustees, Settlors,
acting jointly, may:

1.    Revoke the trust governed by this instrument entirely and receive all of the
remaining trust property from trustees after payment or the provision for payment of all expenses
connected with the administration of this trust to the date of revocation;

2.    Amend this instrument;

3.    Change the identity or number of the trustees;

4.    Withdraw any part or all of the trust property from the trust.

B.    **While Both Settlors Are Living; Rights Reserved by One Settlor Acting Alone**

1.    Until the death of the first Settlor to die, a Settlor acting alone from time to time,
without the consent of any person and without notice to any person other than trustees and the other
Settlor, in the manner provided in Section E ("Required Procedure") may:

a.    Withdraw any part or all of that Settlor's separate property from the trust;

b.    Revoke the trust and cause trustees to deliver all of the remaining trust
property to Settlors as their community property or as their separate property, as the case may be.

2.    All community property delivered to Settlors on revocation shall remain the
community property of the Settlors and shall be held and administered as community property. On
revocation, trustees shall deliver separate property to the contributing Settlor.

BR0011352

3.    If the trust is revoked with respect to all or a major part of the trust property, trustees may retain property reasonably necessary to secure payment of liabilities trustees have incurred in administering the trust, including trustees' fees that have been earned, unless Settlors indemnify trustees against loss or expenses.

4.    An incapacitated Settlor may not exercise the rights reserved by Settlors in this Section.

C.    **Rights Reserved by Surviving Settlor; The Survivor's Trust.** The surviving Settlor shall have the powers enumerated in Section A ("While Both Settlors Are Living; Rights Reserved by Settlors Acting Together"), to be exercised as provided in Section E ("Required Procedure"), but only with respect to the Survivor's Trust. This Section C shall not apply when the surviving Settlor is incapacitated.

D.    **Execution of Documents by Trustees.** On the written request of Settlors, or either of them, trustees shall execute and deliver to Settlors, or either of them, any document presented by either or both Settlors that Settlors deem necessary or convenient to enable either or both of them to exercise any of the rights Settlors have reserved in this Article TWO.

E.    **Required Procedure**

1    **Both Settlors Acting.** Both Settlors acting together pursuant to Section A ("While Both Settlors Are Living; Rights Reserved by Settlors Acting Together") may exercise the rights reserved by them in this Article TWO in a writing that is:

a.    written and dated entirely in the handwriting of one of the Settlors and signed by both Settlors; or

b.    handwritten by anyone or typed or printed, dated, and signed by both Settlors; or

c.    executed by both Settlors and witnessed in the manner required by California law for the execution of witnessed wills; or

2-2

BR0011353

d.     executed by both Settlors and acknowledged or proved in the manner provided by California law for the acknowledgment or proof of deeds that are to be recorded.

2.     **Intent To Amend.**  The writing described in this Section E shall include a statement that it amends this trust instrument, or that it exercises some other right described in Section A ("While Both Settlors Are Living; Rights Reserved by Settlors Acting Together").

3.     **One Settlor Acting.**  One Settlor acting alone pursuant to Section B ("While Both Settlors Are Living; Rights Reserved by One Settlor Acting Alone") or Section C ("Rights Reserved by Surviving Settlor; the Survivor's Trust") may exercise the rights reserved by that Settlor in this Article TWO in any manner described in this Section.

F.     **Rights of Settlors Are Personal.**  The rights reserved by Settlors in this Article TWO are personal to them and shall not be exercisable by any others including guardians, conservators, personal representatives, assignees, agents, or beneficiaries.

G.     **Procedure for Determining a Settlor's Incapacity.**  A Settlor who is unable or unwilling to manage his or her own financial affairs or has become incapable of acting rationally and prudently in his or her own financial best interests is "incapacitated," and any determination of a Settlor's incapacity shall be made as follows:

1.     By the incapacitated Settlor, in a signed writing; or

2.     By court appointment of a guardian or conservator of the Settlor's person or estate; or

3.     By any other order or decree of a court of competent jurisdiction; or

4.     By the unanimous decision of a committee composed of:

a.     The physician then regularly caring for the Settlor;

b.     A physician, other than the physician then regularly caring for the Settlor, selected by the Settlor's spouse;

2-3

BR0011354

c.    The Settlor's spouse.

If the spouse is unable or unwilling to select a physician or to act on the committee, then the majority of Settlors' children shall select or act in place of the spouse, and if no child of Settlors is able or willing to select or to act, then the first of the persons named or provided for in Article SEVEN, Section A ("Successors To Settlors") able and willing to act shall select or act or both in place of the spouse.

Any Settlor, any child of Settlors, or any trustee or successor trustee identified in Article SEVEN, Section A may compel a determination provided for in this Section. If a committee determines that the Settlor has become incapacitated, then trustees shall exercise all powers granted hereunder as if the Settlor were adjudicated legally incompetent but without the need for a court proceeding. The Settlor may be restored to the status he or she occupied prior to the committee's determination by a similarly constituted committee. Trustees' good faith reliance on a committee's determination shall relieve trustees of any duty to take further action to determine the Settlor's fitness or capacity to exercise powers hereunder.

Settlors request that their respective physicians and attorneys cooperate in the determination of a Settlor's capacity or incapacity, and Settlors consent to the release of information by their respective physicians and attorneys in the determination of a Settlor's capacity or incapacity under this Section G.

H.    **Use and Enjoyment of Personal and Household Articles and Residential Real Property**. While both of them are living, Settlors reserve the right to the use, possession and control of all of the personal and household articles of the trust estate as well as any residence (primary or vacation) that may at any time constitute an asset of this trust. Settlors' retained use under this Section shall be free of rent or other financial obligation, and trustees, to the extent of the trust assets and except as they are relieved of the obligation by Settlors, shall see to the timely

2-4

BR0011355

payment of all taxes, insurance, maintenance and repairs, safeguarding, and other charges related to the preservation and maintenance of the personal and household articles and residential real property.

\*    \*    \*    \*    \*

BR0011356

ARTICLE THREE:  **Benefits While Both Settlors Are Living**

A.    **Income to Settlors.**  While both Settlors are living, trustees shall:

1.    Accumulate, pay to, or expend for the direct or indirect benefit of Settlors as community property the net income of the community property, in the amounts and at the times Settlors direct.  Accumulated net income of the community property shall be added to principal.

2.    Accumulate, pay to, or expend for the direct or indirect benefit of a Settlor the net income of that Settlor's separate property (if any) as trustees deem proper or necessary to provide for the comfortable support, happiness and general welfare of the Settlor for whose account the separate property is held.  Accumulated net income of the separate property shall be added to principal.

B.    **Distribution of Principal on Request.**  While both Settlors are living, trustees shall:

1    Distribute to Settlors as community property so much or all of the community property as Settlors may request.

2.    Distribute to the requesting Settlor so much or all of that Settlor's separate property as the Settlor may request.

C.    **Discretionary Distribution of Income and Principal for Settlors During a Settlor's Incapacity.**  During a Settlor's incapacity, trustees, in their discretion, may pay whatever amounts of the net income and principal to or for the direct or indirect benefit of Settlors as trustees consider appropriate and desirable.  Trustees may add unexpended net income to principal.

During a Settlor's incapacity, community property income and principal may be paid to or for both Settlors, or either Settlor; separate property income and principal may be paid to or for the Settlor for whose account separate property is held.

BR0011357

In the exercise of trustees' discretionary powers under this Section C, trustees need not consider other assets or income available to Settlors, and trustees shall take into account Settlors' accustomed manner of living and station in life.

\*　　　\*　　　\*　　　\*　　　\*

BR0011358

ARTICLE FOUR:  **Payment of Obligations at the Death of the First Settlor To Die**

A.    **Mandatory Payment of Taxes.**  After the death of the first Settlor to die, trustees shall pay out of the trust property all transfer taxes and generation-skipping transfer taxes payable in respect of property of any trust governed by this instrument that is included in the gross estate of the first Settlor to die. In determining the share of the taxes to be borne by the trust, trustees and other fiduciaries shall consider exemptions, deductions, credits and other factors affecting the determination of the taxes.

Any payment under this Section A shall be made from the Bypass Trust, except that any tax payable in respect of a Marital Trust for which no marital deduction is elected or claimed shall be paid from that Marital Trust.

B.    **Discretionary Payment of Debts, Expenses and Remaining Taxes.**  After the death of the first Settlor to die, trustees are authorized, but not directed, to pay or otherwise discharge out of the trust property any or all of the following obligations and expenses:

1.    The debts of the deceased Settlor, including tax liabilities;

2.    Expenses of the last illness, funeral and burial or cremation of the deceased Settlor;

3.    Expenses of determining and discharging (distinguished from actual payment of tax liabilities) any tax liabilities of the deceased Settlor and the Settlor's estate, including income tax liabilities, estate, inheritance, gift, succession and other transfer tax liabilities, and generation-skipping transfer tax liabilities;

4.    Expenses of administering the probate estate of the deceased Settlor;

5.    Transfer taxes and generation-skipping transfer taxes payable in respect of property included in the gross estate of the first Settlor to die (whether or not the property is in the

BR0011359

trust estate or passes pursuant to the Settlor's will and whether payable by the trust estate, the probate estate, or a recipient of property).

Payments pursuant to Subsections 1 through 4 of this Section B shall be made from the Survivor's Trust or the Bypass Trust or both according to California law in effect at the date of the death of the Settlor. Payments pursuant to Subsection 5 of this Section B shall be made from the Bypass Trust.

C.    **Protection of Marital Deduction; No Payment from the Marital Trusts.** No payment or distribution pursuant to this Article FOUR shall be made from the Marital Trusts that is inconsistent with the allowance of the federal estate tax marital deduction elected or claimed in the estate of the first Settlor to die.

D.    **Protection of Disclaimer; Restriction on Payments from the Bypass Trust.** If the surviving Settlor either partially or totally makes a qualified disclaimer of an interest in the Marital Trust or Trusts, trustees shall make no distribution under this Article FOUR or this instrument that is inconsistent with the qualified disclaimer.

E.    **Method of Payment.** Trustees may make any of the payments provided for in Section A ("Mandatory Payment of Taxes") and Section B ("Discretionary Payment of Debts, Expenses and Remaining Taxes") to the deceased Settlor's personal representative or directly to the creditor or taxing authority involved. Trustees may rely on the personal representative's written statement of the amount and propriety of any such payment.

F.    **Generation-Skipping Transfer Tax.** Payment of generation-skipping transfer tax on any taxable termination, direct skip or taxable distribution shall be governed by *Recorded Trust Provisions—Series Three*, Subsection M.2 ("Tax on Generation-Skipping Transfers").

G.    **Equitable Proration of Transfer Taxes.** Except as otherwise specifically provided in this instrument, the liability for and burden of all transfer taxes and generation-skipping transfer taxes payable by reason of a Settlor's death shall be apportioned according to federal and California

4-2

BR0011360

law, except that inheritance taxes shall be borne by the property or persons on whom the tax is specifically imposed.

      H.   **Family-Owned Business Interest.** Any recapture tax on Internal Revenue Code Section 2057 property shall be borne by the property giving rise to the deduction.

      I.   **Benefits Not To Be Used for Claims or Taxes.** Notwithstanding any other provision of this trust instrument, trustees may not use or apply any benefits payable to this trust under any qualified retirement plan, individual retirement account or other retirement arrangement subject to the "minimum distribution rules" of Section 401(a)(9) of the Internal Revenue Code, or other comparable provisions of law, for payment of a Settlor's debts, taxes, expenses of administration or other claims against a Settlor's estate or the trust estate, nor for payment of estate, inheritance, generation-skipping transfer taxes or similar transfer taxes due on account of a Settlor's death.

\*      \*      \*      \*      \*

BR0011361

ARTICLE FIVE: **Benefits After the Death of the First Settlor To Die**

    A.    **Division into Separate Trusts**

        1.    At the death of the first Settlor to die, trustees shall divide the trust estate into separate trusts identified as follows: the "Survivor's Trust," the "Bypass Trust," and the "Non-Exempt Marital Trust." If required by Section F ("The Marital Trusts"), trustees shall make an additional allocation of assets to an "Exempt Marital Trust" and reference in this instrument to the "Marital Trusts" means the Exempt Marital Trust and the Non-Exempt Marital Trust. These descriptive names are assigned for convenience only and other descriptions or names may be used. For example, the Survivor's Trust may be referred to as "Trust One," the Bypass Trust as "Trust Two," and the GST Non-Exempt Marital Trust and the GST Exempt Marital Trust as "Trust Three" and "Trust Four."

        2.    The division of the trust estate shall be based on its value before reduction by transfer taxes, debts and expenses paid or to be paid pursuant to Article FOUR. Property shall be assigned its value as finally determined for federal estate tax purposes.

    B.    **Allocation of Property to the Separate Trusts**. The trust estate shall be allocated among the separate trusts as follows:

        1.    **Survivor's Trust**. The Survivor's Trust shall consist of that amount of trust property equal to:

            a.    The surviving Settlor's interest in the community property and the surviving Settlor's separate property;

            b.    Any statutory or contractual payment or property interest payable to the trustees of the Survivor's Trust by reason of the death of the first Settlor to die, including proceeds of life or accidental death insurance policies, pension, profit sharing, retirement, death benefit, stock bonus, employee savings, stock option, or other employment-related benefit plans;

BR0011362

c.    The surviving Settlor's community property interest in any statutory or contractual payment or property interest payable to the trustees of the trusts governed by this instrument by reason of the death of the first Settlor to die and not specifically allocated by the terms of the statutory or contractual plan or beneficiary designation to any one or more of the separate trusts, including proceeds of life or accidental death insurance policies, pension, profit sharing, retirement, death benefit, stock bonus, employee savings, stock option, or other employment-related benefit plans;

d.    All of the personal and household articles held as part of the trust estate on the death of the first Settlor to die.

2.    **Bypass Trust.** The Bypass Trust shall consist of that amount of trust property, if any, equal to:

a.    the largest amount that can pass without federal estate tax in the estate of the first Settlor to die because of the family-owned business deduction, the deduction for land subject to a qualified conservation easement, the applicable credit amount, and the state death tax credit allowable to the deceased Settlor's estate but no other credit (provided use of the state death tax credit does not result in an increase in state death taxes);

b.    reduced by the value of any property passing outside of the trust estate (whether by the deceased Settlor's will or otherwise) that is includible in the deceased Settlor's gross estate and does not qualify for the marital or charitable deduction;

c.    further reduced by the value of any property passing under the terms of this trust instrument (other than under this Subsection B.2) that does not qualify for the marital or charitable deduction; and

d.    increased by charges to principal allowed as deductions (other than the marital or charitable deduction) in computing the deceased Settlor's federal estate tax.

BR0011363

Notwithstanding any provision of this Subsection B.2, the amount determined under this Subsection B.2 shall be an amount that would result in the least possible federal estate tax being payable in the deceased Settlor's estate.

3.    **Marital Trusts.** The Marital Trusts shall consist of the balance of the trust estate, if any, after the allocation to the Survivor's Trust and the Bypass Trust.

4.    **Disclaimer by the Surviving Settlor.** If the surviving Settlor disclaims any interest in the Marital Trust or Trusts, the interest disclaimed shall be distributed, in equal shares, to those of the Settlors' children who are then living and to the descendants of any deceased child of the Settlors, by right of representation.

5.    **Additional Allocation to the Bypass Trust if Settlors Die Within Six Months of Each Other.** Notwithstanding any provision of this trust instrument, if Settlors die within six (6) months of each other, trustees shall allocate to the Bypass Trust, in addition to the amounts set forth in Subsection B.2 ("Bypass Trust"), the amount determined pursuant to this Subsection B.5. The additional amount shall be determined by taking into account the estate of the surviving Settlor as it would be valued for federal estate tax purposes on the date of death of the first Settlor to die (if the death of the surviving Settlor had occurred on that date), and shall be an amount which, when added to the Bypass Trust, produces the lowest aggregate federal estate tax for Settlors' estates. The determination of the additional amount, the federal estate tax on the respective estates, and all other determinations under this Subsection B.5 shall be made pursuant to the provisions of the Internal Revenue Code as of the date of death of the first Settlor to die.

The additional amount shall be allocated from the trust estate remaining after the allocations to the Survivor's Trust and the Bypass Trust under Subsections B.1, B.2 and B.4 but before the allocation to the Marital Trusts under Subsection B.3.

6.    **Trustees' Power To Allocate (Federal Estate Tax Values).** Trustees shall have full authority to allocate property to each of the separate trusts either in cash or in kind or partly in either. Trustees' selection and valuation of assets shall be final and binding on all persons if made reasonably and in good faith.

BR0011364

Any asset allocated in kind to any separate trust described in this Article FIVE shall be allocated at the value finally determined for federal estate tax purposes; provided, however, that property allocated in kind shall be selected so that, in the aggregate, it has a fair market value fairly representative of the appreciation and depreciation in value to the date or dates of the allocation of all trust property then available for allocation to the separate trusts.

7. **Income Earned Before Final Allocation.** Trustees shall allocate to each separate trust its proportionate share of the net income attributable to the assets allocated to the respective trust during the period between the deceased Settlor's death and the date or dates of allocation to the trust.

8. **Interim Allocations; Adjustment for Proper Funding.** Although the exact amount of each separate trust cannot be determined until the conclusion of the federal estate tax proceeding in the deceased Settlor's estate, trustees may allocate to each separate trust in installments from time to time and may determine the times for making those allocations. Trustees shall not delay final allocations beyond the time reasonably required. Trustees may also make allocations on a tentative basis. If any allocation exceeds the correct amount ultimately determined, trustees shall reallocate accordingly.

On the conclusion of the federal estate tax proceeding in the deceased Settlor's estate, trustees shall make any necessary corrective adjustments of principal among the separate trusts governed by this Article FIVE.

9. **Allocation to the Marital Trusts; Restricted Assets.** To the extent possible, trustees shall allocate to the Marital Trusts only assets that qualify for the federal estate tax marital deduction, and trustees shall consider other assets before allocating the following to the Marital Trusts:

a. property located outside the United States and subject to any foreign death tax;

5-4

BR0011365

      b.    assets on which trustees have elected to defer payment of any part of the deceased Settlor's federal estate tax;

      c.    unmatured life insurance policies; and

      d.    shares of stock that would qualify for redemption under Section 303 of the Internal Revenue Code if the shares were not allocated to the Marital Trusts.

    10.    **Marital Deduction**

      a.    **Marital Deduction Provisions Are Paramount**. Notwithstanding any provision of this instrument (including the Recorded Trust Provisions), any right, power, duty, authority, privilege, immunity or discretion conferred on trustees shall be construed and exercised only in a manner consistent with allowance of the federal estate tax marital deduction elected or claimed in the estate of the first Settlor to die.

      b.    **No Limit on Executor's Discretion To Make QTIP Election**. Nothing in this instrument shall limit the executor's discretion to exercise or decline to exercise the qualified terminable interest property election under Internal Revenue Code Section 2056(b)(7).

    11.    **Application of Other Provisions to the Marital Trusts**. Recorded Trust Provisions Section H ("Marital Deduction Trust Provisions"), incorporated in Article FOURTEEN ("Recorded Trust Provisions -- Series Three"), shall apply to the Marital Trusts.

    12.    **Survivor's Trust Revocable by Surviving Settlor**. The surviving Settlor shall have all the powers concerning the Survivor's Trust that are granted in Article TWO, Section A ("While Both Settlors Are Living; Rights Reserved by Settlors Acting Together") of this instrument, exercisable in the manner stated in Article TWO ("Rights Reserved by Settlors"). The Survivor's Trust shall become irrevocable on the death of the surviving Settlor.

    13.    **Bypass Trust and Marital Trusts Irrevocable**. The Bypass Trust and the Marital Trusts shall be irrevocable on the death of the first Settlor to die.

BR0011366

C.    **Family Residence**. If any trust holds an interest in a residence or residences occupied by the surviving Settlor, trustees shall permit the surviving Settlor to occupy the residence rent-free as long as the surviving Settlor wishes. If requested by the surviving Settlor, trustees shall sell or otherwise dispose of the interest in a residence, and if the surviving Settlor requests, acquire a replacement residence. Trustees may do all things necessary for the retention, acquisition, substitution, alteration, maintenance and upkeep of a suitable residence for the surviving Settlor. Trustees may pay taxes, insurance premiums, repair bills and other expenses of the upkeep and maintenance of the residence from the income of the trust.

D.    **The Survivor's Trust**

1.    **Income**. During the life of the surviving Settlor, trustees shall pay the net income of the Survivor's Trust to or for the direct or indirect benefit of the surviving Settlor in the amounts and at the times the surviving Settlor directs.

2.    **Principal**. In addition to net income, the surviving Settlor may request and receive all or any part of the principal of the Survivor's Trust at any time.

3.    **Payments and Expenditures in Case of Need**. In the absence of directions from the surviving Settlor, trustees may pay to or expend for the direct or indirect benefit of the surviving Settlor whatever amounts of the net income and principal of the Survivor's Trust trustees consider appropriate or desirable.

4.    **Surviving Settlor May Add to the Survivor's Trust**. The surviving Settlor may add property to the Survivor's Trust at any time.

5.    **Use of Personal and Household Articles**. The surviving Settlor may use the personal and household articles held as part of the Survivor's Trust. The expense of maintenance and repair of the personal and household articles, including insurance, shall be paid out of the Survivor's Trust.

5-6

BR0011367

6.    **Mandatory Payment of Taxes.** After the death of the surviving Settlor, trustees shall pay from the Survivor's Trust all transfer taxes payable in respect of property included in both the surviving Settlor's gross estate and the Survivor's Trust. In determining the taxes to be borne by the Survivor's Trust, trustees and other fiduciaries shall consider exemptions, deductions, credits and other factors affecting the determination of the taxes.

7.    **Discretionary Payment of Debts, Expenses and Remaining Taxes.** After the death of the surviving Settlor, trustees may pay from the Survivor's Trust any or all obligations and expenses of the kind referred to in Article FOUR ("Payment of Obligations at the Death of the First Settlor To Die"), but relating to the surviving Settlor and his or her estate; in connection with the estate of the surviving Settlor, trustees shall have the powers granted in Article FOUR, exercisable in the manner provided in Article FOUR.

8.    **At the Death of the Surviving Settlor; Personal and Household Articles.** After the death of the surviving Settlor, personal and household articles not appointed by the surviving Settlor shall be distributed according to Article SIX, Section B ("Personal and Household Articles").

9.    **At the Death of the Surviving Settlor; The Principal of the Survivor's Trust; General Power To Appoint.** After the death of the surviving Settlor, trustees shall distribute property to the persons and in the proportions that the surviving Settlor appoints, in trust or free of trust, pursuant to this unrestricted general power to appoint, exercisable in any manner provided in Recorded Trust Provisions Subsection F.2. All principal and undistributed income of the Survivor's Trust not appointed by the surviving Settlor shall be distributed according to Article SIX, subject, however, to the payment of the obligations described in this instrument.

10.    **Benefits for Employees.** Settlors' intention, although not binding on the surviving Settlor, is that the surviving Settlor make the following payments to or other provision for employees or former employees:

a.    To Robert Smith, if he is then living, one thousand three hundred thirty-five dollars ($1,335) per month until his death.

5-7

BR0011368

     b.  To Refugio Rodriguez, if he is then living, five hundred dollars ($500) per month until January 1, 2008, or his earlier death.

     c.  To Remigio San Martin, if he is then living, the free use of the house located at 68 Ramona Street, Oakland, California, for his life.

    Settlors are making provision for the benefits described above to commence or continue after the death of the surviving Settlor pursuant to Article SIX, Section A ("Specific Gifts").

  E.  **The Bypass Trust**

    1.  **Income for the Surviving Settlor and Settlors' Descendants.**  Subject to Subsection E.3 ("Surviving Settlor Has Priority; Consider Other Assets and Income"), during the lifetime of the surviving Settlor, trustees in their discretion, acting annually or more frequently, may:

     a.  Pay all or any part of the net income of the Bypass Trust to or for the direct or indirect benefit of the surviving Settlor and the descendants of Settlors, or any one or more of them to the exclusion of others;

     b.  Accumulate all or any part of the net income of the Bypass Trust;

     c.  Add any accumulated income to the principal of the Bypass Trust.

    2.  **Invasion of Principal by Trustees.**  During the lifetime of the surviving Settlor, trustees in their discretion may pay to or expend for the direct or indirect benefit of the surviving Settlor and Settlors' descendants, or any one or more of them to the exclusion of others, whatever amounts of the Bypass Trust principal trustees consider necessary for the support, maintenance, education and health of the beneficiaries, or any of them (including medical, dental, hospital and nursing expenses and expenses of invalidism).

BR0011369

3.    **Surviving Settlor Has Priority; Consider Other Assets and Income.** In the exercise of trustees' discretionary power over income and principal, trustees shall consider other assets and income available to the beneficiaries, and shall give first priority to the needs of the surviving Settlor.

4.    **Surviving Settlor's Limited Power To Appoint the Bypass Trust (Not Including Disclaimed Property).** The surviving Settlor shall have a limited power to appoint the principal and undistributed income of the Bypass Trust, in trust or free of trust, exercisable in any manner provided in Recorded Trust Provisions Subsection F.1, except that the surviving Settlor may not appoint any part of the Bypass Trust attributable to a disclaimer by the surviving Settlor. After the death of the surviving Settlor, trustees shall distribute property to the persons and in the proportions that the surviving Settlor appoints from among the following classes:

a.    Descendants and spouses of descendants of Settlors.

b.    Any person or organization described in Internal Revenue Code Section 2055, relating to the estate tax charitable deduction.

This power to appoint shall not be exercisable to any extent for the benefit of the surviving Settlor, the surviving Settlor's estate, the surviving Settlor's creditors, or the creditors of the surviving Settlor's estate.

5.    **At the Death of the Surviving Settlor; The Principal of the Bypass Trust.** At the death of the surviving Settlor, the principal and undistributed income of the Bypass Trust not appointed by the surviving Settlor shall be administered according to Article SIX.

F.    **The Marital Trusts**

1.    **Division Into Exempt and Non-Exempt Marital Trusts**

a.    If the Marital Trust would otherwise have an inclusion ratio of neither one (1) nor zero (0), trustees shall divide the trust property into two separate trusts, one to have an inclusion ratio of one (the Non-Exempt Marital Trust) and one to have an inclusion ratio of zero

5-9

BR0011370

(the Exempt Marital Trust). Trustees shall determine the inclusion ratio of the Marital Trust as if the deceased Settlor's remaining generation-skipping transfer tax exemption were allocated to the Marital Trust after taking into account any allocation of the deceased Settlor's generation-skipping transfer tax exemption made or to be made to the Bypass Trust.

        b.     If the property of the Marital Trust has an inclusion ratio of exactly one or exactly zero, trustees shall administer the property as one trust. If the inclusion ratio is exactly one, the trust shall be administered according to the provisions of this Section F that govern the Non-Exempt Marital Trust. If the inclusion ratio is exactly zero, the trust shall be administered according to the provisions of this Section F that govern the Exempt Marital Trust.

        2.    **Administration of Exempt and Non-Exempt Trusts.** The Exempt Marital Trust and the Non-Exempt Marital Trust shall each be administered as a separate trust according to the provisions of this Section F.

        3.    **Income for the Surviving Settlor.** During the surviving Settlor's lifetime, trustees shall pay all of the net income of the Marital Trusts to or for the benefit of the surviving Settlor at least annually.

        4.    **Payments of Principal in Case of Need.** Trustees in their discretion may pay to or for the benefit of the surviving Settlor whatever amounts of the principal of the Non-Exempt Marital Trust and, if assets of the Non-Exempt Marital Trust are insufficient, then whatever amounts of the principal of the Exempt Marital Trust trustees consider necessary for the surviving Settlor's support, maintenance, education and health (including medical, dental, hospital and nursing expenses and expenses of invalidism).

        5.    **Payment of Taxes at the Death of the Surviving Settlor.** After the death of the surviving Settlor, unless the surviving Settlor directs otherwise by the exercise of the power to appoint granted in Subsection F.6 ("Surviving Settlor's Limited Power To Appoint the Marital Trusts") or by a specific provision in the surviving Settlor's will, trustees shall pay out of the Non-Exempt Marital Trust and, if insufficient, then out of the Exempt Marital Trust, the Marital Trusts'

BR0011371

share of all estate, inheritance, succession and other transfer taxes payable in respect of property included in the Marital Trusts.

The Marital Trusts' share of the taxes shall be determined as provided in Section 2207A of the Internal Revenue Code as if that Section applied to all estate, inheritance, succession and other taxes, not just to the federal estate tax.

6.    **Surviving Settlor's Limited Power To Appoint the Marital Trusts.** The surviving Settlor shall have a limited power to appoint the principal and undistributed income of both of the Marital Trusts, in trust or free of trust, exercisable in any manner provided in Recorded Trust Provisions Subsection F.1. After the death of the surviving Settlor, trustees shall distribute property to the persons and in the proportions that the surviving Settlor appoints from among the following classes:

a.    Descendants and spouses of descendants of Settlors.

b.    Any person or organization described in Internal Revenue Code Section 2055, relating to the estate tax charitable deduction.

This power to appoint shall not be exercisable to any extent for the benefit of the surviving Settlor, the surviving Settlor's estate, the surviving Settlor's creditors, or the creditors of the surviving Settlor's estate.

7.    **At the Death of the Surviving Settlor; The Principal of the Marital Trusts.** At the death of the surviving Settlor, the remaining principal and undistributed income of the Marital Trusts not appointed by the surviving Settlor shall be administered according to Article SIX ("Benefits After the Death of the Surviving Settlor").

*        *        *        *        *

5-11

BR0011372

**ARTICLE SIX:    Benefits After the Death of the Surviving Settlor**

A.    **Specific Gifts.** After the death of the surviving Settlor, trustees shall make the distributions in Subsections A.1 and A.2 free of transfer taxes:

1.    **Payments to Settlors' Employees.** If either Robert Smith or Refugio Rodriguez is living at the death of the second Settlor to die, trustees shall pay, set aside sufficient funds for the payment of, or purchase a suitable commercial annuity or annuities to provide the monthly payments stated below for Robert Smith and Refugio Rodriguez or for the one of them then living, if only one of them survives the second Settlor to die:

a.    To Robert Smith, one thousand three hundred thirty-five dollars ($1,335) per month until his death;

b.    To Refugio Rodriguez, five hundred dollars ($500) per month until January 1, 2008, or his earlier death.

2.    **Use of Oakland House.** While Remigio San Martin is living, he shall have the right to the use of the house located at 68 Ramona Street, Oakland, California, if it is part of the trust property at the death of the second Settlor to die. Remigio San Martin's retained use under this Section shall be free of rent or other financial obligation, and Settlors' children shall see to the timely payment of all taxes, insurance, maintenance and repairs, safeguarding, and other charges related to the preservation and maintenance of the Oakland house.

B.    **Personal and Household Articles to Settlors' Children**

1.    After the death of the surviving Settlor, all of the personal and household articles not appointed by the surviving Settlor according to the power granted in Article FIVE ("Benefits After the Death of the First Settlor To Die") shall be distributed to Settlors' then-living children (or child, if only one child is then living), to be divided among or between them, in shares as nearly equal in value as practical, as they may determine.

6-1

BR0011373

2.    Settlors request that their children or other recipients of the property be guided by any nonbinding memorandum left by Settlors or by the surviving Settlor pursuant to Recorded Trust Provisions Subsection I.7 ("Nonbinding Memorandum"), suggesting distribution of any items.

3.    If no child of Settlors is then living, this gift shall lapse and the property shall be distributed as part of the remaining trust estate governed by this Article SIX.

C.    **Remaining Trust Property; Division Into Shares.**  On the death of the second Settlor to die, after payment of obligations and after the distributions described in Sections A and B, the remaining property of the Survivor's Trust and the Marital trusts, including undistributed income and including property remaining because a power to appoint granted in this instrument has not been effectively exercised, shall be divided into shares, as follows:

1.    **To Children.**  One fourth (1/4) of the trust property shall be divided into equal shares for those of Settlors' children who are then living, each share to be distributed outright to the child for whom it is divided; provided, however, if a child of the Settlors shall predecease the surviving Settlor, but leave descendants who are living at the death of the surviving Settlor, trustees shall distribute the share that the deceased child would have received, if living, to the trustees of the Bryan Descendants' Trust, to be held in the share or shares of that trust established for the descendants of the Settlors' deceased child under ARTICLE SECOND B. 1 of the Agreement of Trust, dated November 7, 2001.

If on the death of the surviving Settlor, the trust property includes the house at 68 Ramona Street, Oakland, California, and if Remigio San Martin is then living, the Oakland house shall be included in the share for Settlors' then-living children, subject to the right of Remigio San Martin to use the house free of rent or other financial obligation and subject to the obligation of the Settlors' children to see to the timely payment of all taxes, insurance, maintenance and repairs, safeguarding, and other charges related to the preservation and maintenance of the Oakland house. At Remigio San Martin 's death, this right of rent-free use shall terminate (as it is the Settlors' intention not to provide any such right or use to the spouse or any descendant of Remigio San Martin), and the foregoing obligations imposed on Settlors' children shall lapse.

6-2

BR0011374

2.    **To Grandchildren and Their Descendants.** One fourth (1/4) of the trust property shall be distributed to the trustees of the Bryan Descendants' Trust, established under an Agreement of Trust, dated November 7, 2001. Trustees should consider allocating to this share the assets of the Exempt Marital Trust and any generation-skipping transfer tax exemption that remains available for allocation by the estate of the second Settlor to die.

3.    **To John M. Bryan Family Fund.** One fourth (1/4) of the trust property shall be distributed to the John M. Bryan Family Fund.

4.    **To Charities.** One fourth (1/4) of the trust property shall be distributed to the charitable organizations named below, in the percentages stated:

a.    Five percent (5%) to the endowment fund of the Asian Art Museum, San Francisco, California.

b.    Five percent (5%) to the endowment fund of the M. H. de Young Memorial Museum, San Francisco, California.

c.    Five percent (5%) to the endowment fund of the Hoover Institution, Stanford University, Stanford, California.

d.    Five percent (5%) to the endowment fund of The Independent Institute, Oakland, California.

e.    Five percent (5%) to the endowment fund of the Oakland Museum of California.

f.    Five percent (5%) to the endowment fund of the Napa Valley Opera House, Napa, California.

g.    Five percent (5%) to the endowment fund of the Sacred Heart Schools, Atherton, California.

BR0011375

    h. Five percent (5%) to the endowment fund of the Salvation Army East Bay, Oakland, California.

    i. Five percent (5%) to the endowment fund of the University of California, San Francisco Cancer Center.

    j. Five percent (5%) to the endowment fund of the YMCA of the East Bay, California.

    k. Ten percent (10%) to endowment fund of Mills College, Oakland, California.

    l. Ten percent (10%) to the endowment fund of the San Francisco Conservatory of Music.

    m. Ten percent (10%) to the endowment fund of the San Francisco Opera Association.

    n. Ten percent (10%) to the Webb School of California, John M. Bryan Scholarship Endowment Fund.

    o. Ten percent (10%) to the scholarship fund of The Leland Stanford Junior University, Stanford, California.

*  *  *  *  *

6-4

BR0011376

ARTICLE SEVEN: **Trustees; Special Trustee**

A.    **Successor Trustees**

1.    **Successor to John M. Bryan**. If John M. Bryan becomes unwilling or unable to act as trustee, his successor as trustee shall be the person that he designates, and if he fails to designate anyone, his successor as trustee shall be John S. McClintic.

2.    **Successor to Alan R. Brudos**. If Alan R. Brudos becomes unwilling or unable to act as a trustee, or if John M. Bryan for any reason ceases to act as trustee (whether by resignation, or because of incapacity or death), Alan R. Brudos shall cease to act as trustee, and his successor as trustee shall be the person designated by John M. Bryan, or if John M. Bryan fails to designate anyone, the successor to Alan R. Brudos shall be Amanda A. Bryan, or if she is unable or unwilling to serve, the person designated by Florence E. Bryan, and if she fails to designate anyone, the person designated by the majority of the Settlors' children able and willing to designate.

B.    **Special Trustee**

1.    Whenever after the death of the first Settlor to die the surviving Settlor or any beneficiary of an irrevocable trust created by this instrument is acting as the sole trustee of that trust (the trustee-beneficiary), a special trustee shall serve with the trustee-beneficiary. The special trustee shall have the powers conferred on the special trustee by Article THIRTEEN, Section D ("Limitation on Exercise of Discretionary Powers by a Trustee-Beneficiary"), Article FIFTEEN ("Independent Trustee's Limited Power To Amend and Power to Distribute Trusts"), and by Recorded Trust Provisions Section G ("Life Insurance Provisions").

2.    The special trustee shall be the first of the following persons (listed in order of priority) able and willing to act:

a.    The person (other than the trustee-beneficiary) designated by Settlors, acting jointly, or by the Settlor able and willing to designate.

7-1

BR0011377

b.     The person (other than the trustee-beneficiary) designated by the trustee-beneficiary.

c.     The person (other than the trustee-beneficiary) designated by the first of the persons named or provided for in Subsection A.2 ("Successor to Alan R. Brudos") able and willing to designate.

3.     This Section does not apply to the Survivor's Trust during the life of the surviving Settlor.

C.     **Vacancies; Priority.** An exercise of the power to designate a successor trustee or a special trustee shall not exhaust the power. Any vacancy shall be filled by the first of the eligible persons named or provided for in this Article SEVEN who is then able and willing to act.

D.     **Eligible Trustee or Special Trustee; Procedure for Designation.** Any person or persons having the power to designate a successor trustee or a special trustee pursuant to the foregoing Sections may designate any corporation or individual, including himself or herself or one of themselves, except as otherwise provided with respect to the special trustee. The designation shall be made in a writing and may be made in advance of a vacancy. A designation made in advance may be revoked at any time prior to the occurrence of a vacancy to be filled. The written designation may be delivered to the designated trustee or special trustee either at the time of the designation or after the occurrence of a vacancy.

E.     **Acceptance by Trustee or Special Trustee.** Each successor trustee and each special trustee designated to act pursuant to the foregoing Sections shall accept in writing. If no predecessor is then acting, the proposed successor trustee or special trustee shall become a successor trustee or special trustee immediately on delivery of written acceptance to the designator of the trustee or special trustee. If no designator is living, the proposed successor trustee or special trustee shall become a successor trustee or special trustee immediately on delivery of written acceptance to the trustees then acting. If neither a designator nor any trustee is living, then the proposed successor trustee or special trustee shall retain the written acceptance and need not notify anyone of the acceptance prior to commencing duties as trustee or special trustee.

7-2

BR0011378

As a condition of the appointment or designation of an individual as a successor trustee or special trustee, the individual appointed or designated agrees to maintain in effect an authorization for the release of medical information described in California Civil Code §56.11 and protected health information described in 45 CFR §164.508 for the purpose of allowing physicians or other health care providers to express an opinion about the trustee's capacity or incapacity if asked to do so by any person identified in Section F ("Successor To Incapacitated Trustee").

F.    **Successor To Incapacitated Trustee.**  A trustee of any trust governed by this instrument shall be deemed to have automatically resigned as trustee on a determination according to any method or procedure described below that the trustee has become incapacitated (that is, unwilling to manage his or her own financial affairs or incapable of acting rationally and prudently in his or her own financial best interest), and any person may rely on such a determination.  On the automatic resignation of a sole trustee, the next successor trustee or trustees designated pursuant to this Article SEVEN shall act as trustee.  On the automatic resignation of a co-trustee, the remaining trustee or trustees shall act, subject to the above provisions of this Article SEVEN.

The determination that a trustee is incapacitated shall be made as follows:

1.    By the trustee whose capacity is in question, in a signed writing;

2.    By court appointment of a guardian or conservator of the trustee's person or estate or both;

3.    By any other order or decree of a court of competent jurisdiction; or

4.    By the unanimous decision of a committee composed of the following:

a.    The physician then regularly caring for the trustee.  If the trustee has no regular physician, the remaining committee members shall act.

b.    A second physician chosen by the first of the persons (other than the trustee whose capacity is in question) named or provided for in Subsection A.2 ("Successor to Alan R. Brudos") who is then able and willing to act.

7.3

BR0011379

c.    The first of the persons (other than the trustee whose capacity is in question) named or provided for in Subsection A.2 ("Successor to Alan R. Brudos") who is then able and willing to act.

A Settlor or a trustee or any person named or provided for in Section A ("Successors to Settlors") may compel a determination provided for in this Section F. If a committee determines that the trustee has become incapacitated, then the co-trustee, if any, or the next eligible successor trustee who is able and willing to act shall exercise all powers granted hereunder as if the trustee were adjudicated legally incompetent but without the need for any court proceedings. If a co-trustee or successor trustee acts in good faith in reliance on a committee's determination, then the co-trustee or successor trustee shall not be required to take further action to determine the incapacitated trustee's fitness or capacity to exercise powers hereunder.

On a later determination that the former trustee is no longer incapacitated, the former trustee shall again act as trustee. The determination shall be made according to the same method or procedure used for the original determination of the trustee's incapacity.

G.    **While Settlors Are Trustees:  Management of and Title to Trust Assets.**  While Settlors are acting as trustees, either Settlor shall have the power to manage the trust assets acting alone. Each Settlor acting as co-trustee may hold title to trust assets in his or her name alone, as trustee of the trust. The actions of either Settlor acting alone as trustee shall be conclusive and binding on all persons dealing with or having an interest in the trust.

H.    **Trustee's Retirement at Age 70; Exceptions.**  Whenever any trustee under this instrument other than John M. Bryan, Florence E. Bryan, or any child of John and Florence, attains the age of seventy (70) years, the trustee shall be deemed to have resigned and the successor or successors provided for above in this Article SEVEN shall assume the office of trustee.

*         *         *         *         *

7-4

BR0011380

ARTICLE EIGHT:  **Administrative and Trustee Provisions**

    A.    **Self-Dealing by a Settlor Serving as Trustee**.  Whenever a Settlor is serving as trustee under this instrument, neither the California Probate Code nor any other law shall prevent him or her from any of the following:

        1.    Purchasing assets of the trust at their fair market value and on reasonable terms as trustees determine.

        2.    Selling assets to the trust at their fair market value and on reasonable terms as trustees determine.

        3.    Leasing trust property for its fair rental value and on reasonable terms as trustees determine.

        4.    Borrowing money from the trust estate at current interest rates, on reasonable terms, maturities and security as trustees determine.

    B.    **Waiver of Accounting**

        1.    Trustees shall not be required to report information or to account to any beneficiary, and this Section B shall constitute a waiver of the requirements of California Probate Code Sections 16061 and 16062, or any other law that requires reporting or accounting by trustees. However, in their discretion, trustees may report or account to the beneficiaries hereunder, in the manner provided in California Probate Code Sections 16062 and 16063.

        2.    This waiver of reporting and accounting shall not apply to any corporate trustee. Regardless of who is acting as trustee, trustees shall not be required to report information or to account to any beneficiary of a non-residuary cash gift or other non-residuary gift, for example, the gift or gifts provided under Article SIX, Section A ("Specific Gifts").

*     *     *     *     *

BR0011381

ARTICLE NINE:  **Powers of Trustees**

A.    **Extensive Powers Granted.**  Settlors understand that they may grant extensive powers to trustees or they may limit trustees' powers.  Settlors have carefully considered who should serve as trustees and successor trustees and desire to grant complete and extensive powers to trustees and their successors.

B.    **Powers in Recorded Trust Provisions Incorporated by Reference.**  Trustees and successor trustees shall have the power to do everything they deem advisable in the performance of their duties as trustees, including all of the powers referred to and specifically granted in Section B ("Powers of Trustees") of Recorded Trust Provisions, incorporated by reference in Article FOURTEEN ("Recorded Trust Provisions – Series Three").

C.    **Determination of What Is Principal and What Is Income.**  In the determination of what is principal and what is income, and in addition to the powers granted in Recorded Trust Provisions Section C ("Principal and Income Provisions") incorporated in Article FOURTEEN ("Recorded Trust Provisions - Series Three"), trustees shall have the following powers and shall be subject to the following limitations:

1.    **During Settlors' Joint Lives.**  During Settlors' joint lives, trustees shall have the powers described in Recorded Trust Provisions Subsection C.1 ("Determine What Is Principal and Income in the Exercise of Trustees' Sole Discretion").

2.    **During the Life of the Surviving Settlor:  The Survivor's Trust.**  In the administration of the Survivor's Trust after the death of the first Settlor to die, trustees shall have the powers described in Recorded Trust Provisions Subsection C.1 ("Determine What Is Principal and Income in the Exercise of Trustees' Sole Discretion").

3.    **During the Life of the Surviving Settlor:  The Bypass Trust.**  In the administration of the Bypass Trust after the death of the first Settlor to die, trustees shall have the

9..1

BR0011382

powers described in Recorded Trust Provisions Subsection C.2 ("Use the Principal and Income Act").

4.     **During the Life of the Surviving Settlor:  The Marital Trusts; Use the Principal and Income Act But Create Certain Reserves.**  In the administration of the Marital Trusts after the death of the first Settlor to die, trustees shall have the powers described in Recorded Trust Provisions Subsection C.2 ("Use the Principal and Income Act"), subject to trustees' duty to treat income and remainder beneficiaries equitably, and subject to the following rules:

a.     A reasonable reserve for depreciation of all depreciable real property and of capital improvements and extraordinary repairs thereto (for example, a new roof or a new plumbing system) shall be charged to income from time to time;

b.     A reasonable reserve for depletion of all depletable oil, gas and mineral property shall be charged to income from time to time;

c.     All distributions, by mutual funds and similar entities, of gains from the sale or other disposition of property shall be credited to principal;

d.     All premiums paid and all discounts received on the purchase of any bond or other obligation shall be amortized by an appropriate charge or credit to income.

5.     **After the Death of the Surviving Settlor.**  In the administration of all trusts governed by this instrument after the death of the surviving Settlor, trustees shall have the powers described in *Recorded Trust Provisions—Series Three*, Subsection C.2 ("Use the Principal and Income Act").

D.     **Investment Powers.**  In addition to and not in place of the powers granted to trustees in Recorded Trust Provisions Subsection B.4 ("Invest and Reinvest"), trustees shall have the power to invest in any type of investment that plays an appropriate role in achieving the investment goals of any trust governed by this instrument, considered as part of the total portfolio.  No category or type of investment shall be prohibited, and the universe of investments is not limited in any way

BR0011383

other than as dictated by trustees' exercise of reasonable care, skill, and caution. In connection with trustees' investment and management decisions, trustees are expressly authorized to take into account: (1) general economic conditions, (2) possible effect of inflation or deflation, (3) the expected tax consequences of investment decisions or strategies, (4) the role that each investment or course of action may play within the overall trust portfolio that may include financial assets, interests in closely held enterprises, tangible and intangible personal property, and real property, (5) the expected total return from income and the appreciation of capital, (6) other resources of the beneficiaries, (7) the needs for liquidity, regularity of income and preservation or appreciation of capital, and (8) the asset's special relation or special value, if any, to the purposes of the trust or to one or more of the beneficiaries. Trustees shall not be limited to any one investment strategy or theory, including modern portfolio theory, the efficient markets theory or otherwise, but are free to consider any appropriate investment strategy or theory under all the circumstances.

The surviving Settlor shall have the right to require trustees of the Marital Trust or Trusts to convert unproductive property into productive property within a reasonable time.

E.    **Delegation of Powers.** In addition to and not in place of the powers granted to trustees in Recorded Trust Provisions Subsection B.13 ("Employ Agents and Professional Representatives; Delegate Ministerial Duties"), trustees shall have the power to delegate investment and management functions that a prudent person of comparable skills would properly delegate under the circumstances. In delegating investment or management functions, trustees shall exercise reasonable care, skill, and caution in selecting an agent, establishing the scope and terms of the delegation consistent with the purposes and terms of the trust, and periodically reviewing the agent's actions in order to monitor performance and compliance with the terms of the delegation. In delegating investment or management functions, any trustee that complies with the requirements for delegation shall not be liable to the beneficiaries or to the trusts for the decisions and actions of the agent to whom or to which the function was delegated.

F.    **Qualified Conservation Easement.** After the death of the first Settlor to die, trustees shall have the power to create a qualified conservation easement in real property (including any property which, or an interest in which, is specifically disposed of) that permits the trust to make

9-3

BR0011384

use of the exclusion pursuant to section 2031(c) of the Internal Revenue Code and to make the election under said provision in the absence of the consent of all beneficiaries of the property as to which the election is made.

G.     **Allocation of Income and Principal of Annuity and Benefit Payments.** If any trust governed by this instrument is entitled to receive one or more payments described in this Section G ("Allocation of Income and Principal of Annuity and Benefit Payments"), trustees shall allocate each payment described below as follows:

1.     **Payment.** For purposes of this Section G, the term "payment" refers to an amount:

a.     that is received or withdrawn pursuant to a contractual, custodial, or trust arrangement that provides for payments to the trust, including by way of example and not limitation, qualified retirement plans, IRAs, Roth IRAs, annuities (including private annuities), and deferred compensation plans (including payments received directly from an "entity" as defined in Probate Code Section 16350); and

b.     that is one of a series of payments that have been or will be received over a fixed number of years or during the life of one or more individuals, or is a single payment that the trustees could have received over a fixed number of years or during the life of one or more individuals.

2.     **Payment Characterized as Interest or Dividend.** If any part of a payment is characterized by the payor as a payment to the trustees of interest, dividends, or a dividend equivalent, the trustees shall allocate the part so characterized to income, and the balance to principal.

3.     **Payment from Plan Account.** If no part of a payment is allocated under Section G.2 and the payment is received from a plan that maintains separate accounts for its participants (including by way of example and not limitation, defined contribution retirement plans, IRAs, Roth IRAs, and deferred compensation plans), trustees shall allocate to income the part (up to

G-4

BR0011385

the whole) that equals the amount of "Plan Income" that trustees reasonably determine was earned inside the trust's plan account since it became subject to trust (and not previously allocated to trust income), and the balance to principal. The term "Plan Income" refers to the amount inside the plan account that, if the plan account were a trust, would be allocated to income under the California Probate Code rules governing allocation of principal and income for trusts.

      4.    **Other Payments**. If no part of a payment is allocated under Sections G.2 or G.3, trustees shall allocate to income the part that exceeds the present value of the payment measured as of the regular payment date of the preceding payment (or, if none, on the date the property interest became subject to trust), using a discount rate reasonably determined by trustees.

      H.    **Interim Trust After the Death of a Settlor**. For a reasonable period of time after the death of a Settlor, trustees may in their discretion hold the trust assets in an "Interim Trust" or an "Administrative Trust" for administrative convenience and subject to the rights of beneficiaries otherwise provided in this instrument.

*     *     *     *     *

BR0011386

ARTICLE TEN:  **Definitions, Interpretation and Protective Provisions**

A.    **Survivorship.**  If there is insufficient evidence to establish the order of Settlors' deaths, Florence shall be presumed to have survived John.

If there is insufficient evidence to establish the order of deaths of a Settlor and any beneficiary under this instrument (other than the second Settlor), the beneficiary shall be presumed to have predeceased the Settlor.

B.    **No Contest**

1.    Settlors deliberately have made no gift in this instrument or under either Settlor's will to any person (including but not limited to any person mentioned in this instrument, any of Settlors' relatives and any person who, if a Settlor died wholly or partially intestate, would be entitled to share in the Settlor's estate) other than by the terms of this instrument or of either Settlor's will.

If any person named or designated as a beneficiary under this instrument or any legal heir of a Settlor or any person claiming under this trust or under a Settlor's will, singly or with any other person or persons:

1.    contests the validity of any of the following documents or amendments thereto (referred to hereafter as a "Document" or "Documents") or any of their provisions in any court:

    a.    this trust,

    b.    the Survivor's Trust,

    c.    the Bypass Trust,

    d.    the Marital Trust(s),

    e.    any other trust created pursuant to this trust instrument,

10-1

BR0011387

f    either Settlor's will,

g.    any beneficiary designation for an annuity, retirement plan, IRA, Keogh, pension or profit-sharing plan or insurance policy signed by either Settlor,

h.    a buy-sell agreement signed by either Settlor,

i.    a family partnership agreement, limited liability company, or related operating agreement signed or established by either Settlor; or

2.    seeks to obtain an adjudication in any court that the Document or any of its provisions are void, or seeks otherwise to invalidate the Document or any provision of the Document;

3.    files suit against the trust estate on a creditor's claim filed in a probate proceeding of either Settlor, after rejection of or lack of action on the claim by the respective fiduciary;

4.    files a petition or other pleading to change the character (community, separate, joint tenancy, partnership, domestic partnership) of property already characterized by a Document;

5.    claims ownership of any asset held in joint tenancy by either Settlor, other than as a surviving joint tenant;

6.    files a petition to determine domestic partnership property for cohabitants relating to either Settlor;

7.    files a petition for probate homestead in a probate proceeding of either Settlor's estate;

8.    files a petition for family allowance in a probate proceeding of either Settlor's estate; or

10-2

BR0011388

9.    participates in any of the above actions in a manner adverse to the trust estate, such as conspiring with or assisting any person who takes any of the above actions, then:

Any gift to or benefit for the contesting person under this instrument and under the will shall lapse, and this instrument and the will shall be construed as though the contesting person were deceased and left no surviving issue.

No contesting person may serve as a trustee under this instrument, as executor of a Settlor's will, as administrator of a Settlor's estate, or as guardian of the estate of any minor or incompetent person who receives benefits from a Settlor's estate.

The provisions of this Section shall not apply to a disclaimer of any benefit under this trust or under a Settlor's will.

Trustees are authorized by this Section to defend any contest or other attack of any nature on this trust or on a Settlor's will or on any provision of the trust or will at the expense of the trust estate. A "contest" shall include any action described above in an arbitration proceeding but shall *not* include any action described above solely in a mediation not preceded by the filing of a contest with the court.

Notwithstanding the foregoing, this Section shall not apply in a manner that causes a forfeiture of any distribution otherwise qualifying for the federal estate tax marital deduction or charitable deduction.

C.    **Perpetuities Saving Clause**

1.    **Time of Trust Termination.** Unless previously terminated, any trust created by this trust instrument and any trust created by the exercise of a power of appointment conferred by this trust instrument shall terminate on the day next preceding the expiration of twenty-one (21) years after the death of the last survivor of all of the following who are living at the death of the first Settlor to die: (a) the surviving Settlor; and (b) all of the descendants and spouses of descendants of each Settlor's parents.

10-3

BR0011389

2.    **Manner of Distribution**.  On termination under Subsection C.1 ("Time of Trust Termination"), the principal and undistributed income shall be distributed to the persons who would be entitled to the principal of the trust if the trust were terminating according to the provisions of this instrument governing the terminating trust.

D.    **Governing Law**

1.    **Intent**.  Settlors do not intend that the laws of only one state or country necessarily control all questions pertaining to the trusts governed by this instrument.  Rather, the trust shall be governed according to the provisions set forth in this Section D.

2.    **Validity**.  The validity of all trusts governed by this instrument and the validity of each provision of this trust instrument shall be governed by the laws of the state or country having sufficient connection with the trust to support the trust's validity.

3.    **Meaning and Effect**.  The meaning and effect of the terms of this trust instrument (and of any related instrument) shall be governed by the laws of the State of California.  The meaning and effect of the instrument governing any trust receiving an appointment under this instrument shall be governed by the laws of whatever state or country may be designated in the governing instrument (or, in the absence of a designation, by the laws of the State of California).

4.    **Administration**.  The administration of any trust governed by this instrument shall be governed by the laws of the state or country in which it is then being administered (based on the location of the principal office of the trustee then having custody of the trust's principal assets and records).  The courts of the governing state or country shall have exclusive jurisdiction over the administration of the trust when it is administered in that state or country.  To the extent permitted by law, (a) the trust (and each of its trustees) shall be exempt from and trustees shall take reasonable measures to remain independent of registration in or with, accountings to, and supervision by any court or other governmental agency and (b) all discretion granted to trustees in this instrument is intended to and shall override any rule of law, whether local practice, statute or case law, which is now applicable to the trust or which may become applicable to the trust and which may be to the contrary, including any that may require specific reference.

10-4

BR0011390

5.    **Change of Situs or Residence.** The provisions of this Section shall apply regardless of any change of the situs of some or all trust assets or of the residence of a Settlor, a trustee, or a beneficiary.

E.    **Allocation of Property to Exempt and Non-Exempt Trusts**

1.    **Allocation.** If at the death of either Settlor:

a.    any trust or part of a trust governed by this instrument as to which the deceased Settlor is the transferor is divided into two or more trusts (whether pursuant to the terms of this instrument or governing law); and

b.    if allocation of the deceased Settlor's generation-skipping transfer tax (GST) exemption is made or to be made to part, but not all, of the trust or part of a trust subject to division,

then trustees shall create such additional separate trusts or shares as may be necessary and allocate the deceased Settlor's GST exemption among them in a manner that will insure to the extent possible that each trust or share has an inclusion ratio of either zero (0) or one (1).

2.    **Compliance With Treasury Regulations.** In allocating the deceased Settlor's GST exemption among separate trusts or shares, trustees shall comply with the requirements of Internal Revenue Code Sections 2642 and 2654 and the Regulations thereunder, as amended from time to time, including the following:

a.    **Fairly Representative Allocation.** Trustees shall have full authority to allocate to the separate trusts or shares in cash or in kind or partly in either, and Trustee's selection and valuation of assets shall be final and binding on all persons if made reasonably and in good faith.

An asset allocated in kind to a separate trust or share shall be allocated at its final federal estate tax value; provided, however, that property allocated in kind shall be selected so that, in the aggregate, it has a fair market value fairly representative of the appreciation and

BR0011391

depreciation in value to the date or dates of allocation of all trust property then available for allocation.

      b.    **Pro Rata Share of Income.** Trustees shall allocate to each separate trust or share its pro rata share of the net income during the period between the Settlor's death and the date or dates of allocation.

      c.    **Interim Allocations; Adjustments.** Although the exact amount of each separate trust cannot be determined until the conclusion of the federal estate tax proceeding in the Settlor's estate, trustees may allocate to each separate trust or share in installments from time to time and may determine the times for making those allocations. Trustees shall not delay final allocations beyond the time reasonably required. Trustees may also make allocations on a tentative basis. On the conclusion of the federal estate tax proceeding in the Settlor's estate, trustees shall make any necessary corrective adjustments of principal among the separate trusts or shares.

      3.    **Transferor.** "Transferor" has the meaning given that term in Internal Revenue Code Section 2652(a).

      F.    **Treas. Reg. §26.2612-1(a)(2) Survivorship Rule.** A beneficiary who dies not later than ninety (90) days after the death of a lineal ancestor of the beneficiary shall be treated as having predeceased the lineal ancestor, if the beneficiary's actual death before the death of the lineal ancestor would have caused the special rule of Internal Revenue Code Section 2651(e) (the predeceased ancestor exception) to apply to a transfer occurring as the result of the death of the lineal ancestor.

      \*       \*       \*       \*       \*

10-6

BR0011392

ARTICLE ELEVEN:  **Disclaimer**

    A.    **Beneficiary's Disclaimer of Benefits**.  A beneficiary may make a qualified disclaimer of all or any part of the beneficiary's interest under this instrument.  Unless the written disclaimer requires it, the disclaimer shall not affect the right of the disclaiming beneficiary to receive any interest other than the disclaimed interest.

    On disclaimer of an interest under this instrument, except as otherwise provided in this instrument, the disclaimed interest shall pass to the next succeeding beneficiary or beneficiaries as though the disclaiming beneficiary had died prior to the date on which the interest vests.

    B.    **Trustee's Disclaimer of Powers**.  Any individual trustee may disclaim all or any part of any power granted to the trustee in this instrument.  A trustee's partial or total disclaimer of a power shall be binding on all successor trustees.

*    *    *    *    *

BR0011393

ARTICLE TWELVE:    **Durable Limited Power of Attorney;**
                   **Appointment of Agents To Act on Behalf of Settlors**

    A.    **Appointment of Settlors' Attorneys-In-Fact.** Each Settlor hereby appoints as the Settlor's attorney-in-fact (agent) any trustee or trustees serving at any time under this instrument, acting jointly or individually, to act for each Settlor in the Settlor's name and place during Settlors' joint lives and for the surviving Settlor during his or her lifetime. Each Settlor's agent shall have the powers specifically granted in this Article TWELVE.

    B.    **Tax-Related Powers.** Each Settlor's agent shall have the power to sign and file federal, state, and local income, gift, and other tax returns of all kinds, claims for refund, requests for extension of time, petitions to the Tax Court and other courts regarding tax matters, and any and all other tax-related documents of all kinds, including but not limited to receipts, offers, waivers, consents, powers of attorney or closing agreements, and with respect to those tax matters and for all periods from 1989 through 2060, to perform all acts that Settlor can perform and to represent Settlor before all offices and officers of the Internal Revenue Service and any other taxing authority, including receipt of confidential information and refund checks and the endorsement of refund checks, and to appoint agents for that purpose.

    C.    **Gift Transfers Pursuant to a Settlor's Instructions.** Except during any period of a Settlor's incapacity, each Settlor's agent shall have the power to make any gift transfer on behalf of the Settlor pursuant to the Settlor's oral or written instructions.

    D.    **Continuation of Charitable or Family Gifts During a Settlor's Incapacity**

        1.    **While Both Settlors Are Living.** During Settlors' joint lives, and during any period of a Settlor's incapacity, the incapacitated Settlor's agent may but need not make distributions from the income and principal of the trust appropriate to carry out on behalf of the Settlors or either of them any plan or pattern of family or charitable gift giving established or contemplated by the Settlors or either of them, or which, in the opinion of counsel for the agent, a conservator of the estate of the incapacitated Settlor would be permitted to make and would deem advisable to make from the conservatee's assets.

BR0011394

2.    **After the Death of the First Settlor To Die; The Survivor's Trust**. After the death of the first Settlor to die, during any period of incapacity of the surviving Settlor, the surviving Settlor's agent may but need not make distributions from the Survivor's Trust of the character described in Subsection D.1 ("While Both Settlors Are Living") on behalf of the incapacitated surviving Settlor.

3.    **Consider Tax Consequences**. In considering any gift under this Section, the agent shall consider the income, estate, inheritance, gift and generation-skipping transfer tax consequences of the gift.

E.    **Power of Attorney Survives Incapacity**. The power of attorney granted by this Article shall not be affected by any disability, incompetence or incapacity of either or both Settlors. The power of attorney may be revoked only by Settlors, or by Settlor if only one Settlor is then living and able to act, according to the required procedure for amendment or revocation of the trust during Settlors' joint lives or of the Survivor's Trust after the death of the first Settlor to die.

F.    **Restriction on Gifts to Agent; $5,000 or 5% Limitation**

1.    Unless the agent is the Settlor's spouse and regardless of how many agents are acting under this instrument, an agent's power to make gifts under Section C ("Gift Transfers Pursuant to a Settlor's Instructions") and Section D ("Continuation of Charitable or Family Gifts During a Settlor's Incapacity") shall not be exercised in favor of the agent, the agent's estate, the agent's creditors, or creditors of the agent's estate, except in amounts not to exceed in any calendar year the greater of:

a.    Five thousand dollars ($5,000), or

b.    During Settlors' joint lives, five percent (5%) of the gross value of the trust estate, or after the death of the first Settlor to die, five percent (5%) of the gross value of the Survivor's Trust.

BR0011395

2.    The determination of the value of the trust estate in question shall be made as of the end of the calendar year.

3.    If the agent is the spouse of the Settlor on whose behalf the gift is made, the restrictions in this Section shall not apply.

*        *        *        *        *

12-3

BR0011396

ARTICLE THIRTEEN: **Standards, Guidelines and Limitations**

A.    **Exercise of Trustees' Discretion**.  In the exercise of their discretionary powers over income and principal, trustees:

1.    Shall consider the beneficiaries' standard of living and station in life.

2    May but need not consider other means of support available to a beneficiary, including his or her capacity for gainful employment after completion of his or her education and including other provision made for the beneficiary by Settlors or by anyone else, unless a provision of this instrument specifically requires trustees to disregard or to consider other assets and income available to a beneficiary

3.    Need not observe any rule of equality of enjoyment among the beneficiaries.

4.    Shall consider the income, estate, inheritance, gift and generation-skipping transfer tax consequences of any distribution of income or principal or any accumulation of income.

5.    Shall be liberal in determining the needs of each beneficiary.

6.    Shall consider a beneficiary's ability to manage property.

7.    Shall consider the best interests and general welfare of the beneficiaries.

8.    May contribute to the support and maintenance of persons with whom any minor beneficiary resides, including the beneficiary's guardian and the guardian's family, in order to reduce or relieve the burden assumed by a guardian or other person with whom a minor beneficiary resides.

B.    **Determinations in Favor of Current Income Beneficiaries**.  To the extent trustees deem prudent, trustees may make discretionary determinations in favor of the current income beneficiary or beneficiaries.  In each instance the rights of all subsequent beneficiaries are

BR0011397

subordinate. No trustee shall be answerable to any subsequent beneficiary for anything done or omitted in favor of a current beneficiary, and no beneficiary may compel any such favorable treatment.

C    **Nonbinding Statement of Intent**

1.    **Nonbinding Statement.** This section explains the Settlors' intent regarding the discretion granted elsewhere in this instrument, and is meant solely as a nonbinding guide to trustees. This section shall not be construed to alter or limit the rights, powers, authority, duties, privileges or discretion conferred on trustees in this instrument or by law.

2.    **Best Interests of Beneficiaries.** In determining a beneficiary's best interests, trustees should take a liberal rather than a conservative view, and any doubts that may arise about the propriety or desirability of exercising the discretion granted in this instrument should be generously resolved in favor of the beneficiary. When making distributions for a beneficiary's best interests, trustees should sympathetically consider providing funds to enable the beneficiary to travel, to establish or continue a business or profession, to continue education, and to purchase and furnish a personal residence.

3.    **Beneficiary's Resources.** If, when exercising the discretion granted in this instrument, trustees take into account the income and other resources known to be available to a beneficiary, trustees may rely on written statements of the nature and amount of the income and other resources made by an adult beneficiary, by a minor beneficiary's natural, general or testamentary guardian or by a beneficiary's guardian or conservator. Unless there is clear and compelling evidence that the statements are inaccurate or unreliable, trustees need not make further inquiry concerning income and other resources. In considering other resources available to a beneficiary, trustees should ignore items of tangible personal property, residential real estate and other non-productive assets of a personal nature. This standard of distribution should be liberally construed in favor of each beneficiary. No beneficiary should ever be required to exhaust all other resources before being eligible to receive distributions.

13-2

BR0011398

D.    **Limitation on Exercise of Discretionary Powers by a Trustee-Beneficiary**. Trustees have been given certain discretionary powers to pay or expend income or principal to or for the benefit of beneficiaries of the trusts and to determine, within limits, the character of trust receipts and expenditures as principal or income.

After the death of the first Settlor to die, no trustee of an irrevocable trust governed by this instrument who is an eligible beneficiary of that trust (trustee-beneficiary) shall exercise or join in the exercise of any of the following discretionary powers with respect to that trust; in all such cases, the remaining trustee or trustees shall act, or if no other trustee is then acting, the special trustee shall act, or if there is no special trustee otherwise provided for in this instrument, the special trustee designated by the then-acting trustee or trustees shall act:

1.    A discretionary power to pay or expend income or principal to or for the benefit of the trustee-beneficiary.

2.    A discretionary power to determine the character of a trust receipt or expenditure as principal or income.

3.    A discretionary power to determine the time of termination of a trust or to terminate an uneconomical trust.

4.    A discretionary power to postpone distribution of income or principal of a trust.

5.    A discretionary power to pay or expend income or principal to or for the benefit of any person whom the trustee- beneficiary is obligated to support (because of a relationship between the trustee-beneficiary and the person, other than the trust relationship).

6.    A discretionary power to allocate realized capital gains to income rather than to principal by entry on the trust's books or by notice to the beneficiary.

7.    A discretionary power to borrow from a trust without adequate security or adequate interest.

13-3

BR0011399

8. A discretionary power to create, amend or revoke a general power to appoint.

9. Any other power that in the opinion of counsel for the trustees would cause inclusion of the trust estate in the taxable estate of the trustee-beneficiary.

During the lifetime of the surviving Settlor, the foregoing limitations shall not apply to the Survivor's Trust.

E. **Generation-Skipping Transfer Tax Exemption; Advice from Tax Counsel.** After each Settlor's death, trustees should seek advice from tax counsel on the allocation or non-allocation of the Settlor's allowable generation-skipping transfer tax exemption.

F. **Trust Not To Relieve Any Support Obligation.** No fiduciary who is obligated to support or educate a beneficiary of an irrevocable trust governed by this instrument (because of a relationship between the trustee and the beneficiary, other than the trust relationship) shall under any circumstances participate in any decision to pay or expend trust income or principal for the support or education of the beneficiary.

G. **Request for Information.** In considering discretionary distributions, trustees may, in their sole discretion, rely on any information obtained from any source, and may request any information that trustees deem relevant from a beneficiary (and may withhold a distribution if the beneficiary refuses to provide that information), including without limitation any one or more of the following:

1. A signed certification from the beneficiary, in the form trustees deem advisable, stating that the beneficiary is in compliance with any one or more of the provisions of this instrument;

2. A statement of the beneficiary's assets and liabilities, and the assets and liabilities of his or her spouse and descendants;

13-4

BR0011400

3.    Copies of the beneficiary's federal, state, and local income tax returns for any one or more of the five most recent taxable years;

4.    Copies of bank statements, canceled checks, credit card statements, and related materials that evidence the beneficiary's spending habits;

5.    Evidence that the beneficiary is enrolled in school or employed, and for a beneficiary who is enrolled in school, copies of academic transcripts;

6.    The beneficiary's employment history, and authorization to contact and request employment information from the beneficiary's current and former employers;

7.    A list of the beneficiary's places of residence for whatever period of time trustees determine to be relevant;

8.    Federal, state, and local court records, and arrest, traffic offense, and other records from any one or more law enforcement agencies having jurisdiction within the United States or abroad;

9.    Access to medical records, blood tests, and related medical information (trustees may require a beneficiary to take such tests to determine whether the beneficiary is using illegal drugs or similar substances, as trustees in their discretion deem appropriate); and

10.    Information concerning travel by the beneficiary and a copy of the beneficiary's passport.

\*        \*        \*        \*        \*

13-5

BR0011401

ARTICLE FOURTEEN:  **Recorded Trust Provisions - Series Three**

*Recorded Trust Provisions - Series Three* is a booklet containing provisions that are incorporated into this trust instrument. *Recorded Trust Provisions - Series Three* (sometimes referred to in this instrument as "Recorded Trust Provisions") is published by Bancroft & McAlister, A Professional Corporation, and recorded in the Official Records of the City and County of San Francisco, California, on March 29, 1995, as Document Number F773907.

By this reference, the Sections of Recorded Trust Provisions listed below in this Article FOURTEEN are incorporated into this instrument with the same effect as if they were set forth in full.  A reference elsewhere in this instrument to any Section of *Recorded Trust Provisions - Series Three* shall have the same effect.

## RECORDED TRUST PROVISIONS - SERIES THREE
### SECTIONS INCORPORATED INTO THIS INSTRUMENT

| Section | Caption | Page |
|---|---|---|
| A.1 to A.32 | Definitions and Interpretation | 1 |
| B.1 to B.39 | Powers of Trustees | 6 |
| C.1 to C.6 | Principal and Income Provisions | 21 |
| D.1 to D.12 | Administrative and Trusteeship Provisions | 23 |
| E.1 to E.6 | Protection Against Creditors and Others ("Spendthrift" Clauses) | 26 |
| F.1 to F.7 | Powers of Appointment | 27 |
| G.1 to G.4 | Life Insurance Provisions | 29 |
| H.1 to H.3 | Marital Deduction Trust Provisions | 31 |
| I.1 | Personal and Household Articles; Definition | 32 |
| I.2 | Business and Professional Property Excluded | 32 |
| I.3 | Trustees' Determinations Are Conclusive | 32 |

14-1

BR0011402

| I.4 | Division of Personal and Household Articles | 32 |
| I.5 | Delivery Expenses | 32 |
| I.6 | Tax on Gifts of Personal and Household Articles | 32 |
| I.7 | Nonbinding Memorandum | 32 |
| I.8 | Distribution of Personal and Household Articles to Minors | 33 |
| J. | Charitable Beneficiary's Change of Name or Location or Failure To Qualify as Tax-Exempt | 33 |
| K. | Use of U.S. Treasury Bonds | 34 |
| L.1 to L.3 | Protection of Property Vesting in Young Beneficiaries | 34 |
| M.1 | Early Termination of Uneconomical Trust | 35 |
| M.2 | Tax on Generation-Skipping Transfers | 36 |
| M.3 | Vesting of Benefits and Timing of Distributions | 36 |
| M.4 | Merger and Division of Trusts | 36 |
| N.1 to N.9 | S Corporation Stock and Qualified S Corporation Trusts | 37 |
| O.1 | Amendment of Recorded Trust Provisions | 41 |
| O.2 | Incorporation by Reference | 41 |
| O.3 | Conflict Between Recorded Trust Provisions and Trust Instrument | 41 |

Subsection L.1 ("Introduction") of Section L ("Protection of Property Vesting in Young Beneficiaries") of *Recorded Trust Provisions – Series Three* is amended by deleting Subsection L.1 and substituting in its place a new Subsection L.1, to read as follows:

"1.    **Introduction**. If at the time provided in the trust instrument for the distribution of net assets resulting from the termination of a trust governed by the trust instrument any assets are to vest in absolute ownership in a person who at the time of distribution has not attained the age of twenty-five (25) years (or some other age specified in the trust instrument), trustees, in the exercise

BR0011403

of their discretion, and except as otherwise provided in the trust instrument, (a) may distribute the assets to a separate trust to be administered for the beneficiary according to Subsection L.2 ("Trusts for Young Beneficiaries") below, or (b) may distribute the assets to a custodian for the beneficiary acting under the Uniform Transfers to Minors Act, according to Subsection L.3 ("Custodial Accounts for Young Beneficiaries") below, or (c) may distribute the assets to an account naming the beneficiary as a designated beneficiary under a qualified tuition program under section 529 of the Internal Revenue Code of 1986, as amended."

\*       \*       \*       \*       \*

BR0011404

ARTICLE FIFTEEN: **Independent Trustee's Limited Power To Amend
and Power to Distribute Trusts**

Notwithstanding any other provision of this trust instrument, the independent trustee (as defined in *Recorded Trust Provisions – Series Three*) of any trust governed by this instrument may amend the provisions relating to the trust of which he or she is the independent trustee and, if necessary, all trusts that are referred to or exist hereunder. If there is no independent trustee, and if the special trustee provided for in Article SEVEN, Section B ("Special Trustee") qualifies as an independent trustee (as defined in *Recorded Trust Provisions – Series Three*), the special trustee may exercise the limited power to amend granted in this Article.

A.    **Power To Amend.** Independent trustee may amend the trust pursuant to this Article FIFTEEN in whatever way or ways, including amendment of dispositive, administrative, and any other provisions that independent trustee, in the exercise of independent trustee's discretion, deems:

1.    necessary to permit trustees to cope with changes in the tax laws and other circumstantial changes that may affect the trust or its beneficiaries; and

2.    appropriate in the best interests (determined solely by the independent trustee) of the primary beneficiary or beneficiaries of the trust and of each primary beneficiary's family as a whole or, if there is no primary beneficiary, then of the current income beneficiaries.

In considering an amendment under this Article FIFTEEN, independent trustee shall be guided by what, in independent trustee's judgment, would be Settlors' original intent in light of changed laws or other circumstances, including an amendment irrevocably to restrict or prohibit the future exercise of any power held by any beneficiary and by any trustee under this instrument. Examples of the amendments that the independent trustee might consider include: (a) addition of mandatory distribution or set-aside provisions for one or more beneficiaries or permissible distributees; and (b) division of a trust into separate trusts or merging separate trusts.

B.    **Limitation on Independent Trustee's Limited Power To Amend.** An amendment under this Article FIFTEEN (independent trustee's amendment) shall not:

15-1

BR0011405

1.    Extend the period of the trust's existence beyond the perpetuities limitation period specified in this instrument.

2.    Diminish in any way any enforceable right any beneficiary may already have under the then terms of this instrument to receive the income of the trust, currently or at any time in the future (but, to the extent that an amendment benefits or grants a power to a current beneficiary of the trust, it may diminish the rights of one or more beneficiaries to future income of the trust or of any trust subsequently to come into existence hereunder).

3.    Reduce in any way the restrictions and limitations on:

   a.    Settlor and fiduciary actions set forth in Article THIRTEEN ("Standards, Guidelines and Limitations"), and elsewhere in this instrument, including the Recorded Trust Provisions,

   b.    independent trustee's limited power to amend under this Article FIFTEEN, and

   c.    eligibility of persons or entities to act as successor trustee pursuant to this instrument,

unless as a result of a change in the federal tax laws, regulations, or rulings on which taxpayers may rely, the reduction of restrictions or limitations will no longer have any adverse transfer tax effect on the trust, on any person who directly or indirectly has transferred assets to the trust, or on any of the trust beneficiaries. All of the provisions referred to in Subsections 3.a, 3.b and 3.c may, however, be irrevocably amended and be binding on successors, to increase the restrictions and limitations in any way the amending trustee may deem appropriate.

4.    The trustee's amendment shall not:

   a.    give any trustee any power or discretion that is granted exclusively to a co-trustee or that the trustee is for any reason excluded from exercising; or

15-2

BR0011406

b.     give anyone acting in a nonfiduciary capacity any powers granted to fiduciaries in this instrument,

unless, in either case, as a result of a change in law as described in Subsection C.3, the amendment will no longer have any adverse transfer tax effect on the trust, on any of its donors, or on any of its beneficiaries.

5.     The trustee's amendment shall not result in any direct or indirect financial benefit, or grant any power of appointment, to any individual who is not at the time of the amendment both:

a.     a member of Settlors' family (that is, a Settlor's spouse, any lineal descendant of Settlors or a Settlor's spouse, any ancestor of Settlors or a Settlor's spouse, and any spouse of any of the foregoing), and

b.     already a present or potential future beneficiary of the trust (other than merely through the exercise of a power of appointment),

unless (i) the amendment is to provide for afterborn or after-adopted children of any beneficiary described in Subsections 5.a or 5.b, or (ii) the benefit that might result from the amendment requires an exercise of a power of appointment held by Settlors.

6.     The trustee's amendment shall not discriminate financially in any significant way in favor of one or more siblings to the detriment of any other sibling where the siblings are, under the terms of this instrument, to be treated in substantially equal fashion (and for this purpose each sibling and the sibling's descendants shall be treated as one unit).

7.     The trustee's amendment shall not make any change that would disqualify the trust to the extent that the trust, prior to the amendment, otherwise qualified for and was in fact already taking advantage of:

a.     any exemption from a surviving spouse's elective right or from a creditor's right to levy on any beneficiary's interest in the trust, or

15-3

BR0011407

b.  any substantial deduction, credit, exclusion, or other tax benefit (for example, any marital or charitable deduction, any annual gift tax exclusion, an election under Section 2032A or Section 2057, a generation-skipping tax exemption, the opportunity to be a stockholder in an S corporation, a significant grandfathered status under some changed law, etc.),

if in fact, without the change, the advantage currently being enjoyed would otherwise continue.

C.  **Form of Amendment.**  Any amendment under this Article FIFTEEN shall be by written instrument, signed by the amending trustee whose signature shall be acknowledged or proved in the manner required by law for the acknowledgment or proof of deeds that are to be recorded.  The amendment shall identify the trust or trusts to which the amendment applies and shall set forth the effective date of the amendment.

D.  **Exculpatory Clause.**  No trustee shall be liable for any exercise of or failure to exercise this limited power of amendment (or for a release of this power) if the trustee acted in good faith in taking or failing to take any such action (whether or not requested to do so by any beneficiary or by any beneficiary's representative).

E.  **Discretionary Distribution of Marital Trust or Trusts.**  After the death of the first Settlor to die, if the independent trustee (as defined in *Recorded Trust Provisions – Series Three*) determines that it would be advisable for any reason, including but not limited to (1) eliminating the cost of continuing the Marital Trust or Marital Trusts, or (2) federal or state transfer tax or other tax changes that make the existence of the trust unnecessary or disadvantageous, the independent trustee may, but need not, terminate the Marital Trust or Trusts either totally or partially and distribute all of the trust property (or the terminated part) to the surviving Settlor.  The independent trustee shall not be liable to any beneficiary for any action taken or not taken under this Section E

15-4

BR0011408

("Discretionary Distribution of Marital Trust or Marital Trusts"). If there is no independent trustee of the Marital Trust(s), but the special trustee provided for in Article SEVEN, Section B ("Special Trustee") is an independent trustee, the special trustee may exercise the power granted in this Section

\*       \*       \*       \*       \*

15-5

BR0011409

Settlors and trustees have signed this trust instrument in duplicate, dated as of
_____*July 13*_____, 2004.


_____*John M Bryan*_____
John M. Bryan
Settlor and Trustee

_____*Florence E. Bryan*_____
Florence E. Bryan
Settlor

_____*Alan R Brudos*_____
Alan R. Brudos
Trustee


STATE OF CALIFORNIA                               )
                                                  )
COUNTY OF __*San Francisco*__                     )

On __*July 13*_____, 2004, before me, the undersigned, a Notary Public
for the State of California, personally appeared John M. Bryan, personally known to me (or proved
to me on the basis of satisfactory evidence) to be a person whose name is subscribed to this
instrument, and acknowledged to me that he executed it in his authorized capacity, and that by his
signature on the instrument the person, or the entity upon behalf of which the person acted,
executed the instrument.

WITNESS my hand and official seal.

_____*Rica L. Gatchalian*_____
Notary Public, State of California



RICA L. GATCHALIAN
Commission # 1379689
Notary Public - California
San Francisco County
My Comm. Expires Oct 12, 2006

15-6

BR0011410

STATE OF CALIFORNIA                                    )
                                                       )
COUNTY OF _San Francisco_____                       )

On ___July 13_____, 2004, before me, the undersigned, a Notary Public
for the State of California, personally appeared Florence E. Bryan, personally known to me (or
proved to me on the basis of satisfactory evidence) to be a person whose name is subscribed to this
instrument, and acknowledged to me that she executed it in her authorized capacity, and that by her
signature on the instrument the person, or the entity upon behalf of which the person acted,
executed the instrument.

        WITNESS my hand and official seal.

        RICA L. GATCHALIAN          _____Rica L. Gatchalian_____
        Commission # 1379689         Notary Public, State of California
        Notary Public - California
        San Francisco County
        My Comm. Expires Oct 12, 2006

STATE OF CALIFORNIA                                    )
                                                       )
COUNTY OF _San Francisco_____                       )

On ___July 13_____, 2004, before me, the undersigned, a Notary Public
for the State of California, personally appeared Alan R. Brudos, personally known to me (or proved
to me on the basis of satisfactory evidence) to be a person whose name is subscribed to this
instrument, and acknowledged to me that he executed it in his authorized capacity, and that by his
signature on the instrument the person, or the entity upon behalf of which the person acted,
executed the instrument.

        WITNESS my hand and official seal.

        RICA L. GATCHALIAN          _____Rica L. Gatchalian_____
        Commission # 1379689         Notary Public, State of California
        Notary Public - California
        San Francisco County
        My Comm. Expires Oct 12, 2006

                        15-7

BR0011411

EXHIBIT A:  **Trust Property**

On the date of this amended and restated trust instrument, the trust property of the John M. and Florence E. Bryan Trust includes, but is not limited to, the following:

A-1

BR0011412

## FIRST AMENDMENT TO THE
## JOHN M. AND FLORENCE E. BRYAN TRUST

I.    **Introduction and Recitals**

    A.    Title of trust:  John M. and Florence E. Bryan Trust

    B.    Date of amended and restated trust instrument: ____*July 13*____, 2004

    C.    Settlors:  John M. Bryan and Florence E. Bryan

    D.    Trustees:  John M. Bryan and Alan R. Brudos

    E.    Authority for this amendment:  Article TWO, Section A ("While Both Settlors Are Living; Rights Reserved by Settlors Acting Together"), at page 2-1.

    F.    The amended and restated trust instrument dated ____*July 13*____, 2004, superseded all previous trust instruments and continued the trust created by a trust instrument dated August 19, 1991.

    G.    Pursuant to the foregoing authority, Settlors amend the trust instrument as set forth below.

II.    Settlors amend Article SEVEN, Section H ("Trustee's Retirement at Age 70; Exceptions"), so that, as amended, it provides as follows:

"H.    **Trustee's Retirement at Age 70; Exceptions.**  Whenever any trustee under this instrument other than John M. Bryan, Florence E. Bryan, Alan R. Brudos, or any child of John and Florence, attains the age of seventy (70) years, the trustee shall be deemed to have resigned and the successor or successors provided for above in this Article SEVEN shall assume the office of trustee."

III.    Settlors ratify and confirm the actions taken by Alan R. Brudos as co-trustee.

IV.    In all other respects, trustors confirm the trust as amended.

\*    \*    \*    \*    \*

1.

64B

BR0011413

Settlors and trustees have signed this amendment in duplicate on _____ *July 13* _____,
2004.


_____ *John M. Bryan* _____
John M. Bryan
Trustor and Co-Trustee

_____ *Florence E. Bryan* _____
Florence E. Bryan
Trustor


_____ *Alan R Brudos* _____
Alan R. Brudos
Co-Trustee


STATE OF CALIFORNIA          )
                             )
COUNTY OF _San Francisco___  )

On _July 13_____, 2004, before me, the undersigned, a Notary Public for the
State of California, personally appeared John M. Bryan, personally known to me (or proved to me
on the basis of satisfactory evidence) to be a person whose name is subscribed to this instrument,
and acknowledged to me that he executed it in his authorized capacity, and that by his signature on
the instrument the person, or the entity upon behalf of which the person acted, executed the
instrument.

        WITNESS my hand and official seal.


        RICA L. GATCHALIAN
        Commission # 1379689
        Notary Public - California
        San Francisco County
        My Comm. Expires Oct 12, 2006

_____ *Rica L. Gatchalian* _____
Notary Public, State of California


2.

BR0011414

STATE OF CALIFORNIA                    )
                                       )
COUNTY OF _San Francisco_              )

On _July 13_____, 2004, before me, the undersigned, a Notary Public for the State of California, personally appeared Florence E. Bryan, personally known to me (or proved to me on the basis of satisfactory evidence) to be a person whose name is subscribed to this instrument, and acknowledged to me that she executed it in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

RICA L. GATCHALIAN
Commission # 1379689
Notary Public - California
San Francisco County
My Comm. Expires Oct 12, 2006

_Rica L. Gatchalian_
Notary Public, State of California

STATE OF CALIFORNIA                    )
                                       )
COUNTY OF _San Francisco_              )

On _July 13_____, 2004, before me, the undersigned, a Notary Public for the State of California, personally appeared Alan R. Brudos, personally known to me (or proved to me on the basis of satisfactory evidence) to be a person whose name is subscribed to this instrument, and acknowledged to me that he executed it in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

RICA L. GATCHALIAN
Commission # 1379689
Notary Public - California
San Francisco County
My Comm. Expires Oct 12, 2006

_Rica L. Gatchalian_
Notary Public, State of California

3.

BR0011415

a.dtrust.rev\rla2.w-rev.usw\tust.plint1KS-RESTATEDJohn M.-Flore.BryanTKS.0404.d5c

# JOHN M. AND FLORENCE E. BRYAN TRUST

(AN AMENDED AND RESTATED TRUST INSTRUMENT)

Settlors: John M. Bryan and Florence E. Bryan

Original Trustees: John M. Bryan and Alan R. Brudos

Date of this amended and restated instrument: _July 13_, 2004

Date of creation of the trust: August 19, 1991

TABLE OF CONTENTS

| Article | | Page |
|---|---|---|
| ONE: | Introduction | 1-1 |
| TWO: | Rights Reserved by Settlors | 2-1 |
| THREE: | Benefits While Both Settlors Are Living | 3-1 |
| FOUR: | Payment of Obligations at the Death of the First Settlor To Die | 4-1 |
| FIVE: | Benefits After the Death of the First Settlor To Die | 5-1 |
| SIX: | Benefits After the Death of the Surviving Settlor | 6-1 |
| SEVEN: | Trustees; Special Trustee | 7-1 |
| EIGHT: | Administrative and Trustee Provisions | 8-1 |
| NINE: | Powers of Trustees | 9-1 |
| TEN: | Definitions, Interpretation and Protective Provisions | 10-1 |
| ELEVEN: | Disclaimer | 11-1 |
| TWELVE: | Durable Limited Power of Attorney; Appointment of Agents To Act on Behalf of Settlors | 12-1 |
| THIRTEEN: | Standards, Guidelines and Limitations | 13-1 |
| FOURTEEN: | Recorded Trust Provisions - Series Three | 14-1 |
| FIFTEEN: | Independent Trustee's Limited Power To Amend and Power To Distribute Trusts | 15-1 |
| Signatures of Settlors and Trustees | | 15-6 |
| Notarial Acknowledgment | | 15-6 |
| Exhibit A: Trust Property | | A-1 |

BR0011416

## SECOND AMENDMENT TO THE
## JOHN M. AND FLORENCE E. BRYAN TRUST

I.    **Introduction**

    A.    Title of trust:  John M. and Florence E. Bryan Trust

    B.    Date of amended and restated trust instrument:  July 13, 2004

    C.    Settlors:  John M. Bryan and Florence E. Bryan

    D.    Trustees:  John M. Bryan and Alan R. Brudos

    E.    The amended and restated trust instrument dated July 13, 2004, superseded all previous trust instruments and continued the trust created on August 19, 1991.

    F.    Settlors signed a "First Amendment to the John M. and Florence E. Bryan Trust" on July 13, 2004, which remains in effect.

    G.    Authority for this amendment:  Article TWO, Section A ("While Both Settlors Are Living; Rights Reserved by Settlors Acting Together"), at page 2-1.

    H.    Pursuant to the foregoing authority, Settlors amend the trust instrument as set forth below.

II.    Article FIVE, Subsection D.10.c (at page 5-8) and Article SIX (at pages 6-1 and 6-2) refer to the free use of a house at 68 Ramona Street, Oakland, California, by Settlors' employee, Remigio San Martin, during his lifetime. To clarify their intent regarding Remigio San Martin's lifetime use of the house, Settlors add the following provision, which shall be given the same effect as if it were included in each of the foregoing provisions of the trust instrument in which the use is mentioned:

    "Remigio San Martin's right to use the house at 68 Ramona Street, Oakland, California, is intended only to allow Mr. San Martin to personally occupy the house as his residence during his lifetime (and not, for example, to allow him to rent the house to others or, under any

1.

BR0011417

other arrangement, to allow others to occupy the house after he has ceased occupying the house as his personal residence). Consistent with this expression of Settlors' intent, Remigio San Martin's right to use the house at 68 Ramona Street, Oakland, California, shall continue only as long as he actually occupies the house as his personal residence. If, in the determination of the Survivor or the Trustee of the Survivor's Trust (in the case of the reference in Article FIVE) or the Settlors' children, or the one or more of them able and willing to make a determination (in the case of the references in Article SIX), Remigio San Martin has ceased to personally occupy the house as his residence during his lifetime, his right to use the house shall terminate."

    III.    In all other respects, Settlors confirm the trust as amended.

*    *    *    *    *

2.

BR0011418

Settlors and trustees have signed this amendment in duplicate on _July 27_, 2004.


_JM Bryan_
John M. Bryan
Settlor and Co-Trustee

_Florence E. Bryan_
Florence E. Bryan
Settlor

_Alan R. Brudos_
Alan R. Brudos
Co-Trustee

STATE OF CALIFORNIA      )
                                   )
COUNTY OF _San Francisco_     )

On _July 27_, 2004, before me, the undersigned, a Notary Public for the State of California, personally appeared John M. Bryan, personally known to me (or proved to me on the basis of satisfactory evidence) to be a person whose name is subscribed to this instrument, and acknowledged to me that he executed it in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Rica L. Gatchalian_
Notary Public, State of California



RICA L. GATCHALIAN
Commission # 1379689
Notary Public - California
San Francisco County
My Comm. Expires Oct 12, 2006

3.

BR0011419

STATE OF CALIFORNIA              )

COUNTY OF _San Francisco_    )

On ___July 21___, 2004, before me, the undersigned, a Notary Public for the State of California, personally appeared Florence E. Bryan, personally known to me (or proved to me on the basis of satisfactory evidence) to be a person whose name is subscribed to this instrument, and acknowledged to me that she executed it in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

RICA L. GATCHALIAN
Commission # 1379689
Notary Public - California
San Francisco County
My Comm. Expires Oct 12, 2006

_Rica L. Gatchalian_
Notary Public, State of California

STATE OF CALIFORNIA              )

COUNTY OF _San Francisco_    )

On ___July 21___, 2004, before me, the undersigned, a Notary Public for the State of California, personally appeared Alan R. Brudos, personally known to me (or proved to me on the basis of satisfactory evidence) to be a person whose name is subscribed to this instrument, and acknowledged to me that he executed it in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Rica L. Gatchalian_
Notary Public, State of California



RICA L. GATCHALIAN
Commission # 1379689
Notary Public - California
San Francisco County
My Comm. Expires Oct 12, 2006

4.

BR0011420